ORIGINAL FILED

2010 MAR 19 P 2:48

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

CRB

1   ALAN W. SPARER (No. 104921)
    MARC HABER (No. 192981)
2   KEVIN H. LEWIS (No. 197421)
    JAMES S. NABWANGU (No. 236601)
3   SPARER LAW GROUP
    100 Pine Street, 33rd Floor
4   San Francisco, California  94111-5128
    Telephone:    415/217-7300
5   Facsimile:    415/217-7307
    asparer@sparerlaw.com
6   mhaber@sparerlaw.com
    klewis@sparerlaw.com
7   jnabwangu@sparerlaw.com

8   Attorneys for Plaintiff
    JAMES RAFTON, TRUSTEE
9   OF THE JAMES AND CYNTHIA
    RAFTON TRUST
10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                     SAN FRANCISCO DIVISION

14                                          CV 10    1171

15  JAMES RAFTON, TRUSTEE OF THE          No.
    JAMES AND CYNTHIA RAFTON TRUST,
16
                                           CLASS ACTION COMPLAINT
17              Plaintiff,
         v.
18                                         CLASS ACTION
    RYDEX SERIES FUNDS; PADCO
19  ADVISORS INC. d/b/a RYDEX
    INVESTMENTS, INC.; RYDEX
20  DISTRIBUTORS, INC.; RICHARD M.        DEMAND FOR JURY TRIAL
    GOLDMAN; CARL G. VERBONCOEUR;
21  JOHN O. DEMARET; NICK BONOS;
    MICHAEL P. BYRUM; COREY A.
22  COLEHOUR; J. KENNETH DALTON;
    WERNER E. KELLER; THOMAS F. LYDON;
23  PATRICK T. MCCARVILLE; ROGER
    SOMERS; and DOES 1 through 25, inclusive,
24
              Defendants.
25

26

27

28

                        CLASS ACTION COMPLAINT

1   Plaintiff, individually and on behalf of all others similarly situated, alleges the following

2   upon information and belief, except for those allegations as to himself, which are alleged upon

3   personal knowledge.  The allegations are based on counsel's investigation, documents filed with

4   the United States Government and Securities and Exchange Commission (the "SEC"), reports

5   and interviews published in the press, and information obtained by Plaintiff.

### NATURE OF THE ACTION

6

7   1.    This is a federal class action on behalf of all persons or entities who purchased or

8   otherwise acquired shares in the Rydex Inverse Government Long Bond Strategy Fund (the

9   "Inverse Long Bond Fund" or the "Fund"), pursuant or traceable to false and misleading

10  Registration Statements, and Prospectuses (collectively, the "Registration Statements") between

11  March 19, 2007 and March 19, 2010 (the "Class Period") and who were damaged thereby.  The

12  Class seeks to pursue remedies under Sections 11, 12 and 15 of the Securities Act of 1933 (the

13  "Securities Act").

### JURISDICTION AND VENUE

14

15  2.    The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and

16  15 of the Securities Act (15 U.S.C. §§77k, 77i, 77o).

17  3.    This Court has jurisdiction over the subject matter of this action pursuant to

18  Section 22 of the Securities Act, 15 U.S.C. §77v, and 28 U.S.C. §§1331 and 1332(d).

19  4.    Venue is proper in this District pursuant to 15 U.S.C. §77v and 28 U.S.C.

20  §1391(b).  Several of the Defendants are found, inhabitants of, or transact business in this

21  District.  In addition, many of the acts giving rise to the violations of law complained of herein,

22  including the dissemination to shareholders of the Registration Statements and Prospectuses,

23  occurred in this District.

24  5.    In connection with the acts alleged in this Complaint, Defendants, directly or

25  indirectly, used the means and instrumentalities of interstate commerce, including, but not

26  limited to, the mails, interstate telephone communications and the facilities of the national

27  securities markets.

28

-1-

CLASS ACTION COMPLAINT

1
**INTRADISTRICT ASSIGNMENT**

2      6.     This is a securities class action.  Accordingly, it is assigned on a District-wide

3  basis pursuant to Civil Local Rule 3-2(c).

4
**PARTIES**

5      7.     Plaintiff James Rafton, a Trustee of the James and Cynthia Rafton Trust, is a

6  citizen of California who, during the Class Period, purchased shares of the Inverse Long Bond

7  Fund from Defendants pursuant or traceable to the Registration Statements and Prospectuses at

8  issue in this complaint, and was damaged thereby.  Plaintiff's transactions in Fund shares are

9  identified in the certification attached hereto and incorporated by reference herein.

10     8.     Defendant Rydex Series Funds (the "Trust") is registered with the SEC under the

11  Investment Company Act of 1940 as a non-diversified, open-ended investment company, and is

12  the issuer of shares of the Fund.  The Trust and its Board of Trustees are responsible for

13  preparing documents pertaining to the Fund, including Registration Statements and Prospectuses,

14  filing those documents with the SEC, and disseminating those documents to investors in the

15  Fund.  The Trust is headquartered at 9601 Blackwell Road, Suite 500, Rockville, Maryland

16  20850.

17     9.     Defendants PADCO Advisors Inc. d/b/a Rydex Investments, Inc. (collectively the

18  "Manager") are the investment adviser for the Trust.  The Manager is an investment adviser

19  registered under the Investment Advisers Act of 1940.  The Manager is headquartered at 9601

20  Blackwell Road, Suite 500, Rockville, Maryland 20850.

21     10.    Defendant Rydex Distributors, Inc. (the "Distributor") is responsible for

22  distributing shares of the Fund and serves as the principal underwriter for the Trust.  The

23  Distributor is headquartered at 9601 Blackwell Road, Suite 500, Rockville, Maryland 20850.

24     11.    Defendant Richard M. Goldman is the CEO and President of Rydex Distributors,

25  Inc. and a Fund Trustee, and signed the July 2009 Registration Statement.

26     12.    Defendant Carl G. Verboncoeur is the President of the Trust, is a Fund Trustee, is

27  the Treasurer and a director of the Manager, and was CEO of the Manager until January 2009,

28  and signed the July 2007, July 2008 and July 2009 Registration Statements.

-2-
CLASS ACTION COMPLAINT

13.   Defendant John O. Demaret is the Chairman of the Board of Trustees of the Trust, and signed the July 2007, July 2008 and July 2009 Registration Statements.

14.   Defendant Nick Bonos is the Vice President and Treasurer of the Trust, and signed the July 2007, July 2008 and July 2009 Registration Statements.

15.   Defendant Michael P. Byrum is the President, Chief Investment Officer, Secretary, and a director of the Manager, is a Trustee and a Vice President of the Trust, and signed the July 2007, July 2008 and July 2009 Registration Statements.

16.   Defendant Corey A. Colehour is a Trustee of the Trust, and signed the July 2007, July 2008 and July 2009 Registration Statements.

17.   Defendant J. Kenneth Dalton is a Trustee of the Trust, and signed the July 2007, July 2008 and July 2009 Registration Statements.

18.   Defendant Werner E. Keller is a Trustee of the Trust, and signed the July 2007, July 2008 and July 2009 Registration Statements.

19.   Defendant Thomas F. Lydon is a Trustee of the Trust, and signed the July 2007, July 2008 and July 2009 Registration Statements.

20.   Defendant Patrick T. McCarville is a Trustee of the Trust, and signed the July 2007, July 2008 and July 2009 Registration Statements.

21.   Defendant Roger Somers is a Trustee of the Trust, and signed the July 2007, July 2008 and July 2009 Registration Statements.

22.   Defendants Goldman, Verboncoeur, Demaret, Bonos, Byrum, Colehour, Dalton, Keller, Lydon, McCarville, Somers are referred to collectively herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

23.   Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired shares of the Inverse Long Bond Fund pursuant or traceable to the false and misleading Registration Statements and were damaged thereby (the "Class").  Excluded from the Class are Defendants, their officers and directors, at all relevant times, members of their immediate

1  families and their legal representatives, heirs, successors or assigns and any entity in which

2  Defendants have or had a controlling interest.

3      24.    The members of the Class are so numerous that joinder of all members is

4  impracticable. While the exact number of Class members is unknown to Plaintiff at this time and

5  can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands

6  of members in the proposed Class. Record owners and other members of the Class may be

7  identified from records maintained by Registrant or its transfer agent and may be notified of the

8  pendency of this action by mail, using the form of notice similar to that customarily used in

9  securities class actions.

10     25.    Plaintiff's claims are typical of the claims of the members of the Class as all

11  members of the Class are similarly affected by Defendants' wrongful conduct in violation of

12  federal law that is complained of herein.

13     26.    Plaintiff will fairly and adequately protect the interests of the members of the

14  Class and has retained counsel competent and experienced in class and securities litigation.

15     27.    Common questions of law and fact exist as to all members of the Class and

16  predominate over any questions solely affecting individual members of the Class. Among the

17  questions of law and fact common to the Class are:

18         (a)    whether Defendants' acts as alleged herein violated Sections 11 and

19  12(a)(2) of the Securities Act of 1933;

20         (b)    whether statements made by Defendants to the investing public in the

21  Registration Statements misrepresented or omitted material facts; and

22         (c)    whether and to what extent the members of the Class have sustained

23  damages and the proper measure of damages.

24     28.    A class action is superior to all other available methods for the fair and efficient

25  adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

26  the damages suffered by individual Class members may be relatively small, the expense and

27  burden of individual litigation make it impossible for members of the Class to individually

28

-4-

CLASS ACTION COMPLAINT

1    redress the wrongs done to them. There will be no difficulty in the management of this action as

2    a class action.

3                              FACTUAL ALLEGATIONS

4    **A.    Inverse Funds.**

5           29.    The Inverse Long Bond Fund is a mutual fund that is similar to an exchange-

6    traded fund ("ETF") in that it is designed to track a particular benchmark. Mutual funds and

7    ETFs both are regulated by the SEC under the Investment Company Act of 1940. "Inverse"

8    funds and ETFs are designed to move inversely with the benchmark or index, *i.e.*, when the price

9    of the benchmark increases, the price of the fund will decrease by the same percentage. Like

10   traditional ETFs, some inverse funds and ETFs track broad indices, some are sector-specific, and

11   still others are linked to commodities or currencies. Inverse funds and ETFs are often marketed

12   as a way for investors to profit from, or at least hedge their exposure to, downward moving

13   markets. In this case, the Inverse Long Bond Fund is supposed to be inversely correlated to the

14   price of the 30-year U.S. Treasury Bond and is designed to hedge against, or profit from, interest

15   rate increases.

16          30.    Most inverse funds are designed to track a benchmark on a daily basis and "reset"

17   daily. Because of this, there is a mathematical "compounding" effect that causes a fund's price

18   to deviate from the inverse movement of the benchmark for periods lasting longer than a single

19   day. Using a two-day example, if a benchmark index goes from 100 to close at 101 on the first

20   day and back down to close at 100 on the next day, an inverse fund tracking that benchmark

21   would lose 0.02%, even though the benchmark stays even over that period.

22          31.    The compounding effect is especially pronounced during periods of high

23   volatility. For example if the benchmark index moves up to close at 110 the first day but then

24   back down to close at 100 on the next day, the inverse fund loses 1.82% over that two-day

25   period.

26          32.    Because of this compounding effect, inverse funds are not appropriate trading

27   vehicles for investors seeking to hold the investment and obtain returns inverse to a benchmark

28   for longer than a single day.

**B.**     **Rydex Inverse Government Long Bond Strategy Fund.**

33.     The Inverse Long Bond Fund sold four classes of shares: Advisor, Investor, A and C, under the ticker symbols RYJAX, RYJUX, RYAQX and RYJCX.

34.     The Fund's shares were issued to investors pursuant to the following series of Registration Statements and Prospectuses filed with the SEC and made effective during the Class Period:

- Registration Statement filed pursuant to Form N-1A and Prospectus on July 30, 2007 (collectively "July 2007 Registration Statement");

- Registration Statement filed pursuant to Form N-1A and Prospectus on July 29 2008 (collectively "July 2008 Registration Statement"); and

- Registration Statement filed pursuant to Form N-1A and Prospectus on July 29, 2009 (collectively "July 2009 Registration Statement").

35.     Each of the foregoing documents was negligently prepared and contained untrue statements of material fact and/or omitted to state other facts necessary to make the statements made not misleading, as described below.  While the documents were not identical, they contained many substantially similar untrue statements and were rendered misleading by substantially similar omissions of material fact.

36.     A reasonable investor would have viewed the undisclosed facts described herein, jointly and severally, as having altered the total mix of available information.

37.     As noted above, as it was marketed and sold, the Inverse Long Bond Fund is supposed to be inversely correlated to the price of the 30-year U.S. Treasury Bond.  However, because of the undisclosed compounding effect present in this inverse fund, the Fund failed to deliver the expected returns.  To the contrary, investors holding Fund shares during the Class Period lost money, even though the benchmark price of the 30-year U.S. Treasury Bond fell— precisely the type of period during which investors would have expected to make money.  For example, between March 20, 2008 and February 22, 2010, the price of the 30-year U.S. Treasury Bond fell by 4.91%.  A reasonable investor, basing his understanding on the Registration Statements, would expect the share price of the Fund to increase by the same amount over the

same period. However, due in large part to the compounding effect, the Fund price *fell* over the same period by 11.29%. In other words, investors lost money over this time period despite the fact that they anticipated a decrease in the price of the 30-year U.S. Treasury Bond and invested in a security that promised to increase in value when the price of the 30-year U.S. Treasury Bond declined.

38.   The July 2007 Registration Statement states that:

"FUND OBJECTIVE

"**The Inverse Government Long Bond Strategy Fund seeks to provide total returns that inversely correlate to the price movements of a benchmark for U.S. Treasury debt instruments or futures contracts on a specified debt instrument.** The Fund's current benchmark is the inverse of the daily price movement of the Long Treasury Bond. The Long Treasury Bond is the U.S. Treasury bond with the longest maturity, which is currently 30 years. The price movement of the Long Treasury Bond is based on the daily price change of the most recently issued Long Treasury Bond.

"If the Fund meets its objective, the value of the Fund's shares will increase on a daily basis when the price of the Long Treasury Bond decreases. When the price of the Long Treasury Bond increases, however, the value of the Fund's shares should decrease on a daily basis by an inversely proportionate amount (**E.G., if the price of the Long Treasury Bond increases by 2%, the value of the Fund's shares should go down by 2% on that day**).

"PRINCIPAL INVESTMENT STRATEGY

"**Unlike a traditional index fund, the Fund's objective is to perform, on a daily basis, exactly opposite its benchmark, the Long Treasury Bond.** As its primary investment strategy, the Fund enters into short sales and swap transactions, and engages in futures and options transactions. On a day-to-day basis, the Fund holds U.S. Government securities or cash equivalents to collateralize its short sales and derivative positions.

"INVESTOR PROFILE

"**Investors who expect the value of the Long Treasury Bond to go down and want investment gains when it does so.** These investors must also be willing to bear the risk of equal losses if the value of the Long Treasury Bond goes up." (Emphasis added)

CLASS ACTION COMPLAINT

39. Similarly, the July 2008 Registration Statement states that:

"FUND OBJECTIVE

"**The Inverse Government Long Bond Strategy Fund seeks to provide total returns that inversely correlate to the price movements of a benchmark for U.S. Treasury debt instruments or futures contracts on a specified debt instrument.** The Fund's current benchmark is the inverse (opposite) of the daily price movement of the Long Treasury Bond. The Long Treasury Bond is the U.S. Treasury bond with the longest maturity, which is currently 30 years. The price movement of the Long Treasury Bond is based on the daily price change of the most recently issued Long Treasury Bond.

"If the Fund meets its objective, the value of the Fund's shares will increase on a daily basis when the price of the Long Treasury Bond decreases. When the price of the Long Treasury Bond increases, however, the value of the Fund's shares should decrease on a daily basis by an inversely proportionate amount (**e.g., if the price of the Long Treasury Bond increases by 2%, the value of the Fund's shares should go down by 2% on that day**).

"PRINCIPAL INVESTMENT STRATEGY

"**Unlike a traditional index fund, the Inverse Government Long Bond Strategy Fund's objective is to perform, on a daily basis, exactly opposite the daily price movement of the Long Treasury Bond.** The Fund employs as its investment strategy a program of engaging in short sales and investing to a significant extent in derivative instruments, which primarily consist of futures contracts, interest rate swaps, and options on securities and futures contracts. Under normal circumstances, the Fund will invest at least 80% of its net assets in financial instruments with economic characteristics that should perform opposite to fixed income securities issued by the U.S. Government. This is a non-fundamental investment policy that can be changed by the Fund upon 60 days' prior notice to shareholders. On a day-to-day basis, the Fund may hold U.S. Government securities or cash equivalents to collateralize its short sales and derivative positions.

"INVESTOR PROFILE

"**The Inverse Government Long Bond Strategy Fund is intended for investors who expect the value of the Long Treasury Bond to go down and want investment gains when it does so.** These investors must also be willing to bear the risk of equal losses if the value of the Long Treasury Bond goes up." (Emphasis added)

CLASS ACTION COMPLAINT

40.     These statements make clear that Defendants sold the Inverse Long Bond Fund as a simple directional investment based on the price of long term U.S. treasury bonds that could appropriately be held for long periods of time.  Indeed, the 2007 and 2008 Registration Statements provided information about *annual* returns for the Inverse Long Bond Fund and hypothetical examples of fees that investors could expect to pay over *1-year, 3-year, 5-year, and 10-year periods*.  The 2007 and 2008 Registration Statements state that the fee "[e]xamples assume that you invest $10,000 in the Fund for the time periods indicated and then redeem all of your shares at the end of those periods."  By including this data and these examples, the 2007 and 2008 Registration Statements clearly imply that the Fund was an appropriate vehicle for long-term investing.

41.     The only warning regarding the effects of compounding contained in the 2007 and 2008 Registration Statements related to a "tracking risk" that stated only that the Fund "may" not correlate with the performance of its benchmark:

> "TRACKING ERROR RISK - Tracking error risk refers to the risk that the Fund's Advisor may not be able to cause the Fund's performance to match that of the Fund's benchmark, either on a daily or aggregate basis. Factors such as Fund expenses, imperfect correlation between the Fund's investments and those of its benchmark, rounding of share prices, changes to the benchmark, regulatory policies, high portfolio turnover rate and leverage all contribute to tracking error. In addition, because each Fund, except for the Mid-Cap 1.5x Strategy Fund, Russell 2000(R) 1.5x Strategy Fund, Europe 1.25x Strategy Fund, Japan 1.25x Strategy Fund and Government Long Bond 1.2x Strategy Fund, is tracking the performance of its benchmark on a daily basis, mathematical compounding may prevent a Fund from correlating with the monthly, quarterly, annual or other period performance of its benchmark.  Tracking error may cause the Fund's performance to be less than you expect."

42.     Disclosures that merely state that the Fund's performance "may" not or "generally" will not correlate with the inverse of its index over a period of time greater than one day are misleading given that it is *extraordinarily unlikely* that the Inverse Long Bond Fund's performance will ever correlate with the inverse of the price of the 30-year U.S. Treasury Bond over time.

CLASS ACTION COMPLAINT

1      43.    It is noteworthy that Defendants issued additional warnings about the effects of

2  compounding in relation to other funds, but failed to do so for the Inverse Long Bond Fund.

3  Defendants issued the 2007 and 2008 Registration Statements for the Inverse Long Bond Fund as

4  part of omnibus prospectuses totaling over 900 pages and covering over 30 separate funds. The

5  first 100 pages cover approximately 25 funds. For each fund, Defendants purported to identify

6  the particular risks "that may affect the value of its shares." While a discussion of the effects of

7  compounding and leverage was included by reference in each of the funds utilizing leverage, this

8  discussion was not referenced in relation to the Inverse Long Bond Fund. *Compare, e.g.*, Russell

9  2000 1.5x Strategy Fund ("For more information about the effects of leverage, please see

10  'Understanding Compounding and the Effect of Leverage'"), *with* Inverse Long Bond Fund. The

11  discussion of compounding in relation to leveraged funds states:

> "UNDERSTANDING COMPOUNDING & THE EFFECT OF
> LEVERAGE
>
> "It is important to understand the effects of compounding when
> investing in any mutual fund, especially funds that use leverage as
> part of their investment strategy. The impact of leverage on a fund
> will generally cause the fund's performance to not match the
> performance of the index underlying the fund's benchmark over a
> period of time greater than one day. The following simple
> examples provide an illustration:
>
> "EXAMPLE A: Assume you invest $100 in Fund A, a typical
> index fund that seeks to match the performance of its underlying
> index. If the index increases 10% on day one, the value of your
> shares in Fund A would be expected to increase $10 (10% of $100)
> to $110. The next day, if the index decreases 10%, the value of
> your shares in Fund A would be expected to decrease $11 (10% of
> $110) to $99.
>
> "EXAMPLE B: Assume you invested $100 in Fund B, a fund
> that seeks to return 200% of the performance of its underlying
> index. If the index increases 10% on day one, the value of your
> shares in Fund B would be expected to increase $20 (20% of $100)
> to $120. The next day, if the index decreases 10%, the value of
> your shares in Fund B would be expected to decrease $24 (20% of
> $120) to $96.
>
> "Because of the effect of compounding, in each case the value
> of your investment declined even though the index went up 10% on

CLASS ACTION COMPLAINT

day one and down 10% on day two. However, the effect of compounding was more pronounced when combined with leverage (Example B).

> "The examples demonstrate that over time, the cumulative percentage increase or decrease in the net asset value of a fund may diverge significantly from the cumulative percentage increase or decrease in the multiple of the return of the index underlying a fund's benchmark due to the compounding effect of losses and gains on the returns of the fund. It is also expected that a fund's use of consistently applied leverage will cause the fund to underperform the compounded return of twice its benchmark in a trendless or flat market."

44.     This additional cautionary language alone would not have been sufficient to warn investors that the mathematical compounding effect virtually guaranteed that the Inverse Long Bond Fund would deviate from its benchmark over time. Nor would it have been sufficient to warn investors that the compounding effect made the Fund an inappropriate investment for investors who intended to hold it for longer than a single trading period. Nonetheless, the fact that Defendants failed to include even this minimal warning in relation to the Fund highlights the misleading nature of the 2007 and 2008 Registration Statements.

**C.      The 2007 And 2008 Registration Statements Were False And Misleading.**

45.     All of the above discussed disclosures were false and/or misleading because they failed to disclose that:

- Inverse correlation between the Fund and the price of the 30-year U.S. Treasury Bond beyond one-day holding periods would only occur in the rarest of circumstances, and inadvertently if at all;

- Fund performance over time would inevitably diverge on an increasing basis from the inverse of the performance of the price of the 30-year U.S. Treasury Bond;

- The Fund is unsuitable for investors who plan to hold it for longer than one trading session, particularly in volatile markets;

- The Fund was not intended or appropriate for investors who do not actively monitor and manage their portfolios on a daily basis; and

- Because of compounding, for periods longer than a day, the path or trend of the benchmark is at least as important to the Fund's return as the cumulative return of the benchmark over that period; and

-11-
CLASS ACTION COMPLAINT

- While the Fund appears to offer a straightforward way to profit from or hedge against decreases in the price of the 30-year U.S Treasury Bond, such objectives are not attainable through the Fund except in extraordinarily rare circumstances.

46. Perhaps most importantly, the 2007 and 2008 Registration Statements do not disclose that the Inverse Long Bond Fund is altogether inappropriate as a directional investment for periods longer than a single day. Defendants failed to disclose the virtual certainty that mathematical compounding would prevent the Inverse Long Bond Fund from achieving its stated investment objective over a period of time greater than one day. Disclosures that merely state the Fund's performance over a period of time greater than one day "may" not or "generally" will not equal the inverse of the price of the 30-year U.S. Treasury Bond over that same period are misleading given that compounding makes it virtually impossible for the Fund to track its benchmark over time.

47. Nor did the 2007 and 2008 Registration Statements disclose that, if held long enough, an investment in the Fund would almost certainly lead to losses regardless of the direction of the price of the U.S. Treasury Long Bond.

**D.    Red Flags Raised By FINRA And Others.**

48. On June 11, 2009, FINRA issued Regulatory Notice 09-31, in which it "remind[ed] firms of their sales practice obligations in connection with inverse ETFs." FINRA noted that "[t]here also are mutual funds that are designed to provide inverse and leveraged performance relative to their benchmarks. These mutual funds may reset on a daily basis as well, and thus raise many of the issues discussed in this Notice on ETFs." In particular, FINRA admonished that sales materials related to leveraged and inverse funds "must be fair and accurate." FINRA further cautioned:

> "Exchange-traded funds (ETFs) that offer leverage or that are designed to perform inversely to the index or benchmark they track—or both—are growing in number and popularity. While such products may be useful in some sophisticated trading strategies, they are highly complex financial instruments that are typically designed to achieve their stated objectives on a daily basis. **Due to the effects of compounding, their performance over longer periods of time can differ significantly from their stated daily objective. Therefore, inverse and leveraged ETFs that are reset daily typically are unsuitable for retail investors**

who plan to hold them for longer than one trading session, particularly in volatile markets.

\*       \*       \*       \*

"Most leveraged and inverse ETFs 'reset' daily, meaning that they are designed to achieve their stated objectives on a daily basis. **Due to the effect of compounding, their performance over longer periods of time can differ significantly from the performance (or inverse of the performance) of their underlying index or benchmark during the same period of time.**

\*       \*       \*       \*

"This effect can be magnified in volatile markets. Using a two-day example, if the index goes from 100 to close at 101 on the first day and back down to close at 100 on the next day, the two-day return of an inverse ETF will be different than if the index had moved up to close at 110 the first day but then back down to close at 100 on the next day. In the first case with low volatility, the inverse ETF loses 0.02 percent; but in the more volatile scenario the inverse ETF loses 1.82 percent. **The effects of mathematical compounding can grow significantly over time, leading to scenarios such as those noted above.**

"Suitability

"NASD Rule 2310 requires that, before recommending the purchase, sale or exchange of a security, a firm must have a reasonable basis for believing that the transaction is suitable for the customer to whom the recommendation is made. This analysis has two components. The first is determining whether the product is suitable for any customer, an analysis that requires firms and associated persons to fully understand the products and transactions they recommend.

\*       \*       \*       \*

"Communications With the Public

"NASD Rule 2210 prohibits firms and registered representatives from making false, exaggerated, unwarranted or misleading statements or claims in communications with the public. Therefore, all sales materials and oral presentations used by firms regarding leveraged and inverse ETFs must present a fair and balanced picture of both the risks and benefits of the funds, and may not omit any material fact or qualification that would cause such a communication to be misleading." (Emphasis added)

CLASS ACTION COMPLAINT

1    49.    FINRA spokesman Herb Perone has stated: "Exotic ETFs, such as inverse,

2  leveraged and inverse-leveraged ETFs, **are extremely complicated and confusing products**,

3  and the marketing and sale of these products to unsophisticated retail investors is very much on

4  FINRA's radar screen" (emphasis added).

5    50.    FINRA issued additional guidance on July 13, 2009 by way of a podcast on its

6  website. FINRA reiterated that most leveraged and inverse funds reset each day and are designed

7  to achieve their stated objective on a daily basis—but with the effects of compounding over a

8  longer time frame, results differ significantly.

9    51.    On July 21, 2009, as reported by the *Wall Street Journal* in an article entitled

10  "Getting Personal, Edward Jones Drops ETFs," Edward Jones & Co. halted the sale of its non-

11  traditional ETFs. Edward Jones called non-traditional ETFs "one of the most misunderstood and

12  potentially dangerous types of ETFs."

13    52.    On July 27, 2009, in a letter to wealth management clients, as reported by the *Wall

14  Street Journal* in an article entitled "Strange Traded Funds," UBS said it would not trade ETFs

15  that use leverage or sell an underlying asset short. Similarly, on the heels of the FINRA Notice,

16  Ameriprise Financial and LPL Investment Holdings Inc. have also prohibited sales of leveraged

17  ETFs that seek more than twice the long or short performance of their target index. Wells Fargo

18  is now also reportedly reviewing its policy on non-traditional ETFs.

19    53.    On July 30, 2009, the *Wall Street Journal* published an article entitled "Warning

20  Signs Up For Leveraged ETFs," in which it was reported that Charles Schwab issued an unusual

21  warning on July 28 to clients who buy non-traditional ETFs that "while there may be limited

22  occasions where a leveraged or inverse ETF may be useful for some types of investors, it is

23  extremely important to understand that, for holding periods longer than a day, these funds may

24  not give you the returns you may be expecting. Proceed with extreme caution." The disclosures

25  in the 2007 and 2008 Registration Statement simply do not rise to this "[p]roceed with extreme

26  caution" level of clarity.

27

28

54.     On August 1, 2009, the *Wall Street Journal* quoted Morningstar's director of ETF analysis, Scott Burns, who recently poignantly observed: "Hedges [like the Fund] aren't supposed to become less trustworthy when you really need them."

**E.     The 2009 Registration Statement And Supplements.**

55.     The July 2009 Registration Statement is very similar in many respects to the 2007 and 2008 Registration Statements in that it continues to market the Inverse Long Bond Fund as appropriate for long term investing in the expectation that the price of the U.S. Treasury long bond will decrease:

"FUND OBJECTIVE

"**The Inverse Government Long Bond Strategy Fund seeks to provide total returns that inversely correlate to the price movements of a benchmark for U.S. Treasury debt instruments or futures contracts on a specified debt instrument on a daily basis.** The Fund's current benchmark is the daily price movement of the Long Treasury Bond. The Long Treasury Bond is the U.S. Treasury bond with the longest maturity, which is currently 30 years. The price movement of the Long Treasury Bond is based on the daily price change of the most recently issued Long Treasury Bond.

"If the Fund meets its objective, the value of the Fund's shares will increase on a daily basis when the price of the Long Treasury Bond decreases.  When the price of the Long Treasury Bond increases, however, the value of the Fund's shares should decrease on a daily basis by an inversely proportionate amount (**e.g., if the price of the Long Treasury Bond increases by 2%, the value of the Fund's shares should go down by 2% on that day**).

"PRINCIPAL INVESTMENT STRATEGY

"**Unlike a traditional index fund, the Inverse Government Long Bond Strategy Fund's objective is to perform, on a daily basis, exactly opposite the daily price movement of the Long Treasury Bond.** The Fund employs as its investment strategy a program of engaging in short sales and investing to a significant extent in derivative instruments, which primarily consist of futures contracts, interest rate swaps, and options on securities and futures contracts.  Under normal circumstances, the Fund will invest at least 80% of its net assets in financial instruments with economic characteristics that should perform opposite to fixed income securities issued by the U.S. Government.   This is a non-

-15-

CLASS ACTION COMPLAINT

fundamental investment policy that can be changed by the Fund upon 60 days' prior notice to shareholders. On a day-to-day basis, the Fund may hold U.S. Government securities or cash equivalents to collateralize its short sales and derivative positions."

"INVESTOR PROFILE

"**The Inverse Government Long Bond Strategy Fund is intended for investors who expect the value of the Long Treasury Bond to go down and want investment gains when it does so.** These investors must also be willing to bear the risk of equal losses if the value of the Long Treasury Bond goes up." (Emphasis added)

56.     The 2009 Registration Statement, filed after the red flags raised by FINRA and others, adds some additional cautionary language, but still misstates the risk by warning only that Fund returns "may be" uncorrelated to the benchmark for periods longer than a single day:

"Certain of the Funds offered in this Prospectus are leveraged funds and, in some cases, inverse funds, which have different features than funds that are not leveraged or inverse. First, Nova Fund, Mid-Cap 1.5x Fund, Russell 2000®1.5x Strategy Fund, Europe 1.25x Strategy Fund, Japan 2x Strategy Fund, Weakening Dollar 2x Strategy Fund, and Government Long Bond 1.2x Strategy Fund pursue leveraged investment goals, which means that these funds are riskier than alternatives that do not use leverage because these funds magnify the performance of the benchmark on the investment results. Second, the Inverse S&P 500 Strategy Fund, Inverse NASDAQ-100®Strategy Fund, Inverse Mid-Cap Strategy Fund, Inverse Russell 2000®Strategy Fund, Weakening Dollar 2x Strategy Fund, Inverse Government Long Bond Strategy Fund, and Inverse High Yield Strategy Fund pursue investment objectives that are inverse to the performance of their respective underlying index, a result opposite of most other mutual funds. Third, Nova Fund, Mid-Cap 1.5x Fund, Russell 2000®1.5x Strategy Fund, Inverse S&P 500 Strategy Fund, Inverse NASDAQ-100®Strategy Fund, Inverse Mid-Cap Strategy Fund, Inverse Russell 2000®Strategy Fund, Weakening Dollar 2x Strategy Fund, Inverse Government Long Bond Strategy Fund, Inverse High Yield Strategy Fund, and Government Long Bond 1.2x Strategy Fund pursue investment results on a *daily basis*. **The return of each Fund for periods longer than a single day, especially in periods of market volatility, may be completely uncorrelated to the return of the Fund's benchmark for that longer period.**

"**The Funds should be utilized only by sophisticated investors or professional investment advisors who (a) understand the risks associated with the use of *leverage*; (b)**

-16-

CLASS ACTION COMPLAINT

understand the consequences of seeking investment results on a *daily basis*; (c) **understand the risk of *shorting*; and (d) intend to actively monitor and manage their investments on a daily basis.** There is no assurance that the Funds will achieve their objectives and an investment in a Fund could lose money. No single Fund is a complete investment program." (Emphasis added)

57.     The 2009 Registration Statement describes as a "tracking risk" that the Fund "may" not correlate with the monthly, quarterly or annual performance of its benchmark. Thus, the mathematical near certainty that compounding will result in an increasing deviation from the benchmark is misleadingly characterized as a mere possibility:

"**Tracking Error Risk** – Tracking error risk refers to the risk that the Advisor may not be able to cause the Fund's performance to match or correlate to that of the Fund's underlying benchmark, either on a daily or aggregate basis. Factors such as Fund expenses, imperfect correlation between the Fund's investments and those of its underlying index, rounding of share prices, changes to the composition of the underlying index, regulatory policies, high portfolio turnover rate and the use of leverage all contribute to tracking error.

"In addition, because each Fund, except for the Europe 1.25x Strategy Fund and Japan 2x Strategy Fund is tracking the performance of its benchmark on a daily basis, mathematical compounding may prevent the Fund from correlating with the monthly, quarterly, annual or other period performance of its benchmark. Tracking error may cause the Fund's performance to be less than you expect."

58.     Defendants easily could have included in the 2009 Registration Statement additional warnings about the effects of compounding on its inverse funds similar to the warnings for leveraged funds that it issued in 2007 and 2008. Instead, Defendants issued the 2009 Registration Statement for the Inverse Long Bond Fund as part of an omnibus prospectus covering 26 different funds. For each fund, Defendants purported to identify the particular risks "that may affect the value of its shares." While a discussion of the effects of compounding was referenced in each leveraged fund, this discussion was not referenced in relation to the Inverse Long Bond Fund. For example, the discussion of the Russell 2000 1.5x Strategy Fund states that "[f]or more information about the effects of leverage, please see 'Understanding Compounding

-17-

CLASS ACTION COMPLAINT

1   and the Effect of Leverage.'" The discussion of the Inverse Long Bond Fund contains no such

2   reference.

3        59.    The discussion of compounding in relation to the leveraged Rydex funds

4   contained in the section "Understanding Compounding and the Effect of Leverage" is

5   functionally identical to the discussion in the 2007 and 2008 Registration Statements quoted in

6   Paragraph 44, *supra*.

7        60.    On August 7, 2009, Defendants issued a supplement to the 2009 Registration

8   Statement ("August 2009 Supplement") that consisted solely of three graphs to be added to the

9   section "Understanding Compounding and the Effect of Leverage." All three graphs illustrate

10  how leverage and compounding working together can cause a fund to underperform its

11  benchmark over time. Again, none of the graphs illustrate how the same is true of an

12  unleveraged inverse fund like the Inverse Long Bond Fund.

13       61.    On November 17, 2009, Defendants issued another supplement to the 2009

14  Registration Statement ("November 2009 Supplement") that added more warnings regarding all

15  of Rydex's leveraged and inverse funds. The November 2009 Supplement states, in part:

16        **"The Funds generally are intended to be used as short-term
17  trading vehicles. The Funds are not intended to be used by, and
      are not appropriate for, investors who do not intend to actively
18  monitor and manage their portfolios.** Each of the Inverse Funds
      pursues daily investment goals that are inverse to the performance
19  of its benchmark, a result opposite of most mutual funds. The
      Daily Leveraged Funds are different from other mutual funds, in
20  that they pursue **daily leveraged** investment goals. The Weakening
      Dollar 2x Strategy Fund pursues both daily leveraged and daily
21  inverse investment goals. The Daily Leveraged Funds and
      Leveraged Funds are riskier than alternatives that do not use
22  leverage, because they magnify the performance of the benchmark
      on an investment. Finally, because the **Daily Leveraged Funds**
23  **and Inverse Funds seek daily leveraged and daily inverse**
      **investment results, respectively, the return of a Daily**
24  **Leveraged or Inverse Fund for a period longer than a full**
      **trading day will be the sum of the series of daily leveraged or**
25  **inverse returns for each trading day during the relevant**
      **period.** As a consequence, especially in periods of market
26  volatility, the path or trend of the benchmark during the longer
      period may be at least as important to the Daily Leveraged
27  Fund's or Inverse Fund's return for the longer period as the
28

-18-

CLASS ACTION COMPLAINT

cumulative return of the benchmark for the relevant longer period. Further, the return for investors that invest for periods of less than a full trading day or for a period different than a trading day will not be the product of the return of the Daily Leveraged Fund's or Inverse Fund's stated goal and the performance of the target index for the full trading day.

"**The Funds are not suitable for all investors. The Funds should be utilized only by investors who (a) understand the risks associated with the use of leverage, (b) understand the consequences of seeking daily leveraged investment results, (c) understand the risk of shorting and (d) intend to actively monitor and manage their investments**. Investors who do not meet these criteria should not buy the Funds. There is no assurance that the Funds will achieve their objectives and an investment in a Fund could lose money. No single Fund is a complete investment program" (some emphasis added).

62.     In addition, the November 2009 Supplement added some tables that illustrated the effects of leverage, compounding and volatility on hypothetical returns relative to a benchmark. Like the August 2009 Supplement, all of the tables included in the November 2009 Supplement deal with leveraged funds and not with unleveraged inverse funds like the Inverse Long Bond Fund.

**F.     The 2009 Registration Statement Was False And Misleading.**

63.     Although Defendants disclosed more information in the 2009 Registration Statement and Supplements than in earlier Registration Statements, the 2009 version was false and/or misleading because it still failed to disclose that:

- Inverse correlation between the Fund and the price of the 30-year U.S. Treasury Bond over time would only occur in the rarest of circumstances, and inadvertently if at all;

- Fund performance over time would inevitably diverge on an increasing basis from the inverse of the performance of the price of the 30-year U.S. Treasury Bond; and

- The Fund is unsuitable for investors who plan to hold it for longer than one trading session, particularly in volatile markets;

64.     Like earlier Registration Statements, neither the 2009 Registration Statement nor the Supplements disclose that the Inverse Long Bond Fund is altogether inappropriate for periods longer than a single day. Defendants continued to omit the material fact that mathematical

-19-

CLASS ACTION COMPLAINT

1  compounding would prevent the Inverse Long Bond Fund from achieving its stated investment

2  objective over a period of time greater than one day.  Finally the understatement that the Fund is

3  "generally intended to be used as [a] short-term trading vehicle[]" is not sufficient to warn

4  investors as FINRA did that inverse funds like the Fund "are unsuitable for retail investors who

5  plan to hold them for longer than one trading session."

## COUNT I

### Violations Of §11 Of The 1933 Act Against All Defendants

8       65.      Plaintiff repeats and realleges each and every allegation contained above.  For

9  purposes of this Count, Plaintiff expressly excludes and disclaims any allegation that could be

10 construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on

11 claims of strict liability and/or negligence under the Securities Act.

12       66.      This Count is brought pursuant to Section 11 of the 1933 Act, 15 U.S.C. §77k, on

13 behalf of the Class, against all Defendants.

14       67.      The Registration Statements for the Inverse Long Bond Fund were false and

15 misleading, contained untrue statements of material facts, omitted to state other facts necessary to

16 make the statements made not misleading, and omitted to state material facts required to be stated

17 therein.

18       68.      The Trust is the issuer of the shares sold via the Registration Statements.  The

19 Individual Defendants are signatories or authorizers of the Registration Statements.  As the

20 issuer, the Trust is absolutely liable for the material misstatements in and omissions from the

21 Registration Statements.

22       69.      The Manager, Rydex Investments, was responsible for the contents and

23 dissemination of the Registration Statements.

24       70.      The Distributor, Rydex Distributors, Inc., was responsible for the contents and

25 dissemination of the Registration Statements.

26       71.      The Individual Defendants were responsible for the contents and dissemination of

27 the Registration Statements.  Each of the Individual Defendants signed or authorized the signing

28 of the Registration Statements and/or were identified in the Prospectuses.

-20-

CLASS ACTION COMPLAINT

72.   Defendants knew or, in the exercise of reasonable care, should have known of the material misstatements and omissions contained in the Registration Statements as set forth herein. Defendants did not make a reasonable investigation or possess reasonable grounds for the belief that statements contained in the Registration Statements were true or without any omission of material fact necessary to make the statements made therein not misleading.

73.   By reason of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

74.   Plaintiff and other members of the Class purchased or otherwise acquired shares of the Inverse Long Bond Fund pursuant and/or traceable to the Registration Statements. Plaintiff and the other members of the Class were thus damaged by Defendants' misconduct and by the material misstatements and omissions in the Registration Statements.

75.   At the time of their purchases of the Inverse Long Bond Fund shares, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts.

76.   Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff filed this Complaint. Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

## COUNT II

### Violations Of §12(A)(2) Of The 1933 Act Against The Trust, The Manager, And The Distributor

77.   Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein. For purposes of this Count, Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act.

78.     Plaintiff brings this Count pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of himself and other members of the Securities Class against the Fund, the Issuer, the Manager and the Distributor.

79.     Each of the Defendants named in this Count offered and sold securities, namely shares of the Inverse Long Bond Fund, to Plaintiff and other members of the Class by means of the August 2007 Prospectus, the August 2008 Prospectus and the August 2009 Prospectus (collectively, the "Prospectuses"), or controlled a person who offered and sold shares of the Fund by means of the Prospectuses.

80.     As detailed above, the Prospectuses contained untrue statements of material fact, and/or omitted to state material facts necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading. Each of the Defendants named in this Count owed Plaintiff and the other members of the Class who purchased shares of the Inverse Long Bond Fund pursuant to the Prospectuses the duty to make a reasonable and diligent investigation of the statements contained in the Prospectuses to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Each of the Defendants named in this Count, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectuses as set forth above.

81.     Plaintiff and other members of the Class did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectuses at the time they purchased shares of the Inverse Long Bond Fund.

82.     By reason of the conduct alleged herein, each of the Defendants named in this Count violated Section 12(a)(2) of the Securities Act. As a result of such violations, Plaintiff and other members of the Class sustained substantial damages in connection with their purchases of shares of the Fund. Accordingly, Plaintiff and other members of the Class who hold such shares have the right to rescind and recover the consideration paid for their shares with interest thereon, less the amount of income received thereon, upon the tender of the shares. Plaintiff and members of the Class hereby tender any and all shares that were damaged by Defendants' violation of

1  Section 12(a)(2) of the Securities Act. Plaintiff and other members of the Class who have sold

2  their shares seek damages to the extent permitted by law.

3      83.     Less than three years elapsed between the time that the securities upon which this

4  Count is brought were offered to the public and the time the original Complaint in this

5  consolidated litigation was filed. Less than one year elapsed between the time that Plaintiff

6  discovered or reasonably could have discovered the facts upon which this Count is based and the

7  time the original Complaint in this consolidated litigation was filed.

8

9                        **COUNT III**

10  **Violations Of §15 Of The Securities Act Against The Manager And The Individual Defendants**

11     84.     Plaintiff repeats and realleges each and every allegation contained above. For

12  purposes of this Count, Plaintiff expressly excludes and disclaims any allegation that could be

13  construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on

14  claims of strict liability and/or negligence under the Securities Act.

15     85.     Plaintiff brings this Count pursuant to Section 15 of the Securities Act, 15 U.S.C.

16  §77o, on behalf of himself and other members of the Securities Class against the Manager and

17  the Individual Defendants.

18     86.     As alleged in Counts I and II, the Trust, the Manager, the Distributor and the

19  Individual Defendants violated Sections 11 and 12(a)(2) of the Securities Act.

20     87.     In addition, the Manager was a control person of the Trust by virtue of its

21  responsibilities for providing investment advisory and management services to the Trust,

22  selecting the securities for the Fund's portfolio, and handling the Trust's day-to-day business.

23  Therefore, the Manager had the power to control the general affairs of the Trust.

24     88.     Each of the Individual Defendants was a control person of the Trust, the Manager,

25  and/or the Distributor. As a trustee, director and/or senior officer of the Trust and/or the

26  Manager, each of the Individual Defendants had the power to control the general affairs of the

27  Trust, the Manager, and the Distributor.

28

1

### PRAYER FOR RELIEF

2        WHEREFORE, Plaintiff prays for relief and judgment, as follows:

3        A.      Determining that this action is a proper class action and certifying Plaintiff as

4   class representatives under Federal Rule of Civil Procedure 23;

5        B.      Awarding compensatory and/or rescissionary damages in favor of Plaintiff and the

6   other Class members against all Defendants, jointly and severally, for all damages sustained as a

7   result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

8        C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

9   this action, including counsel fees and expert fees; and

10       D.      Granting such equitable/injunctive or other relief as deemed appropriate by the

11  Court.

12

### JURY DEMAND

13       Plaintiff hereby demands a trial by jury.

14  Dated: March 19, 2010

15                                              Respectfully submitted,

16                                              ALAN W. SPARER (No. 104921)
                                                MARC HABER (No. 192981)
17                                              KEVIN H. LEWIS (No. 197421)
                                                JAMES S. NABWANGU
18                                              SPARER LAW GROUP

19

20                                              By: _____
                                                        KEVIN H. LEWIS
21

22                                              Attorneys for Plaintiff  JAMES RAFTON,
                                                TRUSTEE OF THE JAMES AND CYNTHIA
23                                              RAFTON TRUST

24

25

26

27

28

CLASS ACTION COMPLAINT