ALAN W. SPARER (No. 104921)
MARC HABER (No. 192981)
KEVIN H. LEWIS (No. 197421)
JAMES S. NABWANGU (No. 236601)
SPARER LAW GROUP
100 Pine Street, 33rd Floor
San Francisco, California  94111-5128
Telephone:      415/217-7300
Facsimile:      415/217-7307
asparer@sparerlaw.com
mhaber@sparerlaw.com
klewis@sparerlaw.com
jnabwangu@sparerlaw.com

Attorneys for RYDEX LITIGATION GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES RAFTON, TRUSTEE OF THE JAMES AND CYNTHIA RAFTON TRUST,<br><br>Plaintiff,<br><br>v.<br><br>RYDEX SERIES FUNDS; PADCO ADVISORS INC. d/b/a RYDEX INVESTMENTS, INC.; RYDEX DISTRIBUTORS, INC.; RICHARD M. GOLDMAN; CARL G. VERBONCOEUR; JOHN O. DEMARET; NICK BONOS; MICHAEL P. BYRUM; COREY A. COLEHOUR; J. KENNETH DALTON; WERNER E. KELLER; THOMAS F. LYDON; PATRICK T. MCCARVILLE; ROGER SOMERS; and DOES 1 through 25, inclusive,<br><br>Defendants. | No. CV 10-01171 CRB<br><br>Action Filed:  March 19, 2010<br><br><br><br>NOTICE OF MOTION AND MOTION AND MOTION TO APPOINT  RYDEX LITIGATION GROUP AS LEAD PLAINTIFF AND TO APPROVE PROPOSED LEAD PLAINTIFFS' SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br><br>Date:      June 25, 2010<br>Time:     10:00 a.m.<br>Dept:     Courtroom 8, 19th Floor<br>Judge:    Hon. Charles R. Breyer |

1

**TABLE OF CONTENTS**

2

**Page**

NOTICE OF MOTION AND MOTION ............................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 2

STATEMENT OF ISSUES TO BE DECIDED .................................................................. 2

STATEMENT OF FACTS ...................................................................................................... 2

PROCEDURAL HISTORY .................................................................................................... 4

DISCUSSION ........................................................................................................................... 4

    A.    The Rydex Litigation Group Should Be Appointed Lead
           Plaintiff. ........................................................................................................... 4

          1.    The Rydex Litigation Group Has Complied With The
                PSLRA Notice Requirement And Has Timely Moved
                For Lead Plaintiff Status. ....................................................... 5

          2.    The Rydex Litigation Group Has The Largest Financial
                Interest Of Plaintiffs Who Have Submitted Applications
                For Lead Plaintiff. ................................................................... 6

          3.    The Rydex Litigation Group Is A Small, Organized
                Group Of Sophisticated Investors With a Pre-Existing
                Relationship Who Will Actively Oversee And Direct
                The Litigation. ......................................................................... 7

          4.    The Rydex Litigation Group Otherwise Satisfies The
                Requirements Of Rule 23. ...................................................... 9

               a.    The Rydex Litigation Group's Claims Are
                      Typical Of The Claims Of All Class Members. ........ 9

               b.    The Rydex Litigation Group Will Adequately
                      Protect The Interests Of All Class Members. ........... 10

    B.    The Rydex Litigation Group's Choice Of Counsel Should Be
           Approved. ....................................................................................................... 11

CONCLUSION ........................................................................................................................ 12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

Page

*Backe v. Novatel Wireless, Inc*., 2008 U.S. Dist. LEXIS 100622 ...... 10
(S.D. Cal. Dec. 10, 2008)

*Casden v. HPL Technologies, Inc.*, 2003 U.S. Dist. LEXIS 19606 ...... 6
(N.D. Cal. Sept. 29, 2003)

*Crossen v. CV Therapeutics, Inc*., 2005 U.S. Dist. LEXIS 41396 ...... 9
(N.D. Cal. Aug. 9, 2005)

*Ferrari v. Gisch*, 225 F.R.D. 599 (C.D. Cal. 2004) ...... 6

*In re Advanced Tissue Sec. Litig*., 184 F.R.D. 346 (S.D. Cal. 1998) ...... 7, 8

*In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) ...... 5, 6, 7, 9

*In re Cendant Corp. Litig*., 264 F.3d 201 (3d Cir. 2001) ...... 11

*In re Enron Corp. Sec. Litig*., 206 F.R.D. 427 (S.D. Tex. 2002) ...... 9

*In re Fuwei Films Sec. Litig*., 247 F.R.D. 432 (S.D.N.Y. 2008) ...... 6

*In re THQ Inc. Sec. Litig*., 2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002) ...... 10

*In re Versata, Inc*., 2001 U.S. Dist. LEXIS 24270 (N.D. Cal. Aug. 17, 2001) ...... 7, 11

*Reimer v. Ambac Fin. Group, Inc*., 2008 U.S. Dist. LEXIS 38729 ...... 6
(S.D.N.Y. May 9, 2008)

*Tanne v. Autobytel, Inc*., 226 F.R.D. 659 (C.D. Cal. 2005) ...... 11

*Weisz v. Calpine Corp*., 2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 15, 2002) ...... 9

## STATUTES

Securities Act of 1933

    Section 11 ...... 2, 10
    Section 12(a)(2) ...... 2, 10

Private Securities Litigation Reform Act of 1995, 15 U.S.C.

    §77z-1(a)(3) ...... 1
    §77z-1(a)(3)(A), (B) ...... 4
    §77z-1(a)(3)(B)(iii)(I) ...... 5
    §77z-1(a)(3)(B)(iii)(I)(bb) ...... 6
    §77z-1(a)(3)(B)(iii)(II) ...... 5, 9
    §78u-4(a)(3)(B) ...... 7
    §78u-4(a)3(B)(iii)(II) ...... 9

§78u-4(a)3(B)(iii)(II)(aa) .................................................. 11
§78u-4(a)3(B)(v) ............................................................... 11

**RULES**

Federal Rules of Civil Procedure

    23 .................................................................... 5, 9, 10
    23(a) ................................................................... 1, 2, 10
    23(a)(4) ...................................................................... 10

Civ. L.R. 3-7(d) .................................................................... 1

1

**NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE that on June 25, 2010, at 10:00 a.m., or as soon thereafter as

3   the matter may be heard, in Courtroom 8, before the Honorable Charles R. Breyer, United States

4   District Judge, Plaintiff James Rafton and movant James Darst, Jr. (collectively, the "Rydex

5   Litigation Group" or "Group") will and hereby do move for an Order: (1) appointing the Rydex

6   Litigation Group as Lead Plaintiff; and (2) approving the Rydex Litigation Group's selection of

7   Sparer Law Group as Lead Counsel.

8      This motion is based on this Notice of Motion and Motion, the Memorandum of Points

9   and Authorities, the accompanying Declarations of Kevin H. Lewis, James Rafton, and James

10   Darst, Jr., the Corrected Certification of James Rafton, the Certification of James Darst, Jr. and

11   the complete files and records herein, and, if necessary, on argument and other evidence to be

12   presented at the hearing of this matter.

13      The Rydex Litigation Group makes this Motion on the belief that it is the most "adequate

14   plaintiff" as defined in the lead plaintiff provision of the Private Securities Litigation Reform Act

15   of 1995 ("PSLRA"), 15 U.S.C. §77z-1(a)(3), because it has what is believed to be the largest

16   financial interest in the relief sought by the Class with losses in the amount of $743,341.27, and

17   otherwise satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure

18   23(a). The Rydex Litigation Group further requests that the Court approve its selection of Sparer

19   Law Group as Lead Counsel because the firm has substantial experience prosecuting and

20   defending complex securities cases and class actions.

21      For all of the foregoing reasons, the Rydex Litigation Group respectively requests that

22   this Court: (1) appoint the Rydex Litigation Group as Lead Plaintiff in this action; (2) approve

23   the Rydex Litigation Group's selection of Lead Counsel for the Class; and (3) grant such other

24   and further relief as the Court may deem just and proper.

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF ISSUES TO BE DECIDED

This putative class action arises from false and misleading statements made in the Registration Statements, Prospectuses and related documents of the Rydex Inverse Government Long Bond Strategy Fund (the "Fund") in violation of Sections 11 and 12(a)(2) of the Securities Act.  By this motion, the Rydex Litigation Group hereby moves for appointment as Lead Plaintiff in this action against Defendants, and for approval of the Rydex Litigation Group's selection of the Sparer Law Group as Lead Counsel.

The Rydex Litigation Group seeks to be appointed Lead Plaintiff pursuant to the provisions set forth in the PSLRA.  The members of the Rydex Litigation Group purchased and/or held Fund shares from March 19, 2007 to March 19, 2010 (the "Class Period").  Based on the information available at this time, the Rydex Litigation Group believes it has incurred the largest known loss of any person or group seeking appointment as Lead Plaintiff—incurring aggregate losses of approximately $743,341.27.  The Rydex Litigation Group will vigorously and actively represent the class in this action, and otherwise satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23(a).

The Rydex Litigation Group also seeks approval of its selection of Sparer Law Group as Lead Counsel.  The Rydex Litigation Group has retained counsel having substantial experience in prosecuting and defending complex securities cases and class actions.

## STATEMENT OF FACTS

On March 19, 2010, Plaintiff James Rafton filed a class action complaint on behalf of all Class A, B and C purchasers of the Fund during the period March 19, 2007 and March 19, 2010. The Complaint alleges that during the class period Defendants violated Sections 11 and 12(a)(2) of the Securities Act of 1933 by issuing and offering for sale the Fund's shares pursuant to untrue or misleading Registration Statements and related SEC filings.  Cmplt. ¶¶1-2.

The Complaint alleges that as it was marketed and sold, the Fund was supposed to be inversely correlated to its benchmark—the price of the 30-year U.S. Treasury Bond or "Long Bond."  For example, when the price of the benchmark 30-year U.S. Treasury Bond decreases,

-2-

the price of the Fund will increase by the same percentage.  However, because of the undisclosed mathematical compounding effect present that causes the Fund's price to deviate from its benchmark in a manner that harms investors, the Fund failed to deliver the expected returns.  *Id.* ¶¶29-37.

The Financial Industry Regulatory Authority ("FINRA") issued a regulatory notice in June 2009 which cautioned member firms about the risks inherent in these types of complicated financial products, stating that they "are unsuitable for retail investors who plan to hold them for longer than one trading session, particularly in volatile markets." *Id.* ¶48.  FINRA admonished member firms that sales materials relating to leveraged funds must be "fair and balanced." *Id.*

The Complaint alleges that the Registration Statements issued for the Fund during the class period were false and/or misleading because they failed to disclose:  (a) that the mathematical "compounding" would cause the fund's price to deviate from the inverse movement of the Long Bond index for periods lasting longer than a single trading day; (b) that inverse correlation between the Fund and the price of the Long Bond over time would only occur in the rarest of circumstances; (c) that the Fund's performance over time would inevitably diverge on an increasing basis from the inverse of the performance of the price of the Long Bond; and (d) that the Fund is unsuitable for investors who plan to hold it for longer than one trading session, particularly in volatile markets. *Id.* ¶¶63-64.  As a result of Defendants' conduct, during the Class Period, investors holding the Fund's shares lost money even though the benchmark price of the Long Bond fell—precisely the type of period during which investors would have expected to make money. *Id.* ¶37.

The Rydex Litigation Group consists of two large investors, (James Rafton and James Darst, Jr.), with a pre-litigation relationship.  Mr. Rafton and Mr. Darst are business partners and have a long personal relationship with each other.  Together they purchased 415,615.92 shares during the class period; had net purchases of 382,464.35 shares; expended net funds during the class period of approximately $5,831,201.87; and have losses during the period of approximately $743,341.27.  The breakdown for both members of the Group is set forth in the chart below at

Section B.2.  Mr. Rafton and Mr. Darst believe that their losses represent the largest known loss of any person or group seeking appointment as Lead Plaintiff.

## PROCEDURAL HISTORY

On March 19, 2010, Plaintiff James Rafton filed the first lawsuit against Defendants in any district, *Rafton, et al. v. Rydex Series Funds, et al.*, in the Northern District of California, individually and on behalf of all persons or entities that purchased or otherwise acquired shares in the Fund pursuant or traceable to the Fund's false and misleading Registration Statements and Prospectuses.

The same day that his Complaint was filed, March 19, 2010, Plaintiff caused to be filed a notice over Marketwire, a nationally recognized wire service as required by the PSLRA, informing investors of the pendency of the action, and that investors had sixty days to seek appointment as lead plaintiff.  Declaration of Kevin H. Lewis ("Lewis Dec.") Ex. A ("Published Notice").  The Published Notice also described the general allegations against Defendants.  *Id.*

Consistent with the terms of the PSLRA, Movants now timely file this motion for appointment as Lead Plaintiff, which is within 60 days from the publication of the Published Notice of pendency of the action on Marketwire.

## DISCUSSION

### A.       The Rydex Litigation Group Should Be Appointed Lead Plaintiff.

The selection of Lead Plaintiff in class actions subject to the procedural requirements of the PSLRA depends upon a determination as to which plaintiff or group of plaintiffs is the most capable of representing the interests of the class.  *See* 15 U.S.C. §§77z-1(a)(3)(A), (B) (the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members … in accordance with this subparagraph").  The Rydex Litigation Group consists of two sophisticated investors and businessmen with a demonstrated ability to direct litigation and represent the interests of the class.

The PSLRA creates a rebuttable presumption that "the most adequate plaintiff" is the plaintiff or group of plaintiffs who: (1) has either filed the complaint or brought a motion for

-4-

1  appointment as lead plaintiff in response to the publication of notice; (2) has the largest financial

2  interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Federal

3  Rule of Civil Procedure 23.  15 U.S.C. §77z-1(a)(3)(B)(iii)(I).  This presumption may be rebutted

4  only upon proof that the presumptive lead plaintiff: (1) will not fairly and adequately represent

5  the class; or (2) is subject to unique defenses that will render such plaintiff incapable of

6  adequately representing the class.  15 U.S.C. §77z-1(a)(3)(B)(iii)(II).

7         The Ninth Circuit has held that the PSLRA "provides a simple three-step process for

8  identifying the lead plaintiff."  *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).  The first

9  step "consists of publicizing the pendency of the action, the claims made and the purported class

10  period."  *Id*.  At the second step, "the district court must consider the losses allegedly suffered by

11  the various plaintiffs," and select as the "presumptively most adequate plaintiff . . . the one who

12  has the largest financial interest in the relief sought by the class and [who] otherwise satisfies the

13  requirements of Rule 23 of the Federal Rules of Civil Procedure."  *Id*. at 729-30 (citations and

14  internal quotation marks omitted).  In the third and final step, the court must "give other plaintiffs

15  an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's

16  typicality and adequacy requirements."  *Id*. at 730.

17         As more fully discussed below, the Rydex Litigation Group is the most adequate Lead

18  Plaintiff investor group, is not subject to unique defenses, and therefore should be appointed as

19  Lead Plaintiff.

20              **1.      The Rydex Litigation Group Has Complied With The PSLRA
                         Notice Requirement And Has Timely Moved For Lead Plaintiff**
21              **Status.**

22         The Rydex Litigation Group has timely moved this Court for appointment as Lead

23  Plaintiff within the 60-day period required by the PSLRA.  On March 19, 2010, Plaintiff James

24  Rafton issued a notice consistent with the provisions of the PSLRA as outlined above.  *See* Lewis

25  Dec. ¶2 & Ex. A.  The Rydex Litigation Group filed this motion within the time required by the

26  PSLRA and therefore met the first requirement required to be presumptive Lead Plaintiff.

27

28

**2.     The Rydex Litigation Group Has The Largest Financial
Interest Of Plaintiffs Who Have Submitted Applications For
Lead Plaintiff.**

Under the PSLRA, the presumptive "most adequate plaintiff" is the plaintiff or plaintiff group with the largest financial interest in the relief sought by the class.  15 U.S.C. §77z-1(a)(3)(B)(iii)(I)(bb); *Ferrari v. Gisch*, 225 F.R.D. 599, 603 (C.D. Cal. 2004) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status …") (citation and internal quotation marks omitted).  To determine whether a lead plaintiff has the largest financial loss, courts compare the financial interests of the various plaintiffs at stake in the litigation.  *In re Cavanaugh*, 306 F.3d at 729-30.

The Ninth Circuit does not have a uniform or mandatory rule for calculating financial interest.  *Id.* at 731 n.8 (district court's discretion in determining which plaintiff has the greatest financial interest in the litigation not decided).  However, courts in the Northern District have applied a four-factor test to identify the plaintiff with the largest financial interest:  "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered."  *See Casden v. HPL Technologies, Inc.*, 2003 U.S. Dist. LEXIS 19606, at *12 (N.D. Cal. Sept. 29, 2003).  Courts generally have concluded that the last factor is the most important element of the test.  *See Reimer v. Ambac Fin. Group, Inc.*, 2008 U.S. Dist. LEXIS 38729, at *10 (S.D.N.Y. May 9, 2008) ("The fourth factor is viewed as the most important"); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008) ("This Court, like many others, 'shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant'") (citation omitted).

Applying the four-factor test, the losses suffered for the Rydex Litigation Group collectively and for each of its members are summarized below:

| Individual Committee Members | (1) Shares Purchased During Class Period | (2) Net Shares Purchased During Class Period[1] | (3) Net Funds Expended During Class Period[2] | (4) Loss During Class Period |
|---|---|---|---|---|
| James Rafton | 241,333.52 | 208,181.95 | $2,931,201.87 | $297,237.42 |
| James Darst, Jr., | 174,282.40 | 174,282.40 | $2,900,000.00 | $446,103.85 |
| **Totals** | **415,615.92** | **382,464.35** | **$5,831,201.87** | **$743,341.27** |

*See* Lewis Dec. Exs. B, C (detailing Rydex Litigation Group members' Rydex Inverse Government Long Bond Strategy Fund transaction information). To the best of our knowledge, the Rydex Litigation Group has the largest financial interest in the litigation of any party or cohesive group moving to be appointed Lead Plaintiff, and it is "presumptively the most adequate plaintiff" under the PSLRA.

> **3.     The Rydex Litigation Group Is A Small, Organized Group Of Sophisticated Investors With a Pre-Existing Relationship Who Will Actively Oversee And Direct The Litigation.**

The PSLRA expressly recognizes that groups of individuals may serve as lead plaintiffs. *See* 15 U.S.C. §78u-4(a)(3)(B); *In re Cavanaugh*, 306 F.3d at 731 (appointment of a lead plaintiff group consisting of a number of investors is permissible under the PSLRA). In addition, district courts in the Ninth Circuit have held that under appropriate circumstances small groups, especially where the groups have a pre-litigation relationship, can aggregate their financial losses when seeking to be appointed lead plaintiff. *See In re Versata, Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 24270, at *19-*23 (N.D. Cal. Aug. 17, 2001) ("singular focus [in determining adequacy of PSLRA group] will be whether the asserted group has demonstrated the ability to represent the class and direct the litigation without undue influence from counsel"). To qualify as the "most adequate plaintiff," a group of investors must be a cohesive, closely related group, not a large, unrelated group of investors. *See In re Advanced Tissue Sciences Sec. Litig.*, 184 F.R.D. 346,

---

[1] "Net Shares Purchased" is the difference between the number of shares purchased and the number of shares sold during the class period.

[2] "Net Funds Expended" is the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period.

1   352 (S.D. Cal. 1998) (refusing to appoint a group consisting of "over 250 unrelated investors"

2   because of the court's determination that doing so would be "inconsistent with the goal of

3   restoring control over lawsuits to plaintiffs, instead of counsel"). Where a lead plaintiff group is

4   a small, discrete group of sophisticated investors, who have each suffered substantial losses and

5   who have organized themselves in a manner designed to ensure that they take an active oversight

6   role in directing the litigation, the appointment of the group as lead plaintiff is appropriate. *Id.* at

7   352-53 (appointing group of six investors as lead plaintiff).

8          The Rydex Litigation Group is a permissible group under the PSLRA that meets the

9   standards articulated in the opinions above. The group consists of two individuals who are

10  business partners and have known each other for over thirty years. Mr. Rafton and Mr. Darst

11  discussed investing in the Fund with each other before making their investments, and hired and

12  used the same broker to purchase their shares in the Fund. In addition, Mr. Rafton and Mr. Darst

13  approached and later decided to retain Sparer Law Group together to determine if their legal

14  rights had been violated based upon Defendants' actions. In short, the Rydex Litigation Group is

15  precisely the type of closely knit group that is favored by Courts in this district, because they will

16  not be susceptible to undue influence of counsel.

17         In addition to their pre-litigation relationship, each individual in the group has significant

18  business experience, and is capable of overseeing counsel. *See* Lewis Dec. Exs. D, E. Each

19  member of the Group also invested large sums in the Fund, amounting to over $2,900,000, and

20  incurred substantial losses totaling $743,341.27, and as a result each is substantially motivated to

21  prosecute this action. Each has signed a sworn certification affirming their willingness to serve

22  as, and assume the responsibilities of, a class representative. *See* Lewis Dec. Exs. B, C.

23         After meeting with Sparer Law Group, the Rydex Litigation Group decided to adopt

24  formalities to manage this litigation. The members of the Group determined how they will

25  supervise the litigation and determined how they were to receive briefing updates from counsel.

26  The Group also established a process for making decisions regarding the litigation, and

27  established means to communicate regarding the matter. The Group decided that either member

28  could request a meeting or conference call, and that counsel is to provide written updates to the

-8-

1    Group monthly via email or whenever important news occurs.  The Group also decided that

2    counsel is to provide quarterly billing records documenting the time spent and the costs incurred

3    for the quarter, and the total of these items to date.  Finally, the Group decided that any decisions

4    regarding the litigation must be unanimous.

5        Because of the facts set forth above, the Rydex Litigation Group is a sophisticated and

6    independent group that is capable of overseeing this matter consistent with the provisions of the

7    PSLRA.

8

9                **4.**       **The Rydex Litigation Group Otherwise Satisfies The Requirements Of Rule 23.**

10        Once the movant with the largest financial interest has been identified, the Court must

11    appoint that movant as Lead Plaintiff unless it finds that the movant is otherwise inadequate or

12    subject to unique defenses.  15 U.S.C. §77z-1(a)(3)(B)(iii)(II); 15 U.S.C. §78u-4(a)(3)(B)(iii)(II);

13    *In re Cavanaugh*, 306 F.3d at 732.  In the context of determining the appropriate lead plaintiff

14    under the PSLRA, the "typicality" and "adequacy" requirements of Federal Rule of Civil

15    Procedure 23 are the key factors.  *Id.* at 730.

16

17                **a.**       **The Rydex Litigation Group's Claims Are Typical Of The Claims Of All Class Members.**

18        Because the Rydex Litigation Group's claims all arise from the same course of conduct

19    and have the same essential characteristics, the claims are "typical" under Federal Rule of Civil

20    Procedure 23.  *See Weisz v. Calpine Corp.*, 2002 U.S. Dist. LEXIS 27831, at *30 (N.D. Cal.

21    Aug. 15, 2002) (the typicality requirement is satisfied when the plaintiff's claim arises from the

22    same event or course of conduct that gives rise to the claims of other members and is based on

23    the same legal or remedial theory); *Crossen v. CV Therapeutics*, 2005 U.S. Dist. LEXIS 41396,

24    at *13-*14 (N.D. Cal. Aug. 9, 2005) (same); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 446

25    n.10 (S.D. Tex. 2002) ("The test for typicality is not demanding.…  [T]he critical inquiry is

26    whether the class representative's claims have the same essential characteristics of the putative

27    class") (citations omitted).

28        *Here*, the typicality requirement is met because the Rydex Litigation Group's claims arise

1   from the same course of conduct that affects all members of the class.  The Rydex Litigation

2   Group, like all other members of the class, was damaged because Defendants violated Sections

3   11 and 12(a)(2) of the Securities Act by misrepresenting the effects of mathematical

4   compounding on the Fund's shares through issuing identical Registration Statements and

5   Prospectuses.

6        Moreover, the Rydex Litigation Group is not subject to any unique or special defenses.

7   Accordingly, the Rydex Litigation Group meets the typicality requirement of Rule 23.

8

9                    **b.    The Rydex Litigation Group Will Adequately Protect**
                          **The Interests Of All Class Members.**

10       Under Federal Rule of Civil Procedure 23(a)(4), the representative party must "fairly and

11  adequately protect the interests of the class."  The requirements of Rule 23(a) relating to adequate

12  representation are satisfied if the named plaintiffs and their counsel: (1) do not have any conflicts

13  of interest with other class members; and (2) will prosecute the action vigorously on behalf of the

14  class.  *In re THQ Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 7753, at *20 (C.D. Cal. Mar. 22, 2002)

15  (citations omitted); *Backe v. Novatel Wireless, Inc.*, 2008 U.S. Dist. LEXIS 100622, at *10-*11

16  (S.D. Cal. Dec. 10, 2008) (same).

17       The Rydex Litigation Group's interests are clearly aligned with the members of the

18  proposed class.  There is no evidence of antagonism between the Rydex Litigation Group's

19  interests and those of the proposed class members.  In fact, the Rydex Litigation Group is clearly

20  motivated and able to vigorously pursue this action.  As noted above, the Rydex Litigation Group

21  has claims identical to the proposed class, and has been harmed by the same wrongful conduct.

22  In addition, each member of the Rydex Litigation Group has a significant and compelling interest

23  in the successful conclusion of the action given his substantial financial loss.  Mr. Rafton and Mr.

24  Darst have also confirmed their commitment to this action by signing a certification affirming a

25  willingness to serve as lead plaintiff, assume the responsibilities of class representative, and

26  confer with counsel on a regular basis.  Finally, the Rydex Litigation Group has selected and

27  retained to represent them and the class, attorneys experienced in litigating securities cases and

28  class actions such as this one.

**B.      The Rydex Litigation Group's Choice Of Counsel Should Be Approved.**

The PSLRA directs that once the court has designated a lead plaintiff, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v); *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 673 (C.D. Cal. 2005) (A court may disturb the lead plaintiff's choice of counsel only if it appears necessary to "'protect the interests of the class'") (quoting 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa)); *In re Versata, Inc.*, 2001 U.S. Dist. LEXIS 24270, at *27 (same). While the appointment of counsel is made subject to the approval of this Court, the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff, and courts generally defer to the lead plaintiff's choice. *In re Cendant Corp. Litig.*, 264 F.3d 201, 273-75 (3d Cir. 2001) (analyzing legislative history of Reform Act and concluding that courts "should generally employ a deferential standard in reviewing the lead plaintiff's choices").

The Rydex Litigation Group has selected Sparer Law Group to serve as lead counsel for the class. Sparer Law Group ("SLG) was founded in 2003 by Alan Sparer after 20 years of experience as a litigator and director at Howard, Rice, Nemerovski, Canady, Falk & Rabkin in San Francisco, California. The firm's primary practice focuses on representing individual and institutional investors in complex litigation in federal and state courts and arbitrations in FINRA and other forums. In addition, SLG continues to litigate complex matters in diverse areas, including unlawful banking practices, CEQA, insurance coverage, real estate and health care. As one example, SLG is currently serving as lead plaintiff's counsel for a class of investors in the Oppenheimer Rochester Funds Group multidistrict litigation pending in the U.S. District Court for the District of Colorado.

Three of SLG's four lawyers spent a substantial part of their legal careers practicing at Howard Rice before forming or joining SLG. Their experience in securities litigation, class actions, consolidated actions and other major litigation, together with a brief biography of each lawyer, is attached as Exhibit F to the Lewis Declaration. The experience of SLG in litigating class and individual securities cases and business matters assures that Plaintiffs will be well

1  represented, not only as to class certification issues, but also with respect to the securities at issue

2  in this litigation.

3  <center>**CONCLUSION**</center>

4        For the foregoing reasons, the Rydex Litigation Group respectfully requests that the Court

5  issue an Order: (1) consolidating the related actions; (2) appointing the Rydex Litigation Group

6  and its members Lead Plaintiffs in this action; and (3) approving Sparer Law Group as Lead

7  Counsel.

8  Dated: May 18, 2010

9                            Respectfully submitted,

10                            ALAN W. SPARER
                          MARC HABER

11                            KEVIN H. LEWIS
                          JAMES S. NABWANGU

12                            SPARER LAW GROUP

13

14                            By:           */s/ Kevin H. Lewis*

15                                        KEVIN H. LEWIS

16                            Attorneys for RYDEX LITIGATION GROUP

17

18

19

20

21

22

23

24

25

26

27

28

<center>-12-</center>