ALAN W. SPARER (No. 104921)
MARC HABER (No. 192981)
KEVIN H. LEWIS (No. 197421)
JAMES S. NABWANGU (No. 236601)
SPARER LAW GROUP
100 Pine Street, 33rd Floor
San Francisco, California  94111-5128
Telephone:      415/217-7300
Facsimile:      415/217-7307
asparer@sparerlaw.com
mhaber@sparerlaw.com
klewis@sparerlaw.com
jnabwangu@sparerlaw.com

Attorneys for RYDEX LITIGATION GROUP

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES RAFTON, TRUSTEE OF THE JAMES AND CYNTHIA RAFTON TRUST,<br><br>             Plaintiff,<br><br>     v.<br><br>RYDEX SERIES FUNDS; PADCO ADVISORS INC. d/b/a RYDEX INVESTMENTS, INC.; RYDEX DISTRIBUTORS, INC.; RICHARD M. GOLDMAN; CARL G. VERBONCOEUR; JOHN O. DEMARET; NICK BONOS; MICHAEL P. BYRUM; COREY A. COLEHOUR; J. KENNETH DALTON; WERNER E. KELLER; THOMAS F. LYDON; PATRICK T. MCCARVILLE; ROGER SOMERS; and DOES 1 through 25, inclusive,<br><br>             Defendants. | No. CV 10-01171 CRB<br><br>Action Filed:  March 19, 2010<br><br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO DISTRICT OF MARYLAND PURSUANT TO 28 U.S.C. § 1404(a)<br><br>Date:     June 25, 2010<br>Time:    10:00 a.m.<br>Dept:    Courtroom 8, 19th Floor<br>Judge:  Hon. Charles R. Breyer |

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ........................................................................................ 1

STATEMENT OF RELEVANT FACTS ...................................................................... 2

    A.     Plaintiffs and The Allegations In The Complaint ...................................... 2

    B.     Defendants And Their Business Operations Are Spread
           Throughout The Country. ......................................................................... 3

ARGUMENT ................................................................................................................... 4

I.      DEFENDANTS MISSTATE THE LEGAL STANDARDS FOR DECIDING A
        MOTION TO TRANSFER UNDER SECTION 1404(a) ................................. 4

II.     USING THE PROPER SECTION 1404(a) STANDARDS, DEFENDANTS'
        MOTION TO TRANSFER SHOULD BE DENIED. ....................................... 7

    A.     Plaintiffs' Choice of Forum And Connections With The
           Northern District Weigh Against Transfer. ................................................ 7

    B.     The Convenience Of The Parties Does Not Favor Transfer. ..................... 8

    C.     The Convenience Of The Witnesses Weighs Against Transfer. ............... 10

    D.     Ease of Access To The Evidence Is Not A Significant Factor In
           the Transfer Analysis. ............................................................................... 12

    E.     The Court Congestion Factor Should Not Be A Significant
           Consideration In This Case. ...................................................................... 13

    F.     The Remaining Factors In The Section 1404(a) Analysis Are
           Neutral. ..................................................................................................... 13

III.    THERE IS NO "CENTER OF GRAVITY" OF THIS LITIGATION BECAUSE
        THE PARTIES AND OTHER WITNESSES ARE LOCATED
        THROUGHOUT THE COUNTRY. ........................................................... 13

CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page**

*Abbott v. Lockheed Martin Corp.*, 2007 U.S. Dist. LEXIS 19600                    12
(S.D. Ill. March 20, 2007)

*Amini Innovation Corp. v. JS Imps. Inc.*, 2007 U.S. Dist. LEXIS 43758            13
(C.D. Cal. May 21, 2007)

*Board of Trs. Sheet Metal Workers Nat'l Pension Fund v. Elite Erectors, Inc.*,   12
212 F.3d 1031 (7th Cir. 2000)

*Chamberlain v. US Bancorp Cash Balance Ret. Plan*, 2005 U.S. Dist. LEXIS         14
25571 (S.D. Ill. Oct. 25, 2005)

*Cohn v. Oppenheimerfunds, Inc.*, 2009 U.S. Dist. LEXIS 106749                    14
(S.D. Cal. Nov. 12, 2009)

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986)      5, 10

*Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530 (N.D. Cal. 2005)            6

*Ethanol Partners Accredited v. Wiener*, 617 F. Supp. 300 (E.D. Pa. 1985)        7, 8

*Flotsam of Cal., Inc. v. Huntington Beach Conf. & Visitors Bureau*,           10, 11
2007 U.S. Dist. LEXIS 31762 (N.D. Cal. Apr. 18, 2007)

*Gates Learjet Corp. v. Jensen*, 743 F.2d 1325 (9th Cir. 1984)                    13

*Gerin v. Aegon, USA, Inc.*, 2007 U.S. Dist. LEXIS 28049 (N.D. Cal. Apr. 3, 2007) 14

*Gulf Oil v. Gilbert*, 330 U.S. 501 (1947)                                       2, 6

*In re Geopharma, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 8885                   15
(S.D.N.Y. May 11, 2005)

*In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp. 2d 164           14
(E.D.N.Y. 2006)

*In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973 (D. Del. 1993)    9, 10, 15

*In re Yahoo! Inc.*, 2008 U.S. Dist. LEXIS 20605 (N.D. Cal. Mar. 10, 2008)      6, 14

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000)                     5

*Kaloghlian v. Best Buy Stores*, L.P., 2008 U.S. Dist. LEXIS 111475                6
(N.D. Cal. Nov. 8, 2008)

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987) ........................................ 6, 7

*Maxon v. Jefferson Pilot Sec. Corp.*, 2002 U.S. Dist. LEXIS 5888
(N.D. Cal. Apr. 2, 2002) ........................................ 5, 6

*Milton v. Trueposition, Inc.*, 2009 U.S. Dist. LEXIS 14337
(N.D. Cal. Feb. 9, 2009) ........................................ 7

*Nissan Motor Co., Ltd. v. BMW, Holding Corp.*, 2002 U.S. Dist. LEXIS 20744
(N.D. Ill. 2002) ........................................ 11

*Photogen, Inc. v. Wolf*, 2001 U.S. Dist. LEXIS 5796  (N.D. Ill. May 7, 2001) ........................................ 12

*Plum Tree, Inc. v. Stockment*, 488 F.2d 754 (3d Cir. 1973) ........................................ 9

*Rare Breed Distilling v. Heaven Hill Distilleries*, 2010 U.S. Dist. LEXIS 12140
(N.D. Jan. 22, 2010) ........................................ 5, 7

*Raynes v. Davis*, 2007 U.S. Dist. LEXIS 85336 (C.D. Cal. 2007) ........................................ 13

*Ritter v. Zuspan*, 451 F. Supp. 926  (E.D. Mich. 1978) ........................................ 6

*Rosen v. Fidelity Fixed Income Trust*, 1995 U.S. Dist. LEXIS 13877
(E.D. Pa. 1995) ........................................ 8, 10, 11, 15

*Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985) ........................................ 5, 6

*Shalaby v. Newell Rubbermaid, Inc.*, 2007 U.S. Dist. LEXIS 81663
(N.D. Cal. Oct. 23, 2007) ........................................ 6

*Somerville v. Major Exploration, Inc.*, 576 F. Supp. 902 (S.D.N.Y. 1983) ........................................ 12

*Stewart v. Jos. A. Bank Clothiers, Inc.*, 2010 U.S. Dist. LEXIS 20730
(N.D. Cal. Feb. 10, 2010) ........................................ 5, 6

*Temple v. Guardsmark LLC*, 2009 U.S. Dist. LEXIS 91306
(N.D. Cal. Sept. 16, 2009) ........................................ 7, 10

*Trujillo v. GT USA, Inc.*, 2010 U.S. Dist. LEXIS 26828 (N.D. Cal. Mar. 5, 2010) ........................................ 5

*Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151 (N.D. Cal. 2009) ........................................ 5

*Wade v. Indus. Funding Corp.*, 1992 U.S. Dist. LEXIS 12921
(N.D. Cal. May 28, 1992) ........................................ 7, 4, 15

**STATUTES**

15 U.S.C. § 77v(a)                                                                                      6

28 U.S.C. § 1404(a)                                                                              *passim*

**SUMMARY OF ARGUMENT**

Defendants' Motion to Transfer Venue misstates the legal standards and relegates key facts to footnotes while seeking to transfer this case three thousand miles from Plaintiffs' chosen venue and the place where they purchased their shares of the Rydex Inverse Government Long Bond Strategy Fund ("Fund").  Unlike many cases in which courts have granted motions to transfer venue, Plaintiffs James Rafton and James Darst did not forum shop by filing in the Northern District.  Both Plaintiffs live in this District and purchased their Fund shares here.

As discussed more fully below, district courts routinely give considerable deference to a plaintiff's decision to file on his "home turf."  In such cases, courts rarely disturb the forum choice absent a strong showing of inconvenience by the moving party, and the plaintiff's forum choice is given substantial weight in the analysis of convenience and judicial economy factors under 28 U.S.C. §1404(a).

The remaining factors under 28 U.S.C. §1404(a) also do not favor a transfer to the District of Maryland.  Defendants fail to demonstrate any compelling inconvenience that would arise from litigating in this District in their supporting declaration, and their Motion minimizes facts linking the corporate and individual defendants to locations outside of Maryland.

Defendants sidestep the fact that eight of eleven individual defendants do not live in the District of Maryland and two reside in California.  Buried in a footnote is the fact that Rydex Distributors, Inc. has an office located in the Northern District and two other offices in California.  Defendants fail to mention that Rydex Investments, Inc.'s corporate parent, Security Benefit Corporation ("SBC"), is headquartered in Kansas, and that SBC is ultimately controlled by Guggenheim Partners, with offices in New York and Chicago.  Even Amy Lee, the SBC counsel who signed the declaration in support of Defendants' motion to transfer this matter, works in SBC's offices in Topeka, Kansas.  Defendants also fail to address a key convenience factor—the convenience of third party witnesses—which weighs against transfer to the District of Maryland.

In sum, this is a case in which transfer would not be more convenient or more efficient for any party or third party, while it would materially disadvantage Plaintiffs and their counsel.  "It is

1   often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or

2   'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right

3   to pursue his remedy.  But unless the balance is strongly in favor of the defendant, the plaintiff's

4   choice of forum should rarely be disturbed." *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947)

5   (footnote omitted). Applying these bedrock principles, Defendants' motion to transfer venue

6   should be denied.

**STATEMENT OF RELEVANT FACTS**

8       **A.      Plaintiffs and The Allegations In The Complaint.**

9           On March 19, 2010, Plaintiff James Rafton filed a class action complaint on behalf of all

10  purchasers of the Rydex Inverse Government Long Bond Strategy Fund (the "Fund") during the

11  period March 19, 2007 and March 19, 2010.  The Fund is a mutual fund similar to an exchange-

12  traded fund or ("ETF") that is designed to track a particular benchmark. Cmplt. ¶29.  The

13  Complaint alleges that, as marketed and sold, the Fund was supposed to be inversely correlated

14  to its benchmark—the price of the 30-year U.S. Treasury Bond or "Long Bond."  *Id.*

15  Accordingly, when the price of the Long Bond decreased, the Fund was to increase by a similar

16  percentage.

17          However, because of the undisclosed mathematical compounding effect that causes the

18  Fund's price to deviate from its benchmark in a manner that harms investors, the Fund failed to

19  deliver the expected returns. *Id.* ¶¶29-37.   Investors holding Fund shares during the class period

20  lost money, even though the price of the benchmark Long Bond decreased in price—precisely

21  the type of period during which investors would have expected to make money.  *Id.* ¶37.

22  Plaintiffs allege that the Registration Statements issued for the Fund during the class period were

23  false and/or misleading because they failed to make material disclosures about how this

24  compounding would adversely affect the performance of the Fund, particularly for investors who

25  hold it for longer than one trading session.  *Id.* ¶¶63-64.

26          The Complaint identifies certain potential third party witnesses, including brokerage

27  firms who have discontinued selling ETFs, a research analyst who covers ETFs, and a self-

28  regulatory organization that has raised red flags about the sales practices of firms such as Rydex

OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE        No. CV 10-01171 CRB

1   regarding these types of products.  *Id*. ¶¶49-53.  Plaintiffs do not believe that any of these third

2   party witnesses are located in the District of Maryland.  Lewis Decl. ¶7 & Exs. A-G.

3       On May 18, 2010, James Rafton and his business partner and colleague James Darst, Jr.,

4   both residents of the Northern District, filed jointly to be co-lead plaintiffs in this matter.  *Id*. ¶4.

5   No other potential lead plaintiffs have applied for lead plaintiff status.  *Id*.  Mr. Rafton and Mr.

6   Darst have engaged the attorneys of Sparer Law Group to pursue this action.  *Id*. ¶5.  Sparer Law

7   Group's sole office is located in San Francisco.  *Id*.

8       **B.**      **Defendants And Their Business Operations Are Spread Throughout**
         **The Country.**

9

10      Defendants in this action include Defendant Rydex Series Funds (the series of funds

11  which includes the Fund at issue in this Complaint), Defendant Rydex Distributors, Inc. (the

12  principal underwriter and distributor for the Fund), PADCO Advisors, Inc. d/b/a/ Rydex

13  Investments, Inc. (the investment manager of the Fund) (collectively the "Corporate

14  Defendants"), and eleven individual defendants who are present or former Trustees and one

15  Officer of the Fund (collectively the "Individual Defendants").  Cmplt. ¶¶8-22.

16      Rydex Distributors, Inc. is the Fund's marketing and distribution arm.  According to

17  Rydex Distributors Inc.'s 2009 Annual Audited Report, its marketing and sales activities

18  "include maintaining a national service operation for the registered investment advisors and

19  broker/dealers that recommend and/or sell the Rydex Funds."  Lewis Decl. ¶8 & Ex. H, Notes to

20  Stmt. of Fin. Condition at 4.  Rydex Distributors, Inc. has offices in the Northern District and

21  elsewhere in California.  Declaration of Amy Lee In Support of Motion To Transfer Venue ("Lee

22  Decl.") ¶11.

23      Defendants' declaration in support of their Motion states that the principal offices of the

24  investment manager, PADCO Advisors, Inc., are located in Rockville, Maryland, and that

25  various witnesses and documents are located there.  Lee Decl. ¶10.  This declaration does not

26  mention that the investment manager's corporate parent, Security Benefit Corporation ("SBC") is

27  headquartered in Topeka, Kansas.  Lewis Decl. ¶¶9-10 & Ex. I-J.  SBC, in turn, is part of a larger

28  complex of entities that are wholly owned by Guggenheim SBC Holdings LLC ("Guggenheim"),

1   a company headquartered in Chicago and New York with a global network of offices throughout

2   the United States, Europe and Asia.  *Id*. ¶¶10-11 & Exs. J-K.

3        The declaration also does not mention that recent corporate restructurings at Guggenheim

4   and SBC have resulted in the investment manager being rebranded as "Rydex/SGI" to its

5   customers through an affiliate called Security Global Investors (SGI).  *Id*. ¶12 & Ex. L.  The SGI

6   offices of "Rydex/SGI" are headquartered in San Francisco.  *Id*. ¶13 & Ex. M.

7        Certain important operations of the investment manager and distributor are conducted in

8   SBC's offices in Kansas.  According to the Fund's Registration Statements, investors are

9   instructed to send payments and redemption requests to the operations department of the Fund

10  Manager in Topeka, Kansas.  *See, e.g., id*. ¶14 & Ex. N.  In addition, the Secretary of Rydex

11  Distributors, Inc. is the SBC attorney in Kansas who signed Defendant's declaration in support of

12  their Motion to transfer this case to Maryland.  *See id*. ¶15 Ex. O; *id*. ¶16 & Ex. P.

13       The eleven Individual Defendants are domiciled in Districts scattered across the United

14  States.  Lee Decl. ¶6. When these Individual Defendants meet for Rydex Trust meetings to

15  conduct Trust business, more often than not, these meetings have occurred in California, Kansas,

16  and other venues outside of Maryland.  *Id*. ¶5.

17                              **ARGUMENT**

18  **I.    DEFENDANTS MISSTATE THE LEGAL STANDARDS FOR DECIDING A
            MOTION TO TRANSFER UNDER SECTION 1404(a).**
19

20       Defendants' recitation of the legal standards in their Motion bears little resemblance to

21  the proper legal framework.  To begin with, the discretionary language in Section 1404(a)

22  provides that a district court "*may* transfer any civil action to any other district or division where

23  it might have been brought" for "the convenience of the parties and witnesses, in the interest of

24  justice."  28 U.S.C. §1404(a) (emphasis added).  If venue is appropriate in both districts, nothing

25  "dictates" or requires transfer as Defendants argue.[1]  Instead, the determination of a transfer

26  motion lies within the broad discretion of the district court and is made on an individualized case-

27  ────────────────────

28  [1]Plaintiffs do not challenge Defendants' assertion that this litigation "might have been
    brought" in the District of Maryland.

OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE      No. CV 10-01171 CRB

by-case basis.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

Defendants also fail to mention the heavy burden that they must meet to establish that the transferee venue is more convenient.  A "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  "Unless the balance of the § 1404(a) factors weighs heavily in favor of the defendants, 'the plaintiff's choice of forum should rarely be disturbed.'"  *Rare Breed Distilling v. Heaven Hill Distilleries*, 2010 U.S. Dist. LEXIS 12140, at *5 (N.D. Jan. 22, 2010) (quoting *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985)).

Most importantly, Defendants fail to state and properly weigh the relevant private and public factors in a Section 1404(a) analysis.  Northern District Courts generally consider the following factors in determining whether transfer is appropriate: "(1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relevant court congestion and time of trial in each forum."  *Trujillo v. GT USA, Inc.*, 2010 U.S. Dist. LEXIS 26828 at *2 (N.D. Cal. Mar. 5, 2010); *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009) (same).

Defendants' analysis of these factors errs in two significant ways.  First, Defendants have inserted an additional factor, the "center of gravity" of the case—as the first factor that they assert that this Court should consider.  Motion at 4.[2]  Although there is no particular "center of gravity" in this litigation because the parties and witnesses are spread across the country (*see* Part III, below), the "center of gravity" is *not* one of stated considerations that courts in this District weigh as one of the factors under Section 1404(a).[3]

---

[2]As Defendants describe this factor in the Motion, the center of gravity of the case is the "relationship of plaintiff's cause of action to the chosen forum."  Motion at 4.

[3]None of the three cases that Defendants' cite on pages 4-5 of their Motion for the "well-recognized factors to consider" state that the "center of gravity" of the litigation is one of them. *See Stewart v. Jos. A. Bank Clothiers, Inc.*, 2010 U.S. Dist. LEXIS 20730 (N.D. Cal. Feb. 10, 2010); *Maxon v. Jefferson Pilot Sec. Corp.*, 2002 U.S. Dist. LEXIS 5888 (N.D. Cal. Apr. 2,

In addition, Defendants are wrong that Plaintiffs' choice of forum in this District is entitled to no deference. Mot. at 9. In securities actions, Plaintiffs' choice of forum is often entitled to considerable deference because of the broad venue provisions contained in the securities laws. *See* 15 U.S.C. §77v(a) ("Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place"). The Ninth Circuit has stated that "the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum." *Sec. Investor Protection Corp*, 764 F.2d at 1317 (citing *Ritter v. Zuspan*, 451 F. Supp. 926, 928 (E.D. Mich. 1978); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

While the customary deference given to the plaintiffs' forum choice is given less weight in certain class actions, those particular class actions typically involve plaintiffs who lack contacts with the chosen district or otherwise engage in forum shopping. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration"); *In re Yahoo! Inc.*, 2008 U.S. Dist. LEXIS 20605, at *20-*22 (N.D. Cal. Mar. 10, 2008) (citing cases holding minimal deference to plaintiffs' choice of forum in a class action when plaintiffs do not reside in the forum and the forum deserves no special treatment).[4]

On the other hand, when a plaintiff has significant contacts with the forum, his or her choice of forum is entitled to deference, even in the class action context. *See Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 544-45 (N.D. Cal. 2005) (deference to plaintiffs' choice of forum in employment class action preserved where a named plaintiff brought action where she

---

2002); *In re Yahoo! Inc*., 2008 U.S. Dist. LEXIS 20605 (N.D. Cal. Mar. 10, 2008). The "center of gravity" language that Defendants quote from *Kaloghlian v. Best Buy Stores, L.P.*, 2008 U.S. Dist. LEXIS 111475, at *10 (N.D. Cal. Nov. 8, 2008), in Part I.A of their Motion appears in a concluding paragraph at the end of a transfer order after the court had considered the various public and private convenience factors set forth above.

[4] Defendants also cite *Shalaby v. Newell Rubbermaid, Inc.*, 2007 U.S. Dist. LEXIS 81663, at *17-*18 (N.D. Cal. Oct. 23, 2007), for the proposition that Plaintiffs' choice of forum should be given less weight "when it is not the place where the operative facts of the action occurred" (citation and internal quotation marks omitted). *Shalaby* is entirely inapposite, as it was a personal injury case that the court transferred to the Southern District of California because the accident occurred in San Diego and several third party witnesses were located there.

1   had most extensive contacts and Title VII statute contained liberal venue provision).  As we

2   demonstrate more fully below, Plaintiffs' choice of forum should not be disturbed.

3   **II.    USING THE PROPER SECTION 1404(A) STANDARDS, DEFENDANTS'
         MOTION TO TRANSFER SHOULD BE DENIED.**

4       **A.    Plaintiffs' Choice Of Forum And Connections With The Northern
             District Weigh Against Transfer.**

5

6           Where, as here, the named Plaintiffs in this securities class action reside in this District

7   and issues in the litigation relate to those contacts, then Plaintiffs' choice of forum is entitled to

8   significant weight.  *See Rare Breed Distilling*, 2010 U.S. Dist. LEXIS, at *6 (when plaintiff sues

9   in his or her home state, choice of "home forum is to be given substantial deference") (citation

10  and internal quotation marks omitted); *Wade v. Indus. Funding Corp*., 1992 U.S. Dist. LEXIS

11  12921, at *10 (N.D. Cal. May 28, 1992) (denying transfer of securities class action, including

12  claims for violation of Section 11 of the 1933 Act, and giving substantial weight to plaintiffs'

13  choice of forum when they had significant contacts with the Northern District); *Milton v.*

14  *Trueposition, Inc*., 2009 U.S. Dist. LEXIS 14337 (N.D. Cal. Feb. 9, 2009) (denying motion to

15  transfer Federal Fair Labor Standard Act class action and according deference to plaintiffs'

16  choice of forum because they worked in California).[5]

17          Here, both named Plaintiffs reside in the Northern District of California, purchased their

18  Fund shares in this District, and received their prospectuses and other offering materials here.

19  Lewis Decl. ¶3.  This is not a case of forum shopping.  Because of Plaintiffs' substantial

20  connections with the Northern District, Plaintiffs' choice of forum weighs against transfer to the

21  District of Maryland.  *See Ethanol Partners Accredited v. Wiener*, 617 F. Supp. 300, 308 (E.D.

22  Pa. 1985) (denying transfer of Securities Act of 1933 claims in part because plaintiff's offices

23  were within the district and fraudulent communications were communicated to plaintiffs in

24  district).

25

26  _____

        [5]*See also Temple v. Guardsmark LLC*, 2009 U.S. Dist. LEXIS 91306, at *7-*9 (N.D. Cal.
27  Sept. 16, 2009) (granting weight to plaintiffs' choice of forum in wage and hour class action
    when named plaintiff lived near the Northern District and case involved events that occurred in
28  the district).

**B.      The Convenience Of The Parties Does Not Favor Transfer.**

Defendants contend that it would be more convenient for them to litigate the case in the District of Maryland because the corporate offices of PADCO Advisors, Inc., the investment manager, are located in Rockville, Maryland and senior executives work there. Mot. at 7-8.   But Defendants' Motion ignores Defendants' numerous contacts outside of Maryland, including those in this District.  Defendants' analysis also does not properly take into account the inconvenience to Plaintiffs and their counsel from transfer.

First, Corporate Defendants' "inconvenience" argument is undercut by their substantial contacts here.  Defendant Rydex Distributors, Inc. maintains two offices in California, including one that is located in the Northern District.  Lee Decl. ¶11.  Through these offices, Rydex Distributors promotes the Rydex Funds, including the Fund at issue in this Complaint, to registered investment advisors and broker-dealers who ultimately recommend or sell Rydex Funds to investors such as the Plaintiffs in this case.  Lewis Decl. ¶8 & Ex. H.  Moreover, Defendant PADCO Advisors, Inc. is affiliated with another related corporate entity, SGI, which is headquartered in San Francisco.  *Id.* ¶13 & Ex. M.  The investment manager and SGI are jointly marketed to investors as "Rydex/SGI" in the Fund's Registration Statements and on the investment manager's website.  *Id.* ¶12 & Ex. L.

If it is convenient for the Corporate Defendants to promote and sell the Fund out of their offices in the Northern District, they cannot now claim inconvenience from litigating here.  *See Rosen v. Fidelity Fixed Income Trust*, 1995 U.S. Dist. LEXIS 13877, at *11 (E.D. Pa. 1995) (denying transfer in part because defendant mutual fund companies operated investment center in Pennsylvania and "have implicitly accepted the possibility of litigation in this forum as part and parcel of the cost of doing business with Pennsylvania citizens).

Second, Corporate Defendants carry out important business activities for the Fund outside of the District of Maryland.  Rydex Series Funds is a Trust organized as a Delaware statutory Trust.  Lee Decl. ¶3.  The investment manager is owned by SBC, located in Topeka, Kansas.  Lewis Decl. ¶¶9-10 & Ex. I-J.  Defendants' Registration Statements require Fund investors to send their funds to the "Ops. Dept." of the Fund in Kansas.  *Id.* ¶14 & Ex. N.  Defendant's

1  declaration in support of their Motion to transfer was signed by an SBC attorney who works in

2  Kansas and who serves as the Secretary for Rydex Distributors, Inc.  *Id.* ¶¶15-16 & Ex. O-P.  It

3  will not be inconvenient for the Corporate Defendants to litigate outside of Maryland.

4      Third, although not highlighted in their Motion, eight of the eleven Individual Defendants

5  live outside of Maryland.  These defendants signed the Registration Statements at issue in the

6  case.  Compl ¶¶11-21.  Two defendants live in California.  Lee Decl. ¶6.  The defendants who

7  were members of the Trust's Board of Trustees held eleven of their seventeen meetings in

8  California, Kansas, New York, Illinois, Texas, and Florida.  Lee Decl. ¶5.  The dispersal of these

9  Individual Defendants across the country weighs against transfer to the District of Maryland.  *See*

10  *In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 977 (D. Del. 1993) (concluding in

11  multi-defendant case that residence of individual defendants outside of potential transferee

12  district weighed against transfer even when they had joined corporate defendants' transfer

13  motion).  Given their willingness to travel to attend Trust meetings in California, it should

14  present no substantial inconvenience for these defendants to travel to this District for a trial.

15      Fourth, Defendants' allegations of inconvenience are conclusory statements without

16  appropriate evidentiary support.  SBC attorney Lee's declaration fails to set forth sufficient facts

17  demonstrating any hardship to the Corporate Defendants or Individual Defendants.  *See Plum*

18  *Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 & n.2 (3d Cir. 1973) (noting that parties moving

19  for transfer typically require affidavits or other evidence demonstrating names and addresses of

20  witnesses, matters upon which they may testify, and the business difficulties or personal

21  hardships from litigating in the original forum).

22      The only burden argument that Defendants articulate with any specificity is that

23  adjudicating the case in Maryland would reduce disruptions to the Corporate Defendants'

24  business and would help avoid potential costs if significant personnel were forced to travel or

25  were unable to work for any lengthy period of time.  But as is typical in litigation, Plaintiffs will

26  accommodate the Defendants' concerns about travel costs or disruption by agreeing to take

27  depositions of any Individual Defendant or employee of Defendants located in Maryland in that

28  state.  Where it does not appear that a defendant's business will be disrupted during the pretrial

1   stages of litigation, courts have found these concerns carry little weight.  *See, e.g., Rosen v.*

2   *Fidelity Fixed Income Trust*, 1995 U.S. Dist. LEXIS 13877, at *18 (E.D. Pa. Sept. 18, 1995).

3          On the other hand, the District of Maryland would be very inconvenient for the Plaintiffs

4   who would be forced to litigate their case three thousand miles away from their home and their

5   counsel's offices.  Plaintiffs would need to retain Maryland counsel, which is another point

6   weighing against transfer.  *See In Re ML-Lee Acquisition Fund II,L.P.*, 816 F. Supp. at 978

7   (denying transfer to Delaware in securities action in part because of costs to Plaintiff of retaining

8   Delaware counsel).  Defendants would not be similarly inconvenienced because they have

9   already retained national law firms with offices in the Northern District.  Lewis Decl. ¶6.

10         This is a case where, at best, a transfer would shift any inconvenience from *certain*

11  Defendants to the Plaintiffs.  As such, this factor does not favor transfer to Maryland.  *See*

12  *Flotsam of Cal., Inc. v. Huntington Beach Conf. & Visitors Bureau*, 2007 U.S. Dist. LEXIS

13  31762, at *8-*9 (N.D. Cal. Apr. 18, 2007) (motion to transfer venue inappropriate where transfer

14  would merely shift inconvenience from one party to another) (citing *Decker Coal* Co*. v.*

15  *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).

16         **C.      The Convenience Of The Witnesses Weighs Against Transfer.**

17         In their section addressing the convenience of witnesses, Defendants repeat their

18  arguments that many employees of the investment manager work in Rockville, Maryland and it

19  would be more convenient for these individuals to transfer the case to the District of Maryland.

20  Mot. at 7-8.  But the primary consideration in this analysis is the convenience of third parties, as

21  opposed to employee witnesses.  *Flotsam of Cal., Inc.*, 2007 U.S. Dist. LEXIS 31762, at *9; *see*

22  *Temple*, 2009 U.S. Dist. LEXIS 91306, at *10 ("In considering the convenience of potential

23  witnesses, courts focus on the convenience of third-party witnesses who are not party

24  employees).  Although this litigation is in its infancy and it is very premature to predict all of the

25  relevant witnesses, it is fair to conclude that most third parties are located outside of Maryland,

26  including at least three who are located in this District.

27         Plaintiffs' Complaint identifies some of these potential witnesses.  Several financial

28  services companies have halted the sale of ETF products similar to the Fund or modified their

OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE      No. CV 10-01171 CRB

1   sales practices, including Edward Jones & Co., UBS, Ameriprise Financial, Wells Fargo, and

2   Charles Schwab. *Id.* ¶¶51-54. Charles Schwab reportedly issued a warning to its investors on

3   July 2009 that "while there may be limited occasions where a leveraged or inverse ETF may be

4   useful for some types of investors, it is extremely important to understand that, for holding

5   periods longer than one day, these funds may not give you the returns you may be expecting.

6   Proceed with extreme caution." *Id.* ¶53.

7       Plaintiffs intend to seek discovery from these firms as to their disclosures and

8   communications with investors. Not a single one of those companies is headquartered in the

9   District of Maryland, although two of them, Charles Schwab and Wells Fargo, are located in this

10  District. Lewis Decl. ¶7 & Exs. A-G. In a case factually analogous to this one, a district court

11  denied transfer of a securities class action where potential witnesses at six third party brokerage

12  firms were not located near the potential transferee district. *See Rosen*, 1995 U.S. Dist. LEXIS

13  13877, at *14.

14      Other potential third party witnesses include research analysts such as *Morningstar*'s

15  Director of ETF analysis, Scott Burns, who can testify about *Morningstar*'s observations

16  regarding these types of unique investment products and their general views on their suitability

17  for retail investors. *Id.* ¶17 & Ex. Q. The Wall Street Journal has reported that Morningstar data

18  shows that 88% of inverse ETFs like the Fund "flipped" between July 2008 and July 2009,

19  "meaning that they delivered negative returns when investors would normally expect positive

20  returns, or vice versa." *Id.* at 2, para. 3. Morningstar is headquartered in Illinois. *Id.* ¶7 & Ex. F.

21  Additional third party witnesses could include representatives of the brokerage firm RBC Dain

22  Rauscher who sold the Fund to the named Plaintiffs through their offices in this District. *Id.* ¶3.

23      On balance, the convenience of third party witnesses weighs against transfer.[6]

24  _____

25      [6]Plaintiffs also note that they will likely be subpoenaing documents or testimony from the
    Financial Industry Regulatory Authority (FINRA), which is headquartered in Washington DC.
    *See* Cmplt. ¶48 (citing recent FINRA scrutiny of ETFs). While it may be more convenient for

26  this particular third party witness to testify at a trial in Maryland, this does not change the overall
    distribution of these potential third party witnesses across the country. *See Nissan Motor Co.,*

27  *Ltd. v. BMW, Holding Corp.*, 2002 U.S. Dist. LEXIS 20744, *9-*10 (N.D. Ill. Oct. 25, 2002)
    (concluding that because third-party fact witnesses were scattered across the country and not

28  located in transferee district, transfer was not more convenient and thus inappropriate).

OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE      No. CV 10-01171 CRB

1

**D.**   **Ease Of Access To The Evidence Is Not A Significant Factor In The Transfer Analysis.**

2   Defendants argue that most of the relevant documents are located in the District of

3   Maryland and that this factor counsels in favor of transfer.  Recently, courts have held that with

4   modern digital scanning this factor carries little, if any weight.  *Abbott v. Lockheed Martin Corp.*,

5   2007 U.S. Dist. LEXIS 19600, at *13 (S.D. Ill. March 20, 2007) ("It is likely paper documents

6   will be scanned for discovery irrespective of the situs of the case since that seems to be the trend

7   in this digital age where jump drives the size of a cigarette lighter can hold multiple gigabytes of

8   information and multi-page documents can be emailed around the world in seconds"); *see also*

9   *Board of Trs. Sheet Metal Workers Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031,

10   1037 (7th Cir. 2000) (noting that "[E]asy air transportation, the rapid transmission of documents,

11   and the abundance of law firms with nationwide practices, make it easy these days for cases to be

12   litigated with little extra burden in any of the major metropolitan areas") (citation and internal

13   quotation marks omitted).

14   Defendants' declarations fail to demonstrate any substantial burden associated with the

15   documentary evidence located in Maryland.  *See Somerville v. Major Exploration, Inc.*, 576 F.

16   Supp. 902, 907-08 (S.D.N.Y. 1983) (burden argument not given serious consideration unless

17   defendants substantiate them by identifying documents and demonstrating undue burden from

18   production and transportation); *Photogen, Inc. v. Wolf*, 2001 U.S. Dist. LEXIS 5796, at *16

19   (N.D. Ill. May 7, 2001) ("Documents and records are usually not a very persuasive reason to

20   transfer a case.  They are easily transportable, and movant has made no showing that it cannot

21   bring the necessary documents to this district") (citation omitted).

22

**E.**   **The Court Congestion Factor Should Not Be A Significant Consideration In This Case.**

23

24   Defendants also argue that this matter should be transferred because the District of

25   Maryland is less congested than the Northern District of California.  *See* Mot. at 8.  Irrespective

26   of the marginal difference in median disposition time noted by Defendants—7 months in the

27   District of Maryland compared to 9.4 months in the Northern District—administrative

28   considerations such as docket congestion are given little weight in the Ninth Circuit in assessing

OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE      No. CV 10-01171 CRB

1  the propriety of a §1404(a) transfer.  *Amini Innovation Corp. v. JS Imps. Inc.*, 2007 U.S. Dist.

2  LEXIS 43758, at *47 (C.D. Cal. May 21, 2007) (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d

3  1325, 1335 (9th Cir. 1984)); *see also Raynes v. Davis*, 2007 U.S. Dist. LEXIS 85336, at *14

4  (C.D. Cal. 2007) ("Relative court congestion is but a minor factor in section 1404 calculus")

5  (citation and internal quotation marks omitted).

6          The evidence presented by Defendants is not persuasive that the District of Maryland is

7  substantially less congested than the Northern District.  Accordingly, this factor is not enough to

8  justify transfer in light of the other important considerations weighing against it.

9                    **F.**       **The Remaining Factors In The Section 1404(a) Analysis Are Neutral.**

10         The remaining public and private factors in the Section 1404(a) analysis do not favor

11  either side's position.  As for the familiarity of each forum with the applicable law, both districts

12  will be equally familiar with the federal securities claims that Plaintiffs assert.  While Defendants

13  allege that the District of Maryland has an interest in adjudicating disputes involving

14  corporations doing business in its district, the Northern District of California also has a strong

15  interest in resolving claims brought by plaintiffs against companies and individuals who transact

16  business in this District.  Finally, there is no opportunity for consolidation or any local interest in

17  the controversy in either district.

18  **III.    THERE IS NO "CENTER OF GRAVITY" OF THIS LITIGATION BECAUSE**
       **THE PARTIES AND OTHER WITNESSES ARE LOCATED THROUGHOUT**
19     **THE COUNTRY.**

20         As previously noted, Defendants' Motion focuses on what they allege is the "center of

21  gravity" of the litigation, although Northern District courts do not cite this as one of the stated

22  factors to consider in the Section 1404(a) analysis.  *See* Mot. at 5-6. Factually, there is no "center

23  of gravity" to this litigation, and the cases that Defendants rely on are not analogous.

24         The Corporate Defendants conduct their business operations across the country, including

25  in this District, Kansas, and elsewhere. Lewis Decl. ¶¶8-16 & Exs. H-P.  The Individual

26  Defendants reside in Maryland, California, Colorado, Connecticut, Florida, New Jersey, Texas

27  and Wisconsin.  Lee Decl. ¶6.  Third party witnesses are spread throughout the country as well,

28  including brokerage firms in this District, Missouri, and New York, a research analyst in Illinois,

and FINRA's headquarters in Washington, D.C.  Lewis Decl. ¶7 & Exs. A-G.  Where parties and important witnesses are not centralized, no court can claim to be the only forum capable of redressing the grievances of the putative class.  *See Chamberlain v. US Bancorp Cash Balance Ret. Plan*, 2005 U.S. Dist. LEXIS 25571 (S.D. Ill. Oct. 25, 2005).

Defendants principally rely upon a case from the Central District of California, *In re Yahoo! Inc.*, 2008 U.S. Dist. LEXIS 20605 (C.D. Cal. Mar. 10, 2008), which was a Rule 10b-5 securities class action.  The Court did not examine the "center of gravity" of the case.  Instead, balancing the convenience factors, the Court transferred the case from the Central District of California to the Northern District of California.  Unlike this case, none of the plaintiffs resided in the Central District and so their choice of forum was given minimal weight.  *Id.* at *15.  In fact, one of the lead plaintiffs, a pension trust fund, was administered in the Northern District, which weighed in favor of transfer.  *Id.* at *7.  Also unlike this case, all but one of the Defendants in the *Yahoo!* litigation resided in the Northern District.  *Id.*  Defendants in *Yahoo!* also set forth detailed facts demonstrating the importance of several third parties who resided in the Northern District.  *Id.* at *12-*13.  Defendants have not made a similar showing of inconvenience here.[7]

Even Defendants' authorities make clear that "[t]here is no *per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered."  *In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006).   Indeed, there are numerous securities class actions where courts have rejected similar arguments made by defendants that the case should be transferred to a district convenient for them.  *See, e.g., Wade v. Indus. Funding Corp.*, 1992 U.S. Dist. LEXIS 12921 (N.D. Cal.

---

[7]Defendants' other cases are also distinguishable.  *Gerin v. Aegon, USA, Inc.*, 2007 U.S. Dist. LEXIS 28049 (N.D. Cal. Apr. 3, 2007) involved a "textbook case of forum-shopping" where the named plaintiffs did not live in the District and the forum had "no interest in the parties or subject matter."  *Id.* at *20-*23.  *Cohn v. Oppenheimerfunds, Inc.*, 2009 U.S. Dist. LEXIS 106749 (S.D. Cal. Nov. 12, 2009), was a 1933 Securities Act case transferred from the Southern District of California to the District of Colorado.  Although Defendants have cited a snippet of the opinion stating that the "operative conduct alleged … revolves around documents and statements that were transmitted from outside of California," the court concluded that this was not a dispositive factor in its decision.  *Id.* at *16.  Instead, the decision was motivated by the "predominant" interest of justice factor that one particular judge in the District of Colorado was already presiding over thirty-one similar securities class actions filed against Oppenheimer which were centralized there by the Judicial Panel on Multidistrict Litigation.  *Id.* at *2-*3, *17-*19.

1  May 28, 1992) (denying transfer despite defendants' argument that most convenient forum was

2  location of corporate defendants); *In re Geopharma, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 8885

3  (S.D.N.Y. May 11, 2005) (denying transfer because location of defendant's corporate

4  headquarters did not outweigh plaintiffs' choice of forum); *Rosen*, 1995 U.S. Dist. LEXIS 13877

5  (weighing factors and concluding that transfer would merely shift any inconvenience from

6  corporate defendants to plaintiffs); *In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 977

7  (D. Del. 1993) (same).  Here, where there is no "center of gravity" to the dispute and the

8  convenience factors weigh against transfer, Defendants' motion should be denied.

9  **CONCLUSION**

10  For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

11  Motion To Transfer Venue.

12  Dated: June 4, 2010

13                                          Respectfully submitted,

14                                          ALAN W. SPARER
                                            MARC HABER
15                                          KEVIN H. LEWIS
                                            JAMES S. NABWANGU
16                                          SPARER LAW GROUP

17

18                                          By:  _____ */s/ Kevin H. Lewis*_____
                                                          KEVIN H. LEWIS

19                                          Attorneys for RYDEX LITIGATION GROUP

20

21

22

23

24

25

26

27

28

-15-

OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE      No. CV 10-01171 CRB

**CERTIFICATE OF SERVICE**

I hereby certify that the following documents were filed with this Court on June 4, 2010 through the CM/ECF system and will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants: Plaintiffs' Opposition To Defendants' Motion To Transfer Venue To District Of Maryland Pursuant To 28 U.S.C. § 1404(a); Declaration Of Kevin Lewis In Opposition To Defendants' Motion To Transfer Venue To District Of Maryland Pursuant To 28 U.S.C. § 1404(a); and Proposed Order Denying Motion To Transfer Venue To District Of Maryland Pursuant To 28 U.S.C. § 1404(a).

I declare under penalty of perjury that the foregoing is true and correct.  Executed at San Francisco, California on June 4, 2010.

*/s/ Philip Layzer*
PHILIP LAYZER

CERTIFICATE OF SERVICE                                    No. CV 10-01171 CRB