1    MATTHEW L. LARRABEE (No. 97147)          C. CRAIG BRIDWELL (No. 246124)
     matthew.larrabee@dechert.com             cbridwell@schiffhardin.com
2    DAVID A. KOTLER (*pro hac vice*)         MICHAEL K. WOLENSKY (*pro hac vice*)
     david.kotler@dechert.com                 mwolensky@schiffhardin.com
3    MURIEL M. KOROL (No. 261909)             SCHIFF HARDIN LLP
     muriel.korol@dechert.com                 One Market, Spear Street Tower
4    DECHERT LLP                              Thirty-Second Floor
     One Maritime Plaza, Suite 2300           San Francisco, CA  94105
5    San Francisco, California  94111-3513    Telephone:  415.901.8798
     Telephone:  415.262.4500                 Facsimile:  415.901.8701
6    Facsimile:  415.262.4555

7    Counsel for Defendants                   Counsel for Defendants
     RYDEX SERIES FUNDS; PADCO                JOHN O. DEMARET; COREY A.
8    ADVISORS INC. d/b/a RYDEX                COLEHOUR; J. KENNETH DALTON;
     INVESTMENTS, INC.; RYDEX                 WERNER E. KELLER; THOMAS F.
9    DISTRIBUTORS, INC.; NICK BONOS;          LYDON; PATRICK T. MCCARVILLE;
     MICHAEL P. BYRUM; RICHARD M.             and ROGER SOMERS
10   GOLDMAN; and CARL G. VERBONCOEUR

11

12                          UNITED STATES DISTRICT COURT

13                        NORTHERN DISTRICT OF CALIFORNIA

14                             SAN FRANCISCO DIVISION

15

16
     JAMES RAFTON, TRUSTEE OF THE          Case No. 10cv1171 CRB
17   JAMES AND CYNTHIA RAFTON
     TRUST,                                Action filed: March 19, 2010
18
                    Plaintiff,             **REPLY BRIEF IN SUPPORT OF MOTION
19                                         TO TRANSFER VENUE TO DISTRICT
     v.                                    OF MARYLAND PURSUANT TO 28 U.S.C.
20                                         § 1404(a)**
     RYDEX SERIES FUNDS; PADCO
21   ADVISORS INC. d/b/a RYDEX             Date:      June 25, 2010
     INVESTMENTS, INC.; RYDEX             Time:      10:00 a.m.
22   DISTRIBUTORS, INC.; RICHARD M.        Dept:      Courtroom 8, 19th Floor
     GOLDMAN; CARL G.                      Judge:     Hon. Charles R. Breyer
23   VERBONCOEUR; JOHN O. DEMARET;
     NICK BONOS; MICHAEL P. BYRUM;
24   COREY A. COLEHOUR; J. KENNETH
     DALTON; WERNER E. KELLER;
25   THOMAS F. LYDON; PATRICK T.
     MCCARVILLE; ROGER SOMERS; and
26   DOES 1 through 25, inclusive,

27                  Defendants.

28

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

Page

SUMMARY OF THE ARGUMENT ............................................................................................ 1

ARGUMENT ........................................................................................................................ 2

I.     THE SECTION 1404(a) FACTORS OVERWHELMINGLY WEIGH IN FAVOR OF TRANSFERRING THIS CASE TO THE DISTRICT OF MARYLAND. ................ 2

     A.     This Case Should Be Transferred To Where Its Center Of Gravity Lies -- The District Of Maryland .................................................................................... 3

     B.     The District Of Maryland Is A More Convenient Forum For The Parties ............ 6

     C.     The District of Maryland Is A More Convenient Forum For The Actual Relevant Witnesses. .................................................................................... 9

     D.     The District Of Maryland Has A Far Greater Interest In This Controversy. ........ 11

     E.     Substantially All Relevant Documents Are Located In The District Of Maryland. .................................................................................................... 11

     F.     The District of Maryland Is Less Congested .................................................... 12

     G.     Regardless Of The Level Of Deference, Plaintiff's Choice Of Forum Falls Far Short Of Outweighing All Of The Other Factors Warranting Transfer To The District Of Maryland. .................................................................. 12

CONCLUSION .................................................................................................................... 14

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3
*Alcatel Lucent United States, Inc. v. Dugdale Communs, Inc.*,
4
    No. CV 09-2140 PSG (JCx), 2010 WL 883831 (C.D. Cal. Mar. 5, 2010) ............................. 9

*Baldwin v. Nat'l Safety Assocs., Inc.*,
5
    No. C93-0571 BAC, 1994 WL 139267 (N.D. Cal. Apr. 6 1994) ............................................ 4

6
*Biswas v. HR Value Group, LLC*,
    No. C 02-03469 CRB, 2002 WL 31261160 (N.D. Cal. Oct. 4, 2002) ................................... 11
7

8
*Bortel v. JHM Mort. Sec., L.P.*,
    No. C-94-20530 JW (PWT), 1995 WL 7953 (N.D. Cal. Jan. 5, 1995) ............................. 4, 13

9
*Commodity Futures Trading Comm'n v. Cromwell Fin. Servs.*,
    No. Civ. 05-CV-210-JD, 2006 WL 435451 (D.N.H. Feb. 22, 2006)..................................... 12
10

*Childrens Hosp. & Research Center at Oakland v. Clark County Self-Funded*,
11
    No. C 09-01603 JSW, 2010 WL 890011 (N.D. Cal. Mar. 8, 2010) .................................... 13

12
*In re Choice Hotels Inc. Sec. Litig.*
    No. 07-cv-00734-REB-BNB, 2008 WL 793621 (D. Colo. Mar. 24, 2008)............................ 7
13

14
*In re Collins & Aikman Corp. Sec. Litig.*,
    438 F. Supp. 2d 392 (S.D.N.Y. 2006).................................................................................... 7

15
*Ellis v. Costco Wholesale Corp.*,
    372 F. Supp. 2d 530 (N.D. Cal. 2005) ................................................................................. 14
16

*Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecher*,
17
    617 F. Supp. 300 (E.D. Pa. 1985) ....................................................................................... 13

18
*Ezieme v. Ward Int'l Trading, Inc.*,
    No. CV 08-6748 PSG (JWJx), 2009 WL 2818394 (C.D. Cal. Aug. 31, 2009) .................... 12
19

20
*Fabus Corp. v. Asiana Express Corp.*,
    No. C-00-3172 PJH, 2001 WL 253185 (N.D. Cal. Mar. 5, 2001) ......................................... 8

21
*In re Geopharma, Inc. Sec. Litig.*
    No. 04 Civ. 9463 (SAS), 2005 WL 1123883 (S.D.N.Y. May 11, 2005).............................. 5
22

*Gerin v. Aegon USA, Inc.*,
23
    No. C 06-5407 SBA, 2007 WL 1033472 (N.D. Cal. Apr. 4, 2007)................................... 4, 5

24
*Glass v. S & M NuTec, LLC*,
    456 F. Supp. 2d 498 (S.D.N.Y. 2006).................................................................................. 11
25

*Glaxo Group Ltd. v. Genentech, Inc.*,
26
    No. C10-00675 JSW, 2010 WL 1445666 (N.D. Cal. Apr. 12, 2010).................................. 12

27
*Goldwater v. Alston & Bird*,
    No. 84-0733, 1985 WL 1100 (D. Haw. Apr. 4, 1985)............................................................ 4
28

*In re Hangar Orthopedic Group, Inc. Sec. Litig.*,
    418 F. Supp. 2d 164 (E.D.N.Y. 2006) ............................................................. 3

*Horwitz v. Southwest Forest Indus., Inc.*,
    612 F. Supp. 179 (D. Nev. 1985) .................................................................... 4

*Jakusz v. Union Pac. Railroad Co.*,
    No. C 05-4842 JSW, 2006 WL 563055 (N.D. Cal. Mar. 6, 2006) ........................... 8

*Johns v. Panera Bread Co.*,
    No. 08-1071 SC, 2008 WL 2811827 (N.D. Cal. July 21, 2008) ........................ 4, 13

*Kahn v. Sprouse*,
    No. C-92-4384-MHP, 1993 U.S. Dist. LEXIS 2156 (N.D. Cal. Feb. 22, 1993) ................... 4

*Malloy v. McDonald's Corp.*,
    No. CV-F-08-1362 OWW/DLB, 2009 WL 1288696 (E.D. Cal. May 6, 2009) ................... 8

*Maurey v. Univ. of S. Cal.*,
    No. C 97-4547 SI, 1998 U.S. Dist. LEXIS 4276 (N.D. Cal. Mar. 26, 1998) ................... 10

*Maxon v. Jefferson Pilot Secs. Corp.*,
    No. C 01-02668 CRB, 2002 WL 523575 (N.D. Cal. Apr. 2, 2002) ............................. 10, 11

*Milton v. Trueposition, Inc.*,
    No. C08-3616 SI, 2009 WL 323036 (N.D. Cal. Feb. 9, 2009) .............................. 13

*In re ML-Lee Acquisition Fund II, L.P.*,
    816 F. Supp. 973, 977, 979 (D. Del. 1993) ................................................. 5

*In re Nematron Corp. Sec. Litig.*,
    30 F. Supp. 2d 397 (S.D.N.Y. 1998) ..................................................... 6, 12

*Pac. Car & Foundry Co. v. Pence*,
    403 F.2d 949 (9th Cir. 1968) .............................................................. 8

*Rare Breed Distilling v. Heaven Hill Distilleries*,
    No. C-09-04728 EDL, 2010 WL 335658 (N.D. Cal. Jan. 22, 2010) ...................... 13

*Rosen v. Fid. Fixed Income Trust*,
    Civ.A. No. 95-2365, 1995 WL 560037 (E.D. Pa. Sept. 20, 1995) ......................... 5

*Saleh v. Titan Corp.*,
    361 F. Supp. 2d 1152 (S.D. Cal. 2005) ................................................... 10

*Sec. Investor Prot. Corp. v. Vigman*,
    764 F2d 1309 (9th Cir. 1985) ........................................................... 12, 13

*Temple v. Guardsmark LLC*,
    No. C 09-02124 SI, 2009 WL 2997396 (N.D. Cal. Sept. 16, 2009) ...................... 14

*Wade v. Indus. Funding Corp.*,
    No. C-92-0343-RFP, 1992 WL 207926 (N.D. Cal. May 28, 1992) .................... 4, 5, 13

*Wojtunik v. Kealy*,
    No. CIV.A. 02-8410, 2003 WL 22006240 (E.D. Pa. Aug. 26, 2003)..................................... 11

*In re Yahoo!, Inc.*,
    No. CV 07-3125 CAS (FMDx), 2008 WL 707405 (C.D. Cal. Mar. 10, 2008) ......... 2, 3, 4, 12

## FEDERAL STATUTES

28 U.S.C. § 1404(a) .............................................................................................................*passim*

Fed. R. Evid. 701 ............................................................................................................................. 11

Fed. R. Evid. 702 ............................................................................................................................. 11

1

**SUMMARY OF THE ARGUMENT**

2
Securities class actions filed in this District, and other Districts around the country, are

3
routinely transferred under section 1404(a) to the District of the Defendant issuer -- even where

4
the named plaintiff brings suit in his (and his counsel's) home forum.  Plaintiff offers no basis to

5
separate this case from that paradigm, because there is none.  Here, the "center of gravity" of

6
Plaintiff's federal Securities Act claims undeniably lies in the District of Maryland, where the

7
mutual fund at issue (the Rydex Inverse Government Long Bond Fund ("Fund")) and its

8
investment adviser (defendant PADCO Advisors, Inc. d/b/a Rydex Investments, Inc.

9
("Manager")) are both headquartered.  Consequently, the District of Maryland is the location of

10
the employees who drafted the Fund's disclosures and made the investment decisions that

11
Plaintiff has placed at issue.  Both common sense and the law of this Circuit therefore dictate that

12
this case should be transferred to the District of Maryland, where it would be far more convenient

13
and fair to the parties to litigate Plaintiff's claims.

14
Plaintiff's arguments that this case should be litigated 3000 miles away from its obvious

15
center of gravity sidestep the key facts, attempt to invoke other legally irrelevant facts, and

16
misstate the governing legal principles.

17
*First*, Plaintiff makes no effort to argue that the "center of gravity" of this case is the

18
Northern District of California, but instead contends that the "center of gravity" should be ignored

19
because not every court specifically articulates it as one of the factors that they say they are

20
considering under section 1404(a).  This argument amounts to nothing more than a word game.

21
Courts can, and regularly do, look to the "center of gravity" of a case as a way to balance or

22
reconcile most if not all of the pertinent section 1404(a) factors.  A factor-by-factor analysis both

23
confirms that the District of Maryland is the center of gravity of this case, as well as the broader

24
conclusion that courts routinely use this approach to transfer securities class actions to the District

25
of the relevant issuer.

26
*Second*, Plaintiff emphasizes a few miscellaneous contacts that Defendants and non-party

27
affiliate corporations have with this and other Districts, despite the fact that these contacts have

28
no connection with the allegations in his Complaint.  These contacts have no bearing on whether

litigating this case in this District is convenient and fair to the parties and in no way overcome the well-established rule that the "factual center" of a Securities Act case is where the allegedly misleading offering documents "originated," because, as is the case here, that is where the relevant witnesses are located. *In re Yahoo!, Inc.*, No. CV 07-3125 CAS (FMDx), 2008 WL 707405, at *2 (C.D. Cal. Mar. 10, 2008).

*Third*, Plaintiff's "evidence" that the convenience of the parties and witnesses favors this District does not bear the slightest scrutiny. The significant interruption to their business activities that Defendants would suffer from litigating in this District far outweighs the slight, if any, inconvenience that would result if Plaintiff and his counsel (who touts his nationwide class action experience in his Lead Counsel application to this Court) were to litigate this case in the District of Maryland. Likewise, Plaintiff's non-party witness argument fails because he does not and cannot explain why the unlikely collection of potential non-parties he lists in passing have anything relevant to say about the issues in this case.

*Fourth*, Plaintiff suggests that his choice of forum legally trumps all of the factors discussed above. This argument is flatly incorrect under established precedent in this Circuit and this District. Plaintiff's decision to sue in this District is entitled to little, if any, deference because he seeks to represent a nationwide class and the activities giving rise to his claims occurred in the District of Maryland. Moreover, Plaintiff is simply wrong when he suggests that the provision of the Securities Act defining where venue is *permissible* eliminates the section 1404(a) analysis and requires this Court to grant his choice of forum heightened deference in deciding where venue is *convenient and fair*.

## ARGUMENT

### I. THE SECTION 1404(a) FACTORS OVERWHELMINGLY WEIGH IN FAVOR OF TRANSFERRING THIS CASE TO THE DISTRICT OF MARYLAND.

As Defendants explained in their Opening Brief, every factor in the section 1404(a) analysis, other than the minimal deference afforded to Plaintiff's choice of forum, strongly weighs in favor of transferring this case to the District of Maryland.

**A.      This Case Should Be Transferred To Where Its Center Of Gravity Lies -- The District Of Maryland**

Plaintiff does not and cannot dispute that securities class actions – and Securities Act class actions in particular – focus almost exclusively "on defendants' conduct and do not appear to implicate involved questions of fact regarding plaintiffs' behavior." *In re Yahoo! Inc.*, 2008 WL 707405, at *3. Thus, the "center of gravity" of a securities case almost always lies at the issuer's headquarters, where the challenged business was managed and the allegedly misleading disclosures were drafted. *See, e.g., In re Hangar Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006) (explaining that, "as a practical matter . . . transfers [to the district where the issuer is headquartered] are routine" and collecting cases).

The facts of this case fit squarely within this mold and support the "routine" transfer of this case to the District of Maryland. Indeed, Plaintiff does not even attempt to dispute *any* of the following key facts:

- All of the allegedly wrongful conduct – *e.g.,* the preparation of the registration statements alleged to be misleading in this case and the Manager's investments of fund assets allegedly giving rise to Plaintiff's losses – occurred in Maryland;

- Every employee of the Manager who played any part in drafting the disclosure documents at issue worked in Maryland;

- Every employee of the Manager who had any role in managing the Fund's investments worked in Maryland;

- The Fund's Board met more often in Maryland than in any other location; and

- All of the documents related to the drafting of the Fund's disclosures and the Fund's investments are located in Maryland.

Thus, as in most securities class actions, the "center of gravity" of this case clearly is the District of Maryland, and that fact weighs heavily in favor of transferring this case.

Plaintiff's two responses to this common sense point cannot withstand even minimal scrutiny. *First*, Plaintiff asserts that a case's "center of gravity" is not one of the specific factors that courts typically say they are considering, and thus it is completely irrelevant to the transfer analysis. Opp'n. at 5, 13. This argument misses the forest for the trees. The fact that some courts do not neatly place "center of gravity" in one of Plaintiff's chosen buckets cannot change

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)          10CV1171

1    the fact that it is a well-established approach that courts employ to capture the overall balance of

2    the factors they may consider when deciding a section 1404(a) motion. *See, e.g. Johns v. Panera*

3    *Bread Co.*, No. 08-1071 SC, 2008 WL 2811827, at *5 (N.D. Cal. Jul. 21, 2008) ("litigation

4    should proceed where the case finds its center of gravity.") (quoting *Hoefer v. U.S. Dep't. of*

5    *Commerce*, No. C 00-0918, 2000 WL 890862, at *3 (N.D. Cal. June 28, 2000).  This approach is

6    particularly common in the context of securities class actions, which present unique convenience

7    and fairness considerations that simply are not present in the run-of-the-mill case.  That is why

8    courts, including courts in this Circuit, routinely transfer securities class actions to the issuer's

9    headquarters, even where the named plaintiff has sued in his home forum. *See, e.g., Bortel v.*

10   *JHM Mort. Sec., L.P.*, No. C-94-20530 JW (PWT), 1995 WL 7953, at *2 (N.D. Cal. Jan. 5, 1995)

11   (transferring a securities class action despite the fact that 14 named plaintiffs were California

12   residents because "the factual center of this case is in the Eastern District of Virginia"); *In re*

13   *Yahoo!*, 2008 WL 707405, at *3 (transferring a securities class action to the district in which the

14   issuer had its headquarters); *Gerin v. Aegon USA, Inc.*, No. C 06-5407 SBA, 2007 WL 1033472,

15   at *6 (N.D. Cal. Apr. 4, 2007) (same); *Baldwin v. Nat'l Safety Assocs., Inc.*, No. C93-0571 BAC,

16   1994 WL 139267, at *3 (N.D. Cal. Apr. 6 1994) (same); *Kahn v. Sprouse*, No. C-92-4384-MHP,

17   1993 U.S. Dist. LEXIS 2156, at *22-*23 (N.D. Cal. Feb. 22, 1993) (same); *Goldwater v. Alston*

18   *& Bird*, No. 84-0733, 1985 WL 1100, at *3 (D. Haw. Apr. 4, 1985) (same); *Horwitz v. Southwest*

19   *Forest Indus., Inc.*, 612 F. Supp. 179, 182 (D. Nev. 1985) (same).

20        Plaintiffs cite only one case from within this Circuit in which a district court denied a

21   motion to transfer a securities class action to the issuer's headquarters, *Wade v. Indus. Funding*

22   *Corp.*, No. C-92-0343-RFP, 1992 WL 207926 (N.D. Cal. May 28, 1992), but that case is readily

23   distinguishable.  In *Wade*, the plaintiffs alleged that offering documents prepared in Oregon

24   misrepresented the issuer's operations in California. *See id.* at *1.  On those facts, the court

25   concluded that the key witnesses were the issuer's employees in California who could "offer

26   testimony regarding the instructions and pressures imposed upon them by corporate officers in

27   Portland." *Id.* at *2.  Moreover, the plaintiffs in *Wade* identified several California residents who

28   helped prepare the offering documents, including the lead underwriter and the underwriter's lead

counsel.  *See id.* at *2 n.7.  Here, by contrast, no Defendant operations in California are at issue and nobody who lives or works in this District helped prepare the allegedly misleading offering documents or participated in the day-to-day management of the Fund's investments.  Instead, these potential witnesses are overwhelmingly concentrated at the entity defendants' headquarters in the District of Maryland.  *Wade*, viewed in this light, actually supports transfer of this case.[1]

*Second*, Plaintiff suggests that the District of Maryland is not the "center of gravity" of this case because investor funds are sent to "the 'Ops Dept.' of the Fund in Kansas", some of the Individual Defendants live outside of Maryland, and some allegedly relevant non-party witnesses do not reside in the District of Maryland.  Opp'n. at 8-9.  These arguments, however, simply ignore the well-settled rule, recited in Defendants' Opening Brief, that the "factual center" of a Securities Act case is where the allegedly misleading offering documents "originated."  Mot. at 5 (citing cases).  It is undisputed that the allegedly misleading disclosures in this case originated in the District of Maryland, where they were drafted and approved and where the Fund's day-to-day investment decisions were made.  These activities generated the "operative facts on which the complaint is based."  Plaintiff's Complaint does not mention, let alone draw into question, any of the back-office operations in Kansas or the other miscellaneous in-forum contacts cited by Plaintiff.  *Gerin*, 2007 WL 1033472, at *6.  By the same token, Plaintiff's assertion that they

---

[1]    Likewise, the three out-of-circuit cases Plaintiff cites in addition to *Wade* are either readily distinguishable on their facts or interpret the law in ways that have been repeatedly rejected by courts in this Circuit.  For example, in *ML-Lee Acquisition Fund II, L.P.*, the court denied a motion to transfer a case from the District of Delaware to the District of Massachusetts because several of the entity defendants were not headquartered in Massachusetts and because the complaint asserted Delaware state law claims arising out of a partnership agreement and prospectus that provided that it would be construed and applied under Delaware law.  *See* 816 F. Supp. 973, 977, 979 (D. Del. 1993).  In *In re Geopharma, Inc. Sec. Litig.*, the court, without citing any authority, concluded that the "operative facts" of the case occurred in each district in which the disclosures were distributed, rather than in the district from which they originated.  *See* No. 04 Civ. 9463 (SAS), 2005 WL 1123883, at *2 (S.D.N.Y. May 11, 2005).  Moreover, the Court appears to have relied on the convenience of class counsel and concluded that the venue provision of the Securities Act alters the section 1404(a) analysis.  *See id.* at *1-*2.  Both of these conclusions have been squarely rejected by courts in this District and courts nationwide.  *See* pp. 8, 12-13, *infra*.  Similarly, the court in *Rosen v. Fidelity Fixed Income Trust* failed to account for the disruption to the defendants' businesses that would occur from litigating away from their headquarters, placed undue weight on the convenience of the forum to the named plaintiff, and took on faith that there were relevant third-party witnesses near the forum even though the plaintiff "neglected to specifically identify or provide supporting affidavits from any potential witness."  Civ.A. No. 95-2365, 1995 WL 560037, at *3-*4 (E.D. Pa. Sept. 20, 1995).  Moreover, the court relied heavily on the fact that the plaintiff's chosen forum (Philadelphia) was relatively close to the defendants' headquarters in Boston.  *See id.* at *5.  Here, by contrast, Plaintiff seeks to litigate this case almost 3000 miles from Defendants' headquarters in the District of Maryland.

1  purchased their Fund shares in this District is beside the point.  Plaintiff does not allege that his

2  interaction with his broker in this District had any bearing on the issues in this case (nor could he,

3  given that a Section 11 claim must be based solely on the language of the Fund's registration

4  statement).  Nor does Plaintiff allege that the Rydex Distributors, Inc. office in this District

5  played any role in his investment decisions or had anything to do with the disclosure issues raised

6  in his Complaint.  In fact, Plaintiff does not allege any interaction in this District with *any*

7  Defendant.

8        In short, the "center of gravity" of this case is clearly the District of Maryland, and

9  Plaintiff's attempts to deny that fact, or belittle its importance, have no merit.  Analyzing each of

10  the section 1404(a) factors Plaintiff cites only serves to confirm this conclusion and underscore

11  the propriety of transfer there.

12        **B.        The District Of Maryland Is A More Convenient Forum For The Parties.**

13        As discussed above, securities class actions focus almost exclusively on the defendants'

14  conduct; a plaintiff's conduct, on the other hand, typically is not at issue.  *See* Mot. at 6.  Thus,

15  plaintiffs typically have little, if any, role at trial.  *See In re Nematron Corp. Sec. Litig.*, 30 F.

16  Supp. 2d 397, 402-03 (S.D.N.Y. 1998).  Instead, the key witnesses in these cases often are the

17  defendants' senior management, whose absence for a prolonged period of time could severely

18  disrupt the defendants' businesses.  *See* Mot. at 7.  Thus, in the vast majority of securities class

19  actions, the "convenience of the parties" factor weighs heavily in favor of transferring the case to

20  the defendants' headquarters in order to avoid unduly disrupting the defendants' business

21  activities.

22        This case is no exception.  Plaintiffs do not dispute that the critical witnesses will be

23  senior officials and managers of the entity defendants, all of whom work in the District of

24  Maryland.  Thus, transferring this case to the District of Maryland is essential to prevent

25  unreasonable and unnecessary interference with the Defendants' business activities.

26        Plaintiffs three arguments to avoid this logical result are meritless.  *First*, Plaintiff

27  suggests that it cannot be inconvenient for the Defendants to litigate here because (1) Rydex

28  Distributors has an office in this District; (2) a non-party corporate *affiliate* of PADCO Advisers –

1   *not* PADCO Advisers itself – is headquartered in this District; and (3) PADCO Advisers is owned

2   by a corporation located in Kansas and performs certain back-office operations for the Fund in

3   Kansas.  Opp'n. at 8.  This argument is unpersuasive on its face, because Plaintiff does not and

4   cannot even suggest that any Rydex Distributors' employees in this District, or any employees of

5   the PADCO Advisers affiliate, or any employees of PADCO Adviser's parent corporation, have

6   any relevant knowledge about this case.

7           The mere fact that a few of the Defendants have some indirect, attenuated corporate

8   relationship to this District and the District of Kansas does nothing to alter the fact that the people

9   who are actually the likely witnesses in this case – *i.e.*, the employees of PADCO Advisers who

10  drafted the Fund's disclosures and managed its day-to-day affairs – are all in Maryland, and

11  hauling them all to California for a potentially lengthy trial would severely disrupt the

12  Defendants' business activities.  The decision in *In re Choice Hotels Inc. Sec. Litig.* illustrates this

13  basic point quite well:

14          The plaintiffs argue that Choice Hotels has a substantial number of
            employees in Colorado, and this fact is not disputed. However, the
15          plaintiffs have not demonstrated that any of Choice Hotels'
            Colorado employees are likely to have any knowledge of the facts
16          relevant to the plaintiffs' securities fraud claims.  Rather, the issues
            presented by the plaintiffs' complaints concern statements,
17          documents, and other evidence located at Choice Hotels'
            headquarters in Maryland.  This factor augurs heavily in favor of
18          transfer.

19  No. 07-cv-00734-REB-BNB, 2008 WL 793621, at *2 (D. Colo. Mar. 24, 2008).

20          *Second*, Plaintiff notes that two of the eleven Individual Defendants -- both Board

21  members -- live in California.  But neither of them lives in the Northern District.  Moreover, three

22  of the Individual Defendants do live in Maryland, and the Board met more often in Maryland than

23  in any other place.  So, on balance, the residences of the Individual Defendants, combined with

24  the fact that all of the relevant employee witnesses are located in Maryland, weighs heavily in

25  favor of transferring this case to the District of Maryland.  *See, e.g., In re Collins & Aikman Corp.*

26  *Sec. Litig.*, 438 F. Supp. 2d 392, 396 (S.D.N.Y. 2006) ("[T]he fact that not every potential witness

27  can be found in the [the proposed transferee forum] does not defeat defendants' convincing

28

1   showing that a critical mass of witnesses reside there.  This factor therefore strongly favors

2   transfer.").

3        *Third*, Plaintiff suggests that the massive inconvenience that Defendants might suffer

4   during a potentially lengthy trial in this District is irrelevant; instead, all that matters is *pretrial*

5   inconvenience.  Opp'n. at 9-10.  Unsurprisingly, this unique argument has no merit and cannot be

6   squared with Ninth Circuit case law.  *See, e.g., Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949,

7   952 (9th Cir. 1968) (granting mandamus relief, ordering transfer, and explaining that the purpose

8   of the transfer statute is to avoid the inconvenience that the parties "must suffer by having the

9   *trial* in an improper forum") (emphasis added); *Malloy v. McDonald's Corp.*, No. CV-F-08-1362

10   OWW/DLB, 2009 WL 1288696, at *4 (E.D. Cal. May 6, 2009) (transferring case because it

11   would be inconvenient for witnesses to "attend trial in California").  A trial in this District would

12   be a substantial inconvenience to Defendants, and that is what counts in the section 1404(a)

13   analysis.

14        *Fourth*, Plaintiff suggests that litigating this case in the District of Maryland would be

15   inconvenient for him and his counsel.  Opp'n. at 10.  But as discussed above, named plaintiffs

16   have a very small role to play in securities class actions, which focus on the defendants' conduct,

17   and Plaintiff does not even suggest how this case would be any different.  Thus, the, at most,

18   slight inconvenience Plaintiff might suffer if this case were transferred to the District of Maryland

19   does not compare to the significant inconvenience that Defendants would suffer from a trial in

20   this District.  Moreover, case law in this District clearly holds that any inconvenience that

21   Plaintiff's counsel might suffer from litigating this case in Maryland is irrelevant to the section

22   1404 analysis.  *See, e.g., Jakusz v. Union Pac. Railroad Co.*, No. C 05-4842 JSW, 2006 WL

23   563055, at *2 (N.D. Cal.  Mar. 6, 2006) ("convenience of counsel is not a factor to be considered

24   on a motion to transfer venue"); *Fabus Corp. v. Asiana Express Corp.*, No. C-00-3172 PJH, 2001

25   WL 253185, at *2 (N.D. Cal. Mar. 5, 2001) ("convenience of plaintiffs' counsel, located in the

26

27

28

1    Bay Area, is not a factor to be considered in determining whether the Northern District is a

2    convenient forum").[2]

3           In short, the significant disruption in Defendants' business activities that would occur by

4    litigating this case in the Northern District of California dwarfs any inconvenience that Plaintiff

5    or his counsel might suffer from litigating this case in the District of Maryland.  Accordingly, this

6    factor weighs heavily in favor of transfer.

7           **C.    The District of Maryland Is A More Convenient Forum For The Actual
                     Relevant Witnesses.**

8

9           As discussed above, the key witnesses in this case will be the employees of the

10   Defendants who drafted the Fund's disclosures and managed the day-to-day operations of the

11   Fund.  These witnesses are overwhelmingly located in Maryland, making that District far more

12   convenient for the witnesses than this District.  Unable to refute this common sense argument,

13   Plaintiff resorts to arguing that (1) the inconvenience of witnesses employed by the Defendants

14   does not count; and (2) purported non-party witnesses would be inconvenienced by a transfer.

15   Both arguments are obviously and fatally flawed.

16          To begin with, courts actually do consider the inconvenience of witnesses who are

17   employed by the Defendants in the section 1404(a) analysis; indeed, a contrary rule would hardly

18   comport with the interests of justice on which section 1404(a) is based.  *See, e.g., Alcatel Lucent*

19   *United States, Inc. v. Dugdale Communs.*, Inc., CV 09-2140 PSG (JCx), 2010 WL 883831, at *12

20   (C.D. Cal. Mar. 5, 2010) (granting transfer and finding that a "number of witnesses (including

21   [defendant's] party witnesses) residing in Indiana and Illinois would not have to expend the time

22   and resources required to travel to California").  For the same reason, courts also will consider

23   *relevant* non-party witnesses who would be inconvenienced by testifying in the proposed

24   transferee forum.  But, as described below, Plaintiff has not identified any such witnesses.

25   _____

26   [2]     Plaintiff's claim that litigating this case in the District of Maryland would inconvenience his counsel also is
     inconsistent with the representations in his Lead Plaintiff/Lead Counsel motion, which touts his counsel's current
     representation of a securities class in a case now pending in Denver, which is more than 1000 miles away from this
27   District.  *See* Dkt. 12 at 19-22.  Moreover, the biography that Plaintiff's counsel submitted highlights their experience
     litigating class actions nationwide, including a case currently pending in New York and a recent case in Florida.  *See*
28   Dkt. 13-6 at 1-2 (Ex. F).

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)        10CV1171

Instead, Plaintiff asserts that it is "premature" for him to identify any actual, relevant non-party witnesses. Opp'n. at 10. Presumably this disclaimer is an attempt to excuse the cursory list of industry players Plaintiff names in passing as potential targets of "discovery".[3] But Plaintiff does not even attempt to explain why these non-parties have anything relevant to say about this case. For that reason alone, his non-party witness argument is entitled to no weight. *See, e.g., Maxon v. Jefferson Pilot Secs. Corp.*, No. C 01-02668 CRB, 2002 WL 523575, at *3 (N.D. Cal. Apr. 2, 2002) (Breyer, J.) (transferring case despite plaintiff's argument about the convenience of non-party witnesses because "[t]he need for [their] testimony [was] not at all clear" and plaintiff provided "almost no description of the substance of the testimony from these witnesses"); *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1163 (S.D. Cal. 2005) (granting transfer because, among other things, "plaintiffs have failed to demonstrate that any of these witnesses have important testimony"); *Maurey v. University of S. California,* No. C 97-4547 SI, 1998 U.S. Dist. LEXIS 4276, at *8 (N.D. Cal. Mar. 26, 1998) (transferring case where any testimony that plaintiff's "unidentified and speculative" non-party witnesses might offer was not likely to be relevant).

What little Plaintiff does say about these non-party "witnesses" does not carry his burden to demonstrate their importance to resolution of their claims.[4] None of these non-parties is affiliated in any way with the Defendants, none of them participated in drafting or approving the Fund's disclosures, none of them played any role in managing the Fund's assets, and Plaintiff does not contend otherwise. In other words, these non-parties have *no personal knowledge whatsoever* about the Fund or its disclosures. One is left to speculate about their supposedly relevant knowledge and how they conceivably could testify to admissible evidence. For example,

---

[3] Plaintiff states in the most conclusory fashion that he will "seek discovery" from (1) non-party financial companies that purportedly sold exchange-traded funds ("ETFs"); (2) a *Morningstar* analyst that covers ETFs; (3) the Financial Industry Regulatory Authority; and (4) representatives of the brokerage firm that sold Fund shares to him. (Opp. at 11)

[4] Without belaboring the point for the Court, there are obvious reasons that these kinds of witnesses would not have any relevant knowledge. For example, while Plaintiff suggests that his non-party witnesses may have knowledge about ETFs, as Plaintiff properly acknowledges in his Complaint, the Fund is an "open-ended investment company," *i.e.*, a mutual fund; it is *not* an ETF, a fundamentally different financial product. Similarly, while Plaintiff asserts that his broker is a potential third-party witness, Plaintiff's complaint is premised on alleged misstatements in the Fund's registration statements and prospectuses, not anything that Plaintiff's broker (who is not affiliated with any Defendant) allegedly might have said to him.

1   they might be able to testify about what they disclosed to other investors in other funds; what they

2   wrote about in industry publications commenting on industry practices; or the issuance of

3   industry notices by regulators.  But such testimony would not be probative of whether the

4   disclosures in this case were materially misleading, much of it is inherently hearsay, and there is

5   no basis in this record to conclude that any of these witnesses would ever be subject to testimony

6   beyond their deposition, which could occur anywhere they want.  Accordingly, there is no reason

7   to believe that the non-parties identified by Plaintiff have anything relevant to say about this case,

8   let alone that their location is a factor to be considered on a section 1404(a) motion.[5]

9       This Court has previously rejected a similar, thinly-supported attempt to rely on

10  purportedly relevant non-party witnesses to prevent a transfer to a much more convenient forum.

11  *See Maxon*, 2002 WL 523575 at *3 (Breyer, J.).  It should do so again here.

12      **D.      The District Of Maryland Has A Far Greater Interest In This Controversy.**

13      Plaintiffs baldly assert that this District has as much interest in this controversy as the

14  District of Maryland because two of the Fund's thousands of investors happen to be located here.

15  But courts have held precisely to the contrary: that it is the issuer's home state that has a "far

16  greater interest" in adjudicating a controversy involving its disclosures.  *Wojtunik v. Kealy*, No.

17  CIV.A. 02-8410, 2003 WL 22006240, at *11 (E.D. Pa. Aug. 26, 2003); *accord  Commodity*

18  *Futures Trading Comm'n v. Cromwell Fin. Servs*., No. Civ. 05-CV-210-JD,  2006 WL 435451, at

19  *6 (D.N.H. Feb. 22, 2006).

20      **E.      Substantially All Relevant Documents Are Located In The District Of
                  Maryland.**

21

22      Because no plausible argument can be made that the "ease of access to evidence" factor

23  favors this District, Plaintiff suggests that the Court should simply ignore it.  But this Court has

24  repeatedly held that this factor weighs in favor of transfer where the bulk of the relevant

25  _____

26  [5]      Because there is no reason to believe that these non-party witnesses have personal knowledge of any facts
relevant to this case, any testimony that they might give would necessarily be expert testimony.  *See* Fed. R. Evid.
701, 702. "[I]t is well settled that the location of expert witnesses is irrelevant to a transfer decision."  *Glass v. S & M
NuTec, LLC*, 456 F. Supp. 2d 498, 502 (S.D.N.Y. 2006).  Moreover, to the extent that Plaintiff seeks only
27  documentary evidence from these non-parties, his emphasis on their locations is fundamentally inconsistent with his
argument that the Court should accord no weight to the fact that nearly all documents relevant to this case are located
28  in the District of Maryland.

1   documents are located in the transferee forum. *Biswas v. HR Value Group, LLC*, No. C 02-03469

2   CRB, 2002 WL 31261160, at *3 (N.D.Cal. Oct. 4, 2002) (Breyer, J.); *Maxon,* 2002 WL 523575,

3   at *4. It is undisputed that nearly all of the documents relevant to this case are located in the

4   District of Maryland. Thus, this factor also weighs in favor of transfer.

5           **F.      The District of Maryland Is Less Congested.**

6           Plaintiffs also ask Court to ignore the fact that the District of Maryland is less congested

7   than this District. But, once again, this is a factor that courts in this District routinely rely on

8   when deciding to transfer a case. *See, e.g. Glaxo Group Ltd. v. Genentech, Inc.,* No. C10-00675

9   JSW, 2010 WL 1445666, at *6 (N.D. Cal. Apr. 12, 2010) (granting transfer); *Ezieme v. Ward Int'l*

10  *Trading, Inc.,* No. CV 08-6748 PSG (JWJx), 2009 WL 2818394, at *3 (C.D. Cal. Aug. 31, 2009)

11  (granting transfer).

12          **G.      Regardless Of The Level Of Deference, Plaintiff's Choice Of Forum Falls Far
                    Short Of Outweighing All Of The Other Factors Warranting Transfer To**

13                  **The District Of Maryland.**

14          The only relevant factor left is Plaintiff's choice of forum, but Plaintiff's decision to sue in

15  this District falls far short of the weight appropriately accorded to all of the other factors

16  discussed above, no matter what level of deference his choice is afforded. Moreover, the law is

17  clear that his choice of forum is *not* entitled to substantial deference for two reasons: (1) he is

18  suing on behalf of a nationwide class of investors; and (2) the alleged wrongdoing did not occur

19  in this District. *See* Mot. at 9-10.

20          Plaintiff's three arguments to the contrary plainly misstate the law. *First*, Plaintiff

21  suggests that the broad venue provision of the Securities Act somehow alters how courts should

22  apply section 1404(a). Opp'n. at 6. But Plaintiff cites no case supporting this assertion. Instead,

23  he cites only *Securities Investor Protection Corporation v. Vigman*, a Ninth Circuit case that

24  discussed only whether venue was "proper" in a district; the decision does not even mention

25  section 1404(a), does not discuss the convenience of the parties or any of the other settled 1404(a)

26  factors, and certainly does not hold that the Securities Act's venue provision trumps the

27  application of a section 1404(a) analysis. *See* 764 F.2d 1309, 1317 (9th Cir. 1985). Moreover,

28  Plaintiff simply ignores the numerous subsequent cases that have addressed his precise argument

1    and squarely rejected it because nothing in the venue provision even suggests that it alters the

2    standards for transferring a case under section 1404(a).  *See, e.g., In re Yahoo!*, 2008 WL 707405,

3    at *7 ("the special venue provision . . . [and] *Vigman* do not change . . . the deference to which

4    plaintiffs' choice of forum is entitled"); *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 406

5    (S.D.N.Y. 1998) (holding that the venue provision of the Securities Act does "not alter the

6    standard employed in deciding whether transfer is appropriate").  Thus, the Securities Act's venue

7    provision provides no basis for affording any deference to Plaintiff's decision to sue in this

8    District.

9         *Second*, Plaintiff suggests that the fact that he is suing on behalf of a putative nationwide

10   class does not diminish the amount of deference due his choice of forum because he resides in

11   this District.  Opp'n. at 6.  But the law is clear that suing on behalf of a nationwide class

12   "substantially undercuts" the deference due a plaintiff's choice of forum, regardless of whether he

13   is suing in his home forum.  *Johns v. Panera Bread Co.*, No. 08-1071 SC, 2008 WL 2811827, at

14   *2 (N.D. Cal. 2008).  That is why courts routinely transfer securities class actions even though the

15   named plaintiffs have sued in the districts in which they reside.  *See, e.g., Bortel*, 1995 WL 7953,

16   at *2 (transferring securities class action to Virginia even though 14 named plaintiffs were

17   California residents).

18        *Third*, Plaintiff appears to suggest that his choice of forum must carry the day because he

19   purchased his shares in this District and received prospectuses here.  Opp'n. at 7.  But in

20   securities class actions like this one, it is well-settled that the wrongdoing occurred in the District

21   where the allegedly misleading offering documents were drafted.  Mot. at 5.  Plaintiff does not

22   even acknowledge these cases, much less make any attempt to distinguish them.  Thus, his

23   decision to sue in this District is also entitled to less deference because "the facts giving rise to

24   this dispute did not occur" here.  *Childrens Hosp. & Research Center at Oakland v. Clark County

25   Self-Funded*, No. C 09-01603 JSW, 2010 WL 890011, at *8 (N.D. Cal. Mar. 8, 2010) (granting

26   transfer).[6]

───────────────

[6]    Moreover, the cases Plaintiff cite are entirely consistent with affording little, if any, deference to his choice
of forum.  *Rare Breed Distilling v. Heaven Hill Distilleries*, is wholly inapposite because it was an individual
intellectual property action, not a securities class action brought on behalf of a nationwide class.  *See* No. C-09-04728

1        Accordingly, Plaintiff's decision to sue in this District is not entitled to substantial

2  deference and, in any event, is nowhere near enough to trump all of the other factors that weigh

3  heavily in favor of transferring this case to the District of Maryland.

4                                    **CONCLUSION**

5        For the foregoing reasons, as well as those set forth in their initial memorandum and

6  supporting declaration, Defendants respectfully request that the Court grant their motion to

7  transfer.

---

21  EDL, 2010 WL 335658, at *1 (N.D. Cal. Jan. 22, 2010).  Similarly, *Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecher* was an individual action raising various federal and state law claims, and several relevant witnesses were located in the plaintiff's chosen forum.  *See* 617 F. Supp. 300, 307 (E.D. Pa. 1985).  The remaining four cases are easily distinguishable because the alleged wrongdoing in those cases was intimately related to activities in this District, and thus numerous key witnesses and documents were located here.  *See Wade*, 1992 WL 207926, at *2-*3 (claims arose out of the defendants' activities in this District); *Milton v. Trueposition, Inc.*, No. C08-3616 SI, 2009 WL 323036, at *2 (N.D. Cal. Feb. 9, 2009) (according forum choice "some deference" in a wage-and-hour case because the wrongful conduct was the failure to pay plaintiffs who "performed much of the work at issue in California"); *Temple v. Guardsmark LLC*, No. C 09-02124 SI, 2009 WL 2997396, at *3 (N.D. Cal. Sept. 16, 2009) (according forum choice "some weight" in a wage-and-hour case because "plaintiff's claims arise under California law and involve events that occurred within this judicial district"); *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 542-43 & n.5 (N.D. Cal. 2005) (explaining in the context of a Title VII case that this District was the "locational center of gravity" of one of the named plaintiff's claims because "the three most relevant witnesses" were located here and "all documentary and testimonial evidence related to her employment" was located in this District). Here, by contrast, the activities that gave rise to Plaintiff's claims indisputably occurred in Maryland, not this District.

1    Dated:  June 11, 2010                        DECHERT LLP
                                                  MATTHEW L. LARRABEE
2                                                 DAVID A. KOTLER
                                                  MURIEL M. KOROL
3

4                                                 By:_____/S/_____
                                                      MATTHEW L. LARRABEE
5                                                     One Maritime Plaza, Suite 2300
                                                      San Francisco, California  94111-3513
6                                                     Telephone:  415.262.4500
                                                      Facsimile:   415.262.4555
7                                                     matthew.larrabee@dechert.com

8                                                     Counsel for Defendants
                                                      RYDEX SERIES FUNDS; PADCO
9                                                     ADVISORS INC. d/b/a RYDEX
                                                      INVESTMENTS, INC.; RYDEX
10                                                    DISTRIBUTORS, INC.; NICK BONOS;
                                                      MICHAEL P. BYRUM; RICHARD M.
11                                                    GOLDMAN; and CARL G.
                                                      VERBONCOEUR

12                                                SCHIFF HARDIN LLP
                                                  MICHAEL K. WOLENSKY
13                                                C. CRAIG BRIDWELL

14

15                                                By:_____/S/_____
                                                      C. CRAIG BRIDWELL
16                                                    One Market, Spear Street Tower
                                                      Thirty-Second Floor
17                                                    San Francisco, CA  94105
                                                      Telephone:  415.901.8798
18                                                    Facsimile:   415.901.8701

19                                                    Counsel for Defendants
                                                      JOHN O. DEMARET; COREY A.
20                                                    COLEHOUR; J. KENNETH DALTON;
                                                      WERNER E. KELLER; THOMAS F.
21                                                    LYDON; PATRICK T. MCCARVILLE; and
                                                      ROGER SOMERS

22

23

24

25

26

27

28

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO