1    SCHIFF HARDIN LLP
     MICHAEL K. WOLENSKY (*pro hac vice*)
2    mwolensky@schiffhardin.com
     C. CRAIG BRIDWELL (No. 246124)
3    cbridwell@schiffhardin.com
     One Market, Spear Street Tower
4    Thirty-Second Floor
     San Francisco, CA  94105
5    Telephone:      (415) 901-8700
     Facsimile:      (415) 901-8701
6
     Attorneys for Defendants
7    COREY A. COLEHOUR; J. KENNETH
     DALTON; JOHN O. DEMARET;
8    WERNER E. KELLER; THOMAS F.
     LYDON; PATRICK T. MCCARVILLE;
9    and ROGER SOMERS

10

11               UNITED STATES DISTRICT COURT

12               NORTHERN DISTRICT OF CALIFORNIA

13                    SAN JOSE DIVISION

14   JAMES RAFTON, TRUSTEE OF THE          Case No. 10 CV 01171 LHK
     JAMES AND CYNTHIA RAFTON TRUST,
15                                         **INDEPENDENT TRUSTEES' NOTICE OF**
                   Plaintiff,              **MOTION AND MOTION TO DISMISS**
16                                         **PLAINTIFFS' FIRST AMENDED CLASS**
            v.                             **ACTION COMPLAINT; MEMORANDUM**
17                                         **OF POINTS AND AUTHORITIES IN**
     RYDEX SERIES FUNDS; PADCO             **SUPPORT THEREOF**
18   ADVISORS INC. d/b/a RYDEX
     INVESTMENTS, INC.; RYDEX              [F.R.C.P. Rules 12(b)(1) and 12(b)(6)]
19   DISTRIBUTORS, INC.; RICHARD M.
     GOLDMAN; CARL G. VERBONCOEUR;         Date:    December 16, 2010
20   JOHN O. DEMARET; NICK BONOS;          Time:    1:30 p.m.
     MICHAEL P. BYRUM; COREY A.            Dept.:   Courtroom 4, 5th Floor
21   COLEHOUR; J. KENNETH DALTON;          Judge:   The Hon. Lucy H. Koh
     WERNER E. KELLER; THOMAS F.
22   LYDON; PATRICK T. MCCARVILLE;
     ROGER SOMERS; and DOES 1 through 25,
23   inclusive,

24                 Defendants.

25

26

27

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on December 16, 2010, at 1:30 p.m., or as soon thereafter as the matter may be heard in the San Jose Division of the United States District Court, Northern District of California, located at 280 South 1st Street, San Jose, California 95113, defendants COREY A. COLEHOUR, J. KENNETH DALTON, JOHN O. DEMARET, WERNER E. KELLER, THOMAS F. LYDON, PATRICK T. MCCARVILLE and ROGER SOMERS (the "Independent Trustees") will move this Court, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing all claims in Plaintiffs' First Amended Class Action Complaint ("Complaint") against the Independent Trustees on the grounds that Plaintiffs lack standing and their Complaint fails to state a claim upon which relief can be granted.

This motion also expressly incorporates the Rydex Defendants' Motion, Notice of Motion and Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (the "Rydex Defendants' Motion"). Accordingly, the Independent Trustees' Motion to Dismiss is based upon this Notice of Motion, the Memorandum of Points and Authorities set forth below, the Rydex Defendants' Motion, the Defendants' Joint Request for Judicial Notice (filed contemporaneously with the Defendants' respective motions to dismiss), Exhibits A-N to the Declaration of Muriel M. Korol, Exhibits A-E to the Declaration of Craig Bridwell, and such other written or oral arguments as may be presented to the Court.

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF THE ISSUES (LOCAL RULE 7-4(A)(3)) .......................................... 1

II.    ARGUMENT AND CITATION OF AUTHORITY ......................................... 1

    A.    PLAINTIFFS' FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ...................................... 1

        1.    PLAINTIFFS' CLAIMS ARE TIME-BARRED (SECTIONS 11 AND 12)...................................................................................... 2

            a.    The Registration Statements and Prospectuses, themselves, put Plaintiffs on notice of the alleged untrue statements or omissions ........................................................................... 3

            b.    Well-publicized and widely-available information in the public domain put Plaintiffs on notice of the alleged untrue statements and omissions ................................................. 4

        2.    PLAINTIFFS HAVE NOT SUFFERED COMPENSABLE DAMAGES (SECTIONS 11 AND 12) ...................................... 6

        3.    PLAINTIFFS FAIL TO PLEAD CONTROL BY THE INDEPENDENT TRUSTEES (SECTION 15)........................................ 10

    B.    THIS COURT LACKS SUBJECT-MATTER JURISDICTION WHERE PLAINTIFFS LACK STANDING ...................................................... 13

        1.    LEGAL STANDARD ........................................................... 13

        2.    PLAINTIFFS CANNOT ALLEGE ANY PURCHASES PURSUANT TO THE 2009 REGISTRATION STATEMENT AND PROSPECTUS (SECTIONS 11 AND 12)...................................... 14

        3.    PLAINTIFFS CANNOT ALLEGE ANY PURCHASES OF ADVISOR, INVESTOR, AND CLASS C SHARES (SECTIONS 11 AND 12)................................................................................. 15

        4.    PLAINTIFFS CANNOT REMEDY THEIR LACK OF STANDING BY ADDING NEW NAMED PLAINTIFFS, BECAUSE THE STATUTE OF LIMITATIONS HAS RUN (SECTIONS 11 AND 12) ...................................... 15

III.    CONCLUSION ........................................................................................ 16

# TABLE OF AUTHORITIES

**Page**

## CASES

*al-Kidd v. Ashcroft*,
  580 F.3d 949 (9th Cir. 2009) ........................................................................................ 1

*Allen v. Wright*,
  468 U.S. 737 (1984) ..................................................................................................... 13

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ..................................................................................... 1, 11, 12

*Bell Atlantic Corporation v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 1, 11, 12

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975) ..................................................................................................... 15

*Caiafa v. Sea Containers Ltd.*,
  525 F. Supp. 2d 398 (S.D.N.Y. 2007) ........................................................................ 13

*DeBenedictis v. Merrill Lynch & Co.*,
  492 F.3d 209 (3d Cir. 2007) ..................................................................................... 3, 6

*Ex parte McCardle*,
  7 Wall. 506 (1869) ....................................................................................................... 13

*Faibish v. Univ. of Minn.*,
  304 F.3d 797 (8th Cir. 2002) ....................................................................................... 13

*Freidus v. ING Groep N.V.*,
  No. 09 Civ. 1049, 2010 WL 3554097 ........................................................................ 2, 3

*Getty v. Harmon*,
  53 F. Supp. 2d 1053 (W.D. Wash. 1999) ...................................................................... 2

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
  189 F.3d 971 (9th Cir. 1999) ....................................................................................... 11

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983) ..................................................................................................... 14

*Hoffman v. UBS-AG*,
  591 F. Supp. 2d 522 (S.D.N.Y. 2008) ........................................................................ 13

*In re Cadence Design Sys., Inc. Sec. Litig.*,
  692 F. Supp. 2d 1181 (N.D. Cal. 2010) ............................................................... 11, 12

*In re Century Aluminum Co. Sec. Litig.*,
  No. C-09-1001, 2010 WL 1729426 .............................................................................. 13

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009) ................................................................... 10, 11

*In re Infonet Serv. Corp. Sec. Litig.*,
    310 F. Supp. 2d 1106 (C.D. Cal. 2003) ................................................................. 4

*In re Lehman Bros. Sec. and ERISA Litig.*,
    684 F. Supp. 2d 485 (S.D.N.Y. 2010) ................................................................. 13

*In re Livent, Inc. Sec. Litig.*,
    148 F. Supp. 2d 331 (S.D.N.Y. 2001) ................................................................... 4

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
    441 F. Supp. 2d 579 (S.D.N.Y. 2006) .............................................................. 9, 14

*In re Stac Elec. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ................................................................................ 2

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
    694 F. Supp. 2d 1192 (W.D. Wash. 2009) ........................................................... 11

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
    No. C 09-01376, 2010 WL 1661534 .................................................................... 11

*In re Williams Sec. Litig. – WCG Subclass*,
    558 F.3d 1130 (10th Cir. 2009) ............................................................................. 7

*Lewis v. Casey*,
    518 U.S. 343 (1996) ............................................................................................ 13

*McGonigle v. Combs*,
    968 F.2d 810 (9th Cir. 1992) ................................................................................. 9

*Meadows v. Pacif. Inland Sec. Corp.*,
    36 F. Supp. 2d 1240 (S.D. Cal. 1999) ............................................................... 2, 4

*New York City Emp. Ret. Sys. v. Berry*,
    616 F. Supp. 2d 987 (N.D. Cal. 2009) ................................................................ 11

*Osher v. JNI Corp.*,
    302 F. Supp. 2d 1145 (S.D. Cal. 2003) ............................................................... 11

*Pub. Emp. Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*,
    No. 08-Civ-10841, 2010 WL 2175875 ................................................................ 16

*Reese v. Malone*, No. C-08-1008,
    2009 WL 506820 ........................................................................................... 11, 12

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .............................................................................................. 13

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Grp.*,
    690 F. Supp. 2d 959 (D. Ariz. 2010) ......................................................... 10, 11, 12

*Visioneer, Inc. v. Keyscan, Inc.*,
    626 F. Supp. 2d 1018 (N.D. Cal. 2009) .................................................................. 13

*Young v. Nationwide Life Ins. Co.*,
    183 F.R.D. 502 (S.D. Tex. 1998) ............................................................................ 7

## STATUTES

15 U.S.C. § 77 ...................................................................................................................... 2

15 U.S.C. § 77k .................................................................................................................. 14

15 U.S.C. § 77k(e) ............................................................................................................... 6

15 U.S.C. § 77*l*(a)(2) .......................................................................................................... 14

15 U.S.C. § 77*l*(b) ................................................................................................................ 6

15 U.S.C. § 77m ................................................................................................................. 15

15 U.S.C. § 80a-22(e) .......................................................................................................... 7

## FEDERAL RULES

Federal Rule of Civil Procedure 12(b)(1) ......................................................................... 13

Federal Rules of Civil Procedure 12(b)(6) .......................................................................... 1

## OTHER AUTHORITIES

17 C.F.R. § 270.22c-1 .......................................................................................................... 7

17 C.F.R. § 270.22c-1(a) ..................................................................................................... 7

H.R. Rep. No. 73-85 at 10, 22, 73rd Cong., 1st Sess. (May 4, 1933) ............................... 10

Principles, Problems & Policies 163 (13th ed. 1996) .......................................................... 7

S. Rep. No. 1775 at 2, 76th Cong., 3d Sess. (June 6, 1940) ............................................... 7

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TABLE OF AUTHORITIES (CONT.)

## MEMORANDUM OF POINTS AND AUTHORITIES

The Independent Trustees submit this memorandum of points and authorities in support of their motion to dismiss Plaintiffs' Complaint.[1]

The Independent Trustees also join the Rydex Defendants' Motion,[2] and incorporate their statement of facts and arguments by reference, as if fully set forth in this Motion.

## I.   STATEMENT OF THE ISSUES (LOCAL RULE 7-4(a)(3))

In addition to the issues addressed in the Rydex Defendants' Motion, which are relevant to this argument, the issues to be decided are as follows:

(1)   Should the Court dismiss all claims as time-barred?

(2)   Should the Court dismiss all claims where Plaintiffs have suffered no compensable damages?

(3)   Should the Court dismiss Plaintiffs' Section 15 (control person) claim where Plaintiffs fail to plead a primary violation or control by the Independent Trustees?

(4)   Should the Court dismiss all claims pertaining to the 2009 Registration Statement and Prospectus, and to Advisor, Investor, and C classes of shares, for lack of subject-matter jurisdiction?

## II.   ARGUMENT AND CITATION OF AUTHORITY

### A.   PLAINTIFFS' FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The Rydex Defendants' Motion sets forth the pleading standard under Federal Rule of Civil Procedure 12(b)(6). As explained in their Motion, since the U.S. Supreme Court's decisions in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), "plaintiffs face a higher burden of pleading facts." *al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009). Because the Plaintiffs' Complaint fails to state a plausible claim for

---

[1]  Plaintiffs are James Rafton, Trustee of the James and Cynthia Rafton Trust ("Rafton") and James Darst, Trustee of the James & Hillary Darst Trust ("Darst") (collectively, "Plaintiffs").

[2]  The Rydex Defendants' Motion, Notice of Motion and Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, filed October 8, 2010.

relief, Plaintiffs have not met their burden, and their claims against the Independent Trustees should be dismissed.

### 1.   PLAINTIFFS' CLAIMS ARE TIME-BARRED (SECTIONS 11 AND 12).

Claims brought under Sections 11 and 12(a)(2) of the Securities Act of 1933 are barred "unless brought within one year after the discovery of the untrue statement or the omission, *or after such discovery should have been made by the exercise of reasonable diligence . . . .*" 15 U.S.C. § 77, (emphasis added).  This means the limitations period begins to run "after the plaintiff obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge." *Freidus v. ING Groep N.V.*, No. 09 Civ. 1049, 2010 WL 3554097, at *6 (S.D.N.Y. Sep. 14, 2010).  In other words, Plaintiffs must file their claims "within one year of actual notice *or inquiry notice* of an untrue or misleading statement." *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1411 (9th Cir. 1996) (emphasis added).

Inquiry notice exists when the investor "is aware of *facts* that would lead a reasonable person to investigate and consequently acquire actual knowledge of the defendant's misrepresentations." *Getty v. Harmon*, 53 F. Supp. 2d 1053, 1055 (W.D. Wash. 1999) (emphasis added).  "It is not necessary for plaintiffs to have full knowledge of the existence of a claim or of each allegation in a claim.  Knowledge of facts that would lead a reasonable investor to exercise due diligence in investigating . . . is sufficient." *Meadows v. Pacif. Inland Sec. Corp.*, 36 F. Supp. 2d 1240, 1246 (S.D. Cal. 1999).  Facts that would lead a reasonable investor to inquire include "information contained in the financial press, mainstream media, and publicly filed documents." *Freidus,* 2010 WL 3554097, at *6.  "Once the duty to inquire arises . . . [i]f the investor makes no inquiry, the court imputes knowledge as of the date the duty to inquire arose." *Id.*

Plaintiffs filed suit on March 19, 2010.  Because they should have discovered the alleged untrue statements or omissions long before March 19, 2009, their Complaint should be dismissed.

**a.      The Registration Statements and Prospectuses, themselves, put Plaintiffs on notice of the alleged untrue statements or omissions.**

In evaluating whether a Plaintiff had inquiry notice, "investors are presumed to have read prospectuses, quarterly reports, and other information related to their investments." *DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209, 216 (3d Cir. 2007).  The information provided to investors "need not detail every aspect" or the "granular details" of the alleged securities violation in order to put investors on inquiry notice of the facts underlying their claims; disclosure of "enough . . . of the essential facts that plaintiffs allege were omitted" is sufficient. *Freidus*, 2010 WL 3554097, at *7 (claims time-barred where registration statements disclosed enough facts to put plaintiffs on inquiry notice).  Because the Registration Statements and Prospectuses, themselves, thoroughly disclosed the very statements about which Plaintiffs complain, Plaintiffs were on notice of the facts underlying their claims at the time they first purchased their Fund shares.

As fully discussed in the Rydex Defendants' Motion, and as stated in Plaintiffs' own Complaint, the Registration Statements and Prospectuses were replete with language explaining the effect of compounding and repeatedly emphasized that "the Fund's objective [was] to perform, *on a daily basis*, exactly opposite its benchmark, the Long Treasury Bond." 2007 Prosp. at 16 (emphasis added).[3]  What is more, the significance of the statement of the Fund's objective could not have been lost on plaintiffs as the shareholder reports provided to investors put them on actual notice that, when held for a period of one year or longer, the Fund's cumulative return had not matched the inverse of the price movement of the Long Treasury Bond.

For instance, a chart included in the Fund's 2007 Annual Report[4] (issued March 31, 2007 and incorporated by reference into the Prospectus), compared the Fund's cumulative return with the price movement of the Long Treasury Bond.[5]  The chart showed that, since the Fund's

---

[3]  *See* Defendants' Joint Request for Judicial Notice ("RJN"), Declaration of Muriel M. Korol ("Korol Decl.") Ex. A (Defendants filed the RJN contemporaneously with their respective motions to dismiss).

[4]  2007 Annual Report at 33 (RJN, Korol Decl. Ex. D).

[5]  The 2007–2009 Annual Reports are incorporated by reference into the 2007-2009 Statements of Additional Information ("SAI"). *See*, *e.g.,* 2007 Prospectus at 99 (RJN, Korol Decl. Ex. A).  The

1  inception (2004), the price of the Long Treasury Bond had decreased by 3.30% and the

2  cumulative return of the Fund's A Class shares had decreased by 1.44%.  Similarly, the 2008

3  Annual Report (issued March 31, 2008)[6] showed that, since inception, the price of the Long

4  Treasury Bond had decreased by 1.77%, and the cumulative return of the Fund's A Class shares

5  had decreased by 3.72%.  These disclosures unmistakably show that, over time, the Fund's return

6  not only can, but has moved in the *same* direction as the price of the Long Treasury Bond.[7]

7  Plaintiffs therefore cannot credibly contend they were not aware of facts—which, with reasonable

8  inquiry, would have shown that the fund's investment objective meant what it said—at the time

9  Plaintiffs first purchased their shares in March 2008, almost *two years* before they filed suit.[8]

              **b.**    **Well-publicized and widely-available information in the public domain put Plaintiffs on notice of the alleged untrue statements and omissions.**

12        Inquiry notice also "may be triggered by 'any financial, legal, or other data . . . that

13  provide the plaintiff with sufficient storm warnings to alert a reasonable person to the probability

14  that there were either misleading statements or significant omissions involved in the sale of

15  securities.'" *In re Infonet Serv. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106, 1113–14 (C.D. Cal. 2003)

16  (quoting *In re Livent, Inc. Sec. Litig.*, 148 F. Supp. 2d 331, 364–65 (S.D.N.Y. 2001)).  In

17  determining when a plaintiff had inquiry notice, "[a] reasonable investor is deemed to have

18  knowledge of well publicized and widely available information in the public domain." *Meadows*,

19  36 F. Supp. 2d at 1246.

---

SAIs are in turn incorporated by reference into the 2007–2009 Prospectuses. *See, e.g.,* 2007 Prospectus at 112 (RJN, Korol Decl. Ex. A).

[6]  2008 Annual Report at 33 (RJN, Korol Decl. Ex. E).

[7]  The chart in the 2008 report also showed that, for the prior one-year period, the price of the Long Treasury Bond had increased by 2.95%, while the cumulative return of the Fund's A Class shares had decreased by 14.53%, yet again demonstrating that when held for one year, the Fund's return diverged greatly from its benchmark—the inverse of the price movement of the Long Treasury Bond.

[8]  Plaintiff Darst first purchased shares on March 20, 2008. *See* Declaration of Kevin H. Lewis in Support of Motion to Appoint Rydex Litigation Group as Lead Plaintiff and to Approve Proposed Lead Plaintiffs' Selection of Counsel ("Lewis Decl.") (ECF 13-3).  Plaintiff Rafton first purchased shares on March 24, 2008. *See* Lewis Decl. (ECF 13-2).

In the Complaint, Plaintiffs concede that before the July 2009 Registration Statement was filed, "red flags"—which would have put a reasonable person on notice of the facts underlying their claims—had been raised by FINRA "and others." Compl. ¶ 60.  In doing so, Plaintiffs make selective use of publications issued within a year prior to their filing suit, Compl. ¶¶ 49–58 , but neglect to give equal recognition to the numerous other well-publicized and widely-available articles that put them on notice of the facts underlying their claims years before they filed suit. For example, a May 1, 2003 article in *On Wall Street* explained that "inverse funds are managed to maintain a certain relationship to the benchmark every day.  The cumulative impact of daily rebalancing usually causes a divergence from the benchmark over a longer period of time."[9]  An investment advisor quoted in the article even warned that the Rydex inverse funds, specifically, are "like surgical tools that are very, very sharp and need to be handled in a very precise fashion, or you can nick yourself until you bleed to death."  Similarly, advisors and analysts quoted in a March 18, 2007 *MarketWatch* article explained that they "wouldn't use inverse funds as part of a buy-and-hold strategy" and that "[e]ven in small amounts" inverse funds "can be highly toxic . . . [p]laying with them can really burn you if you're not careful."[10]

Additionally, an April 1, 2007 *Registered Rep.* article cautioned that "inverse funds . . . aren't for the buy-and-hold crowd" and "[e]ven for defensive purposes, you have to possess a certain level of mathematical sophistication to get a hedge sized properly.  That's because the bogey for the funds is beta, not compound returns.  Beta represents the correlation between variation in a fund's daily price and that of its benchmark."[11]

---

[9]  RJN, Declaration of Craig Bridwell ("Bridwell Decl.") Ex. A.

[10]  RJN, Bridwell Decl. Ex. B.

[11]  RJN, Bridwell Decl. Ex. C.  Further, to the extent Plaintiffs argue that the Fund is "similar to an exchange traded fund ('ETF') in that it is designed to track a particular benchmark," Compl. ¶ 30, a January 18, 2009 *MarketWatch* article explained that "the effects of compounding . . . can lead to unexpected results over the long-term" and "[i]nvestors probably don't want to hold leveraged and inverse ETFs more than a few days . . . ." RJN, Bridwell Decl. Ex. D. And, a January 22, 2009 *Morningstar* article unambiguously warned that "inverse ETFs are NOT meant to be held as long-term investments.  Let me repeat myself:  Very bad things . . . can happen whenever you hold these ETFs longer than their indicated compounding period (typically one day for stock-based ETFs, sometimes more for commodities). . . ." RJN, Bridwell Decl. Ex. E.

The information provided in these articles, alone, was sufficient to put Plaintiffs on inquiry notice, especially since "[n]ews reports are not given weight by courts in a vacuum, but rather have significance in cases where investors are presumed to have read prospectuses, quarterly reports, and other information related to their investments." *DeBenedictis*, 492 F.3d at 216.  Accordingly, "[e]ven if a mutual fund investor failed to read the Registration Statements when they were initially received . . . the news articles . . . would urge the reasonable investor to return to the Registration Statements in order to evaluate the profitability of his or her own investments. . . ." *Id.* (dismissal where both information in registration statements and news articles triggered inquiry notice and plaintiff failed to timely file suit).

## 2.    PLAINTIFFS HAVE NOT SUFFERED COMPENSABLE DAMAGES (SECTIONS 11 AND 12).

Plaintiffs' claims also fail because it is clear from the face of the complaint that Plaintiffs suffered no compensable damages.  Under the Securities Act, Plaintiffs are not entitled to any damages if the decline in value of their securities "result[ed] from" something other than the allegedly misleading statements in the Fund's registration statement:

> If the defendant proves that ***any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement***, with respect to which liability is asserted, ***not being true or omitting to state a material fact*** required to be stated therein or necessary to make the statements therein not misleading, ***such portion of or all such damages shall not be recoverable***.

15 U.S.C. § 77k(e) (emphases added); *see also id.* at § 77l(b).  Here, Plaintiffs' own allegations and the basic characteristics of mutual funds establish that none of the "depreciation in value" of their Fund shares could have or did "result[]from" the misstatements or omissions alleged in the complaint.[12]

---

[12]   Although lack of a causation is an affirmative defense under the Securities Act, courts routinely rely on it to grant Rule12(b)(6) motions to dismiss where the lack of causation is apparent from the face of the plaintiff's complaint and judicially noticeable facts. *See, e.g., Hildes v. Anderson*, No. 08-cv-00082010, WL 2836769, at *3 (S.D. Cal. July 19, 2010); *In re DNAP Sec. Litig.*, No. C 99-00048, 2000 WL 1358619, at *3 (N.D. Cal. Sept. 14, 2000) ("Although loss

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -                                    Case No. 10 cv 01171 LHK
IND. TRUSTEES' NOT. OF MOT. & MOT. TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMO. OF PTS. AND AUTH. ISO

To explain why, it is helpful to begin with the fundamental differences between mutual funds and securities that trade on public markets (such as the New York Stock Exchange).  The price of publicly-traded securities is determined by investors' "collective expectation for each firm's profits." Campbell R. McConnell & Stanley L. Brue, Economics:  Principles, Problems & Policies 163 (13th ed. 1996).  False "good" news (or the omission of true "bad" news) about an issuer can increase collective expectations about the issuer's future and cause investors to bid up the price of the issuer's shares. *See, e.g., In re Williams Sec. Litig. – WCG Subclass*, 558 F.3d 1130, 1134 (10th Cir. 2009).  If investors later learn the truth, their collective expectations for the issuer may fall, causing them to bid down the price of the issuer's securities. *Id.*  In short, disclosures affect the prices of publicly-traded securities—and thus cause a "depreciation in value"—by changing collective expectations about the issuer's future.

Investors' expectations about the future performance of an open-end mutual fund, like the Inverse Long Bond Fund, however, play *no* role in determining the Fund's share price, because the mutual fund shares are not traded on a public market.  Instead, investors in an open-end mutual fund purchase their shares from the fund (which issues new shares to them), and they must sell their shares back to the fund (which is obligated by law to repurchase them). *See* S. Rep. No. 1775 at 2, 76th Cong., 3d Sess. (June 6, 1940) (discussing these "peculiar[]" features of open-end funds); 15 U.S.C. § 80a-22(e); 17 C.F.R. § 270.22c-1(a).  To ensure that investors receive a fair and predictable price when they buy and sell fund shares, open-end funds are required to price their shares at net asset value ("NAV"), which is computed according to the following formula:

$$\text{NAV} = (\text{Assets} - \text{Liabilities}) / (\text{Shares Outstanding})$$

*See* 17 C.F.R. § 270.22c-1.  As this formula illustrates, the price of an open-end fund's shares is determined exclusively by the market value of the fund's net assets; investor expectations about the fund's future play no role whatsoever.  Thus, only a Fund's investments, and not its disclosures, can affect its share prices. *See, e.g., Young v. Nationwide Life Ins. Co.*, 183 F.R.D.

---

causation is an affirmative defense, . . . in this case it is evident on the face of the complaint and thus may be raised on a motion to dismiss[.]").

1   502, 510 (S.D. Tex. 1998) (stating that an open-end fund's share price cannot be affected by

2   misstatements or omissions).

3        Neither the statutory language of the Securities Act, nor the functioning and pricing of

4   mutual fund shares under federal law is subject to any meaningful dispute.  Thus, the issue raised

5   by this motion is whether, as a matter of law, Plaintiffs could have suffered compensable damages

6   under the Securities Act in light of these principles and the allegations in their Complaint.  The

7   answer clearly is "no."

8        Plaintiffs build their entire case on a purportedly undisclosed compounding effect, which

9   they claim caused their losses.  *See* Compl. ¶ 38.  But this compounding effect was a natural and

10  obvious consequence of the Fund's *disclosed* investment strategy, and Plaintiffs cannot allege or

11  argue otherwise.  Indeed, plaintiffs affirmatively allege that the compounding effect is inherent in

12  the design of an inverse fund that, like the Fund, seeks to meet a daily benchmark. *See* Compl. ¶

13  31.  Thus, nothing the Fund said or did not say about compounding actually caused the

14  compounding effect to occur; nor did the Fund's disclosures (the claimed source of the losses

15  allegedly resulting from the compounding effect ) cause the Fund to deviate from its benchmark

16  over time.  Rather, the compounding—and any associated "depreciation in value" of Plaintiffs'

17  shares—"resulted from" the fund's investment strategy.  Because none of the "depreciation in

18  value" of Plaintiffs' shares could have "resulted from" any of the misstatements or omissions

19  alleged in their complaint, all of their claims should be dismissed.

20       The same reasoning applies to claims based on the prospectuses' alleged failure to discuss

21  whether the Fund was suitable for certain types of investors.  These alleged omissions relate to

22  who should invest in the Fund.  For the reasons discussed above, investors' decisions about

23  whether to invest in the Fund (whether considered individually or collectively) have no effect

24  whatsoever on the Fund's share price.  Thus, no depreciation in value of the Fund's shares

25  plausibly could have resulted from the alleged omission of these suitability disclosures.

26

27

28

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 8 -

Case No. 10 cv 01171 LHK

IND. TRUSTEES' NOT. OF MOT. & MOT. TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMO. OF PTS.
AND AUTH. ISO

Instead, at the very most, an omission about suitability theoretically could result in an investor purchasing shares when she otherwise would not have made the purchase.[13]  But even in that hypothetical scenario, the investor would be able to show, at best, that the omission caused her to enter the transaction, *i.e.*, transaction causation; she could *not* show that the omission also caused her shares to later fall in value, *i.e.*, loss causation. *See McGonigle v. Combs*, 968 F.2d 810, 820–21 (9th Cir. 1992) (discussing the difference between transaction causation and loss causation).  Rather, any depreciation in value could *only* be caused by a decline in value of the Fund's assets.  It is black-letter law that mere transaction causation is not enough to recover under the Securities Act. *See, e.g.*, *McGonigle*, 968 F.2d at 820 (dismissing a securities claim on loss-causation grounds because the plaintiffs "did not show that the existence of the allegedly omitted facts reduced the proper valuation of their investment"); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 589 (S.D.N.Y. 2006) (dismissing Section 11 claims against a mutual fund and holding that "[w]ith regard to Plaintiffs' assertion that they would not have purchased the Fund shares had they known of the complained-of practices, this assertion makes out transaction causation—not loss causation").  Because transaction causation is all that could have occurred here, even theoretically, all of Plaintiffs' claims should be dismissed.

This result not only flows from the plain language of the Securities Act, but is also strongly reinforced by the Act's legislative history and basic purpose.  As the House Committee Report accompanying the Securities Act makes clear, Congress created near strict liability under Section 11, without any requirement of scienter or reliance by an investor, because it wanted to provide a remedy when misrepresentations in a registration statement could affect the price paid by the investor:

> **The statements for which [potential defendants] are responsible, although they may never actually have been seen by the prospective purchaser, because of their wide dissemination, determine the market price of the security**, which in the last analysis reflects those manifold causes that are the impelling motive of the particular purchase. . . . **Inasmuch as the value of**

---

[13]  That is not even plausibly the case here, however, because anyone who read the prospectus would have understood the risks of the Fund and the effect of compounding on the Fund's cumulative returns over time.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*the security may be affected by the information given in the registration statement* . . . the civil remedies accorded by this subsection . . . are given to all purchasers . . . .

H.R. Rep. No. 73-85 at 10, 22, 73rd Cong., 1st Sess. (May 4, 1933) (emphases added).  There are policy reasons for protecting investors who have never even seen a registration statement if, *but only if*, the issuer's registration statement has some impact on the price of the securities they purchased.  Absent any impact on the purchase price at all, the rationale for recovery without the usual attributes of a securities fraud claim evaporates.  Here, there is no doubt that the alleged misrepresentations and omissions did not cause their Fund shares to decline in value, since the unique pricing rules applicable to open-end mutual funds already protected Plaintiffs from the possibility that they might purchase their shares at artificially inflated prices.  Thus, the rationale of the Securities Act, and the concerns that motivated Congress to pass it, simply are not present here, and Plaintiffs' claims should be dismissed.[14]

### 3.   PLAINTIFFS FAIL TO PLEAD CONTROL BY THE INDEPENDENT TRUSTEES (SECTION 15).

Plaintiffs allege that the Independent Trustees are liable under Section 15 as "control persons" for the alleged violations by others of Sections 11 and 12(a)(2):  "Each of the Individual Defendants was a control person of the Trust, the Manager, and/or the Distributor.  As a trustee . . . each of the Individual Defendants had the power to control the general affairs of the Trust, the Manager, and the Distributor." Compl. ¶ 92.  To state a prima-facie claim for control-person liability, a plaintiff must sufficiently plead "(1) a primary violation of federal securities law and (2) that the defendant exercised actual power or control over the primary violator." *Teamsters*

---

[14]  To be sure, the court in *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534 (N.D. Cal. 2009), recently concluded that misstatements about the riskiness of an open-end fund could lead to compensable damages under the Securities Act.  But that court's decision should not be followed here for two reasons.  First, the Court did not even mention, much less analyze, the plain language of Sections 11(e) or 12(b) or their legislative histories.  Instead, it erroneously relied exclusively on case law construing the broader loss-causation provision of Section 10(b) of the Exchange Act.  Thus, the *Schwab* court's analysis answers the wrong question.  Second, the alleged misrepresentations and omissions here are even more clearly unrelated to any losses than those at issue in *Schwab*, because they do not even relate to a purportedly concealed risk.  Instead, they relate to a compounding effect that even Plaintiffs concede is an intrinsic part of any inverse fund that seeks to track a benchmark on a daily basis. *See* Compl. ¶ 31.

1  *Local 617 Pension and Welfare Funds v. Apollo Grp.*, 690 F. Supp. 2d 959, 963 (D. Ariz. 2010)

2  (citation omitted); *Reese v. Malone*, No. C-08-1008, 2009 WL 506820, at *9 (W.D. Wash. Feb.

3  27, 2009).  Plaintiffs fail to allege the requisite control by the Independent Trustees.

4        As an initial matter, Plaintiffs' Section 15 claim against the Independent Trustees should

5  be dismissed for failure to state a claim for a primary violation of Section 11 or 12. *Osher v. JNI*

6  *Corp.*, 302 F. Supp. 2d 1145, 1167 (S.D. Cal. 2003) (citing *Heliotrope Gen., Inc. v. Ford Motor*

7  *Co.,* 189 F.3d 971, 978 (9th Cir. 1999)).

8        Additionally, Plaintiffs fail to allege the requisite control by the Independent Trustees.

9  While a handful of post-*Twombly* and *Iqbal* cases in this Circuit have decided control-person

10 liability claims, it appears that only *Apollo* has provided a meaningful discussion applying

11 *Twombly* and *Iqbal* to control-person liability claims.[15]  Even before *Twombly* and *Iqbal*, in order

12 to properly allege control, it was necessary that "[a] plaintiff must allege more than the

13 defendant's position . . . ." *New York City Emp. Ret. Sys. v. Berry*, 616 F. Supp. 2d 987, 1002

14 (N.D. Cal. 2009).[16]  *Apollo* noted that allegations, such as those here, that "argument(s) that

15 defendants were all officers and directors who 'signed' false financial statements, thus qualifying

16 them as control persons [are] tenuous at best." *Apollo*, 690 F. Supp. 2d at 980 (citation omitted).[17]

17       Thus, the *Apollo* court dismissed a control-person liability claim against one of the

18 defendants where the complaint alleged that she was a director and served on a special committee

---

19 [15]  *See In re Wells Fargo Mortgage-Backed Certificates Litig.*, No. C 09-01376, 2010 WL

20 1661534, at *9 (N.D. Cal. Apr. 22, 2010) (Section 15 claims dismissed where, "[a]side from the conclusory statement that the [defendants] 'exercise(d) substantial control over many parties . . .' plaintiffs have not established that the [defendants] had any sort of general 'power to direct or

21 cause the direction of the management and polices' . . . of the primary parties to the creation and issuance of the Certificates.") (citations omitted); *In re Cadence Design Sys., Inc. Sec. Litig.*, 692

22 F. Supp. 2d 1181, 1193–94 (N.D. Cal. 2010) (setting forth basic standard for control-person liability and finding plaintiffs' allegations sufficient where "[m]uch of the [complaint was]

23 directed at describing, with support from confidential witnesses, the Individual Defendants' roles within [the company].").

24 [16] *But cf. Charles Schwab*, 257 F.R.D. at 555 (pre-*Iqbal*) (citing a 2005 New York district court

25 opinion for the proposition that some courts have presumed board members exercised control where they are alleged to have signed the registration statements at issue).

26 [17]  Although in *Apollo*, the particular claim before the Court was for control-person liability under Section 20(a) of the Exchange Act, "the control person analysis does not differ between § 15 of

27 the Securities Act and § 20 of the Exchange Act . . . ." *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 694 F. Supp. 2d 1192, 1221 (W.D. Wash. 2009).

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO
- 11 -
Case No. 10 cv 01171 LHK
IND. TRUSTEES' NOT. OF MOT. & MOT. TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMO. OF PTS.
AND AUTH. ISO

1   charged with overseeing the company's stock-option practices. *Id.* at 978–79.  The absence of

2   "any allegations as to [her] *responsibilities* as an outside [] director . . . [made] it impossible to

3   discern whether [she] was responsible for controlling any aspect of [the alleged primary

4   violator's] management or policies." *Id.* at 978 (emphasis added); *see also Reese*, 2009 WL

5   506820, at *8 (complaint stating only that defendant was a director and served on committee

6   overseeing issues relevant to asserted claims did not adequately allege control-person liability

7   because "these allegations do not speak to any degree of control over the operations of the

8   corporation and certainly no involvement in its day-to-day activities").

9          In the case *sub judice*, Plaintiffs' allegations are even more conclusory than those alleged

10   in *Apollo*.  Plaintiffs state only that the Independent Trustees signed the Registration Statements,

11   *see* Compl. ¶¶ 14 and 17–22, and that they "had the power to control the general affairs of the

12   Trust, the Manager, and the Distributor." Compl. ¶ 92.  These "bare assertions" amount to

13   nothing more than "a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1950–

14   51.  They fail to " 'nudge plaintiffs' [control-person liability] claim . . . across the line from

15   conceivable to plausible.'" *Apollo*, 690 F. Supp. 2d at 977 (quoting *Twombly*, 550 U.S. at 570).

16   Consequently, Plaintiffs' Section 15 claim against the Independent Trustees should be

17   dismissed.[18]

18

19

20   ───────────────────

21   [18]   Furthermore, nowhere in their Complaint have Plaintiffs alleged that the Independent Trustees actually participated in the operation of the Fund.  The Independent Trustees recognize that a number of cases have determined that plaintiffs are not required to plead actual participation. *See*

22   *Reese*, 2009 WL 506820, at *9; *In re Cadence Design Sys.,* 692 F. Supp. 2d at 1194 (but much of complaint described officers' roles in the corporation).  However, the better-reasoned cases have

23   ruled that Plaintiffs *are* required to allege actual participation, and there has been no Supreme

24   Court decision to the contrary. *See Berry*, 616 F. Supp. 2d at 1002 ("There must be some showing of actual participation in the corporation's operation or some influence before the consequences

25   of control may be imposed.") (citation omitted).  Either way, Plaintiffs must, at the very least, include "allegations of [the alleged control persons'] participation in the day-to-day affairs of the

26   corporation and [their] power to control corporate actions." *Apollo*, 690 F. Supp. 2d at 971 (citation omitted).  Plaintiffs' Complaint contains no such allegations, and, therefore, the Section

27   15 claim should be dismissed.

28

## B.   **THIS COURT LACKS SUBJECT-MATTER JURISDICTION WHERE PLAINTIFFS LACK STANDING.**

### 1.   LEGAL STANDARD

Claims are subject to dismissal, under Federal Rule of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction.  "Standing 'pertain(s) to a federal court's subject-matter jurisdiction under Article III, ... (and therefore is) properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).'" *Visioneer, Inc. v. Keyscan, Inc.*, 626 F. Supp. 2d 1018, 1023 (N.D. Cal. 2009) (citation omitted).  "The requirement of standing . . . has a core component derived directly from the Constitution.  A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). "[E]ven named plaintiffs who represent a class must allege that they personally have been injured, not that injury has been suffered by other, unidentified members of a class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

Absent standing, this Court lacks jurisdiction to entertain these allegations and must dismiss them at the pleadings stage. *Faibish v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction . . . the only function remaining to the court is that of announcing the fact and dismissing the cause.") (citing *Ex parte McCardle,* 7 Wall. 506, 514 (1869)).[19]

---

[19]  Courts have rejected an approach that defers consideration of this issue until class certification and have not hesitated, in the securities class-action context, to dismiss—before class certification—those claims for which the named plaintiffs did not suffer personal injuries. *See In re Century Aluminum Co. Sec. Litig.*, No. C-09-1001, 2010 WL 1729426, at *12 (N.D. Cal. Apr. 27, 2010) (dismissing on the pleadings where "defendants have raised serious questions about the named plaintiffs' standing"); *In re Lehman Bros. Sec. and ERISA Litig.*, 684 F. Supp. 2d 485, 490–91 (S.D.N.Y. 2010) (dismissing claims, before class certification, pertaining to the 85 offerings in which named plaintiffs did not purchase securities); *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 532 (S.D.N.Y. 2008) (ruling that "[t]he standing question is antecedent to the class certification issue to the extent that a court can only certify a class for claims over which it has power" and dismissing claims based on offerings in which the named plaintiffs did not purchase securities); *Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398, 406 (S.D.N.Y. 2007) ("[a]t the pleading stage, the plaintiff bears the burden of clearly . . . alleg(ing) facts demonstrating that (it) is a proper party to invoke judicial resolution of the dispute.") (citations omitted); *In re Salomon*

1    Plaintiffs lack standing to bring any claim for which they have not, and cannot, allege a

2    personal injury.

3         **2.    PLAINTIFFS CANNOT ALLEGE ANY PURCHASES PURSUANT
           TO THE 2009 REGISTRATION STATEMENT AND PROSPECTUS
4          (SECTIONS 11 AND 12).**

5    Sections 11 and 12(a)(2) only permit claims regarding registration statements and

6    prospectuses "pursuant to" which plaintiffs purchased or acquired securities. 15 U.S.C. § 77k; 15

7    U.S.C. § 77*l*(a)(2); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983).

8    Plaintiffs allege untrue statements of material fact and/or omissions in the July 2007, July

9    2008, and July 2009 Registration Statements and Prospectuses. Compl. ¶ 36.  Plaintiffs allege that

10   they bring this action on behalf of all persons "who purchased or otherwise acquired shares . . .

11   pursuant or traceable to false and misleading Registration Statements and Prospectuses . . .

12   between March 19, 2007 and March 19, 2010 (the 'Class Period')."  Compl. ¶ 1.

13   Plaintiffs, though, admit that they only purchased or otherwise acquired shares between

14   March 20, 2008 and December 19, 2008.[20]  The most recent purchase predates the July 2009

15   Registration Statement and Prospectus, and therefore could not have been pursuant to that

16   registration statement and prospectus.

17   Plaintiffs—perhaps attempting to justify a class period through March 19, 2010—do

18   allege that they "purchased *and/or held* Fund shares from March 19, 2007 to March 19, 2010."

19   Motion to Appoint Rydex Litigation Group as Lead Plaintiff and to Approve Proposed Lead

20   Plaintiffs' Selection of Counsel, p. 2:10–11 (ECF 12) (emphasis added).  However, as the

21   Supreme Court has observed, the plain language of Sections 11 and 12(a)(2) requires a purchase;

22
     _____

23   *Smith Barney*, 441 F. Supp. 2d at 607 ("the Article III standing determination should precede that
     of class certification.  With regard to the sixty-eight funds of which Plaintiffs own no shares,
24   Plaintiffs do not have standing to assert any claims because Plaintiffs cannot satisfy the standing
     requirements.").

25   [20]  All of Rafton's purchases/acquisitions occurred between March 24, 2008 and December 19,
     2008. *See* Lewis Decl. (ECF 13-2).  One purchase is dated "7/10/2009," but this apparently is a
26   typographical error, as it would be misplaced in the otherwise chronological table.  All of Darst's
     purchases/acquisitions occurred between March 20, 2008 and November 20, 2008. *See* Lewis
27   Decl. (ECF 13-3).

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 14 -                                    Case No. 10 cv 01171 LHK

IND. TRUSTEES' NOT. OF MOT. & MOT. TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMO. OF PTS.
AND AUTH. ISO

merely holding or otherwise abstaining from transacting in the securities is insufficient.  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 736 (1975).

Plaintiffs are unable to allege facts that would establish standing to bring Sections 11 and 12(a)(2) claims for any false or misleading statement in the July 2009 Registration Statement and Prospectus.  Therefore, insofar as they pertain to purchases pursuant to the July 2009 Registration Statement and Prospectus, Plaintiffs' claims should be dismissed.

### 3.   PLAINTIFFS CANNOT ALLEGE ANY PURCHASES OF ADVISOR, INVESTOR, AND CLASS C SHARES (SECTIONS 11 AND 12).

A most basic premise of both Section 11 and Section 12(a)(2) claims is that only a person who has purchased or acquired a security may bring a cause of action regarding that security. *Id*.

Plaintiffs allege that the "Inverse Long Bond Fund sold four classes of shares, Advisor, Investor, A and C, under the ticker symbols RYJAX, RYJUX, RYAQX and RYJCX." Compl. ¶ 34.  Plaintiffs, though, have admitted that they only purchased shares with the ticker symbol RYAQX, *i.e.,* Class A shares.[21]

Plaintiffs are unable to allege facts that would establish standing to bring claims pursuant to Sections 11 and 12(a)(2) regarding the Advisor, Investor and C classes of shares of the Inverse Long Bond Fund.  Insofar as their claims pertain to these share classes, they should be dismissed.

### 4.   PLAINTIFFS CANNOT REMEDY THEIR LACK OF STANDING BY ADDING NEW NAMED PLAINTIFFS, BECAUSE THE STATUTE OF LIMITATIONS HAS RUN (SECTIONS 11 AND 12).

A plaintiff must file a Section 11 or 12(a)(2) claim within one year from the earlier of the dates on which she discovered or reasonably could have discovered the facts upon which the claim is based. 15 U.S.C. § 77m.

As of today, more than one year has passed since the last possible date a plaintiff could argue she discovered, or reasonably could have discovered, the facts underlying a claim in this suit.  *See supra* Sec. II.A.1.  Therefore, Plaintiffs cannot remedy the standing faults outlined above by now adding named plaintiffs who can allege personal injuries where Plaintiffs

---

[21]  *See* Lewis Decl. (ECF 13-2 and 13-3).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 15 -

Case No. 10 cv 01171 LHK
IND. TRUSTEES' NOT. OF MOT. & MOT. TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMO. OF PTS. AND AUTH. ISO

1  themselves cannot. *E.g., Pub. Emp. Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, No. 08-Civ-

2  10841, 2010 WL 2175875, at *3 (S.D.N.Y. Jun. 1, 2010) (holding that "because the named

3  plaintiffs only purchased securities in nineteen offerings, any claim based on the other sixty-five

4  offerings must be dismissed with prejudice. Nor will leave be granted for plaintiffs to add

5  additional, as yet unnamed plaintiffs who purchased certificates related to the additional sixty-five

6  offerings; this addition would at this point be futile, since plaintiffs themselves concede that the

7  one-year limitations period began to run at some point in 2008 (*i.e.*, more than a year ago) . . . .").

8  　　　　Because Plaintiffs lack standing to assert the noted claims, the Independent Trustees

9  request that the Court dismiss those claims with prejudice.

10  **III.    CONCLUSION**

11  　　　　For the foregoing reasons, the Independent Trustees respectfully request that the Court

12  grant the instant Motion in its entirety.

13

14  Dated:  October 8, 2010　　　　　　　　　　　SCHIFF HARDIN LLP

15

16  　　　　　　　　　　　　　　　　By:___/s/ Craig Bridwell_____

17  　　　　　　　　　　　　　　　　MICHAEL K. WOLENSKY (*pro hac vice*)
　　　　　　　　　　　　　　　　　C. CRAIG BRIDWELL (No. 246124)

18  　　　　　　　　　　　　　　　　One Market, Spear Street Tower
　　　　　　　　　　　　　　　　　Thirty-Second Floor

19  　　　　　　　　　　　　　　　　San Francisco, CA  94105
　　　　　　　　　　　　　　　　　Telephone:    (415) 901-8700

20  　　　　　　　　　　　　　　　　Facsimile:    (415) 901-8701

21  　　　　　　　　　　　　　　　　Attorneys for Defendants

22  　　　　　　　　　　　　　　　　COREY A. COLEHOUR, J. KENNETH
　　　　　　　　　　　　　　　　　DALTON, JOHN O. DEMARET, WERNER

23  　　　　　　　　　　　　　　　　E. KELLER, THOMAS F. LYDON,
　　　　　　　　　　　　　　　　　PATRICK T. MCCARVILLE AND ROGER

24  　　　　　　　　　　　　　　　　SOMERS

25  30948-0001
CH2\9156693.2

26

27

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 16 -                                        Case No. 10 cv 01171 LHK
IND. TRUSTEES' NOT. OF MOT. & MOT. TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMO. OF PTS.
AND AUTH. ISO

**PROOF OF SERVICE**

I, the undersigned, declare:

I am a resident of the State of California, employed in San Francisco County, California.  I am over the age of eighteen (18) years, and not a party to the within action.  I am an employee of Schiff Hardin LLP, and my business address is One Market, Spear Street Tower, Thirty Second Floor, San Francisco, California 94105.

On the date below, I caused to be served the following document(s):

**INDEPENDENT TRUSTEES' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

on the parties involved addressed as follows:

☒   BY E-FILING:  By electronically serving the document(s) listed above via CM/ECF on the recipients designed on the Transaction Receipt located on the CM/ECF website.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 8, 2010, at San Francisco, California.

*/s/ Dawn M. Bierman*
Dawn M. Bierman

SF\9404771.1

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1