MATTHEW L. LARRABEE (No. 97147)
matthew.larrabee@dechert.com
DAVID A. KOTLER (*pro hac vice*)
david.kotler@dechert.com
MURIEL M. KOROL (No. 261909)
muriel.korol@dechert.com
DECHERT LLP
One Maritime Plaza, Suite 2300
San Francisco, California 94111-3513
Telephone: 415.262.4500
Facsimile: 415.262.4555

Counsel for Defendants
RYDEX SERIES FUNDS; PADCO
ADVISORS INC. d/b/a RYDEX
INVESTMENTS, INC.; RYDEX
DISTRIBUTORS, INC.; NICK BONOS;
MICHAEL P. BYRUM; RICHARD M.
GOLDMAN; and CARL G. VERBONCOEUR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES RAFTON, TRUSTEE OF THE JAMES AND CYNTHIA RAFTON TRUST,<br>        Plaintiff,<br>v.<br>RYDEX SERIES FUNDS; PADCO ADVISORS INC. d/b/a RYDEX INVESTMENTS, INC.; RYDEX DISTRIBUTORS, INC.; RICHARD M. GOLDMAN; CARL G. VERBONCOEUR; JOHN O. DEMARET; NICK BONOS; MICHAEL P. BYRUM; COREY A. COLEHOUR; J. KENNETH DALTON; WERNER E. KELLER; THOMAS F. LYDON; PATRICK T. MCCARVILLE; ROGER SOMERS; and DOES 1 through 25, inclusive,<br>        Defendants. | Case No. 10cv1171 LHK<br>Action filed: March 19, 2010<br><br>**THE RYDEX DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: December 16, 2010<br>Time: 1:30 p.m.<br>Dept: Courtroom 4, 5th Floor<br>Judge: Hon. Lucy H. Koh |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I. PLAINTIFFS HAVE FAILED TO IDENTIFY ANY MISSTATEMENT OR OMISSION ........................................................................................................................ 2

    A. Plaintiffs Cannot Identify Any Prospectus Representation That States, Or Even Hints, That The Fund's Performance Would Match The Inverse Of The Long Bond's Price Movements Over Time. ...................................................... 2

    B. Section 11 Does Not Require The Fund To Have Stated That "The Fund Was Suitable Only For Short-Term Investors Who Actively Manage Their Portfolios On A Daily Basis" ................................................................................. 7

        1. Alleged Omissions About The Suitability Of The Fund Are Not Actionable Under Section 11. .................................................................... 7

        2. Plaintiffs' Proposed Additional Disclosure Is Not Needed To Clarify The Fund's Daily Goal Or The Impact Of Compounding.............. 8

            a. The Prospectuses Never Describe The Fund As "Appropriate" For "Long-Term Investors" .................................... 9

            b. As The Fund's Disclosures Explain, The Fund And Its Fee Structure Were Designed To Accommodate, Not Punish, Short-Term Trading ...................................................................... 10

II. PLAINTIFFS CANNOT BOOTSTRAP A CLAIM THAT THE 2007 AND 2008 PROSPECTUSES WERE MISLEADING BY RELYING ON ADDITIONAL DISCLOSURES MADE IN 2009 ................................................................................... 13

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

Page

**CASES**

*Benzon v. Morgan Stanley Distrib., Inc.*,
 420 F.3d 598 (6th Cir. 2005) .................................................................................................. 5, 11

*Brody v. Transitional Hosps. Corp.*,
 280 F.3d 997 (9th Cir. 2002) ......................................................................................................... 8

*Greenapple v. Detroit Edison Co.*,
 618 F.2d 198 (2d Cir. 1980) ........................................................................................................ 13

*In re Alliance N. Am. Gov't Income Trust, Inc. Sec. Litig.*,
 1996 WL 551732 (S.D.N.Y. Sept. 27, 1996) ................................................................................ 7

*In re Apple Computer Sec. Litig.*,
 886 F.2d 1109 (9th Cir. 1989) ....................................................................................................... 7

*In re Convergent Techs. Sec. Litig.*,
 948 F.2d 507 (9th Cir. 1991) ......................................................................................................... 5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 618 F. Supp. 2d 311 (S.D.N.Y. 2009) ......................................................................................... 13

*In re Infonet Servs. Corp. Secs. Litig.*,
 310 F. Supp. 2d 1080 (C.D. Cal. 2003) ........................................................................................ 9

*In re Lyondell Petrochemical Co. Sec. Litig.*,
 984 F.2d 1050 (9th Cir. 1993) ....................................................................................................... 5

*In re Stac Elecs. Sec. Litig.*,
 89 F.3d 1399 (9th Cir. 1996) ................................................................................................ 4, 7, 9

*In re Synchronoss Sec. Litig.*,
 705 F. Supp. 2d 367 (D.N.J. 2010) ............................................................................................... 8

*Kairalla v. Advanced Med. Optics, Inc.*,
 No. 07-05569, 2008 WL 2879087 (C.D. Cal. June 6, 2008) .................................................... 8, 9

*Krouner v. Am. Heritage Fund, Inc.*,
 899 F. Supp. 142 (S.D.N.Y. 1995) .............................................................................................. 14

*Malone v. Microdyne Corp.*,
 26 F.3d 471 (4th Cir. 1994) ......................................................................................................... 14

*Miller v. Thane Int'l, Inc.*,
 519 F.3d 879 (9th Cir. 2008) ......................................................................................................... 7

*Rombach v. Chang*,
 355 F.3d 164 (2d Cir. 2004) .......................................................................................................... 5

*Watts v. Enhanced Recovery Corp.*,
   No. 10-02606, 2010 WL 4117452 (N.D. Cal. Oct. 19, 2010) ................................................ 10

**RULES/ REGULATORY AUTHORITIES**

Fed. R. of Evid. 407 ........................................................................................................... 13-14

Regulatory Notice 09-31, *Non-Traditional ETFs: FINRA Reminds*
   *Firms of Sales Practice Obligations Relating to Leveraged*
   *and Inverse Exchange-Traded Funds* (June 2009) .............................................................. 5,7

U.S. Securities and Exchange Commission, *Leveraged and Inverse ETFs: Specialized*
   *Products with Extra Risks for Buy-and-Hold Investors* (Aug. 18, 2009) ........................ 5-7, 13

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition to the Rydex Defendants' Motion to Dismiss (the "Rydex MTD") crystallizes the fatal flaw in Plaintiffs' case: Plaintiffs cannot identify any alleged misrepresentation or omission that is not directly refuted by the Inverse Government Long Bond Strategy Fund's (the "Fund") registration statements taken as a whole. The securities laws, and fundamental notions of fairness and justice, prevent investors from pursuing Securities Act claims unless the "total mix" of information supplied to them is materially misleading. Plaintiffs' allegations here fall so far short of this standard that their Opposition nowhere attempts to explain how an investor could have been misled by a fair reading of all of the actual Fund disclosures. Instead, Plaintiffs ignore most of the relevant disclosures in favor of selected snippets taken out of context and mischaracterized. As a matter of settled law, this approach is untenable and cannot state a claim.

Plaintiffs' Opposition also reflects significant tactical retreats in a transparent effort to stave off dismissal. Specifically, Plaintiffs built their Complaint on allegations that the Fund's public disclosures misled investors into believing that the Fund was a "simple directional investment" whose returns would correlate with the inverse of the cumulative price movements of the 30-Year U.S. Treasury Bond ("Long Bond") *over time*. But Plaintiffs do not point to any Fund disclosure that actually describes the Fund this way, because there is none. Rather, as the Rydex MTD demonstrates, the Fund's disclosures clearly and repeatedly explain that the Fund seeks to match the inverse of the price movement of the Long Bond on a *daily basis*, not over time; that the Fund's returns may diverge significantly *over time* from the Long Bond's cumulative price movement; and that, *over time,* the Fund historically had in fact deviated significantly from the inverse of the Long Bond's cumulative price movement.

Plaintiffs have thus abandoned their Complaint allegations in favor of two different theories advanced for the first time in their Opposition. First, Plaintiffs rely on an "investor profile" disclosure that says *nothing* about whether the Fund is a "short-term" or "long-term" investment. Moreover, this single sentence in the prospectus is surrounded by disclosures that emphasize (i) the "daily" nature of the Fund, (ii) that the Fund may not correlate with the Long

1

Bond's cumulative price movement over time, and (iii) the likely effect of compounding on the Fund's performance over time compared to the Long Bond's cumulative price movement.  When properly read in context, this "investor profile" disclosure is therefore perfectly consistent with the Fund's clear and repeated disclosures that the Fund would be managed to ensure that its investments performed inversely to the Long Bond's daily price movement--and nothing more.

Second, Plaintiffs now argue that what they call the "structure" of the Fund, *i.e.*, the fees paid by Fund investors, implies that the Fund is "a long term investment vehicle".  Opp at 1.  But, even aside from the fact that Plaintiffs never pleaded this theory in their Complaint, it is based on a stark mischaracterization of how the Fund's fees actually work.  As the Fund's disclosures made clear in long passages that Plaintiffs ignore, the overall structure of the fees charged is deliberately designed to accommodate, rather than punish, short-term trading.  In the words of the prospectuses, the Fund is "designed and operated to accommodate frequent trading."

In the end, despite multiple attempts, Plaintiffs have failed to articulate any viable misrepresentation or omission claim under Sections 11 or 12(a)(2).  They have failed because there is nothing misleading about the Fund's disclosures, which--when read objectively and in their entirety--fairly apprise investors of the daily objective of the Fund and the inherent implications of pursuing that objective, including the effects of "compounding" on Fund performance over time.  Nothing Plaintiffs can do or say will change that fact or create a viable claim under the Securities Act.  Accordingly, Plaintiffs' claims should be dismissed with prejudice.

**ARGUMENT**

**I.    PLAINTIFFS HAVE FAILED TO IDENTIFY ANY MISSTATEMENT OR OMISSION**

   **A.    Plaintiffs Cannot Identify Any Prospectus Representation That States, Or Even Hints, That The Fund's Performance Would Match The Inverse Of The Long Bond's Price Movements Over Time.**

The crux of Plaintiffs' lawsuit, as set forth in their Complaint, is that the Fund's public disclosures allegedly misled investors into believing that the Fund's returns would correlate with the cumulative price movements of the Long Treasury Bond *over time*.  See FAC ¶¶38, 41, 46-47.

This assertion is categorically false. As set forth in the Rydex MTD, Plaintiffs' core assertion cannot withstand even the slightest scrutiny in the light of the Fund's actual disclosures. Specifically, as the Fund disclosed in 2007, in 2008 and again in 2009:

- Rydex's benchmark funds, including the Fund, "seek to provide investment results that *either* match the performance of a specific benchmark on a daily basis *or* correlate to the performance of a specific benchmark over time." 2007 Prosp. at 65 (emphasis added); 2008 Prosp. at 79 (same); 2009 Prosp. at 79 (same).

- "Unlike a traditional index fund, the Fund's objective is to perform, *on a daily basis*, exactly opposite its benchmark. . . ." 2007 Prosp. at 16 (emphasis added); *accord* 2008 Prosp. at 28; 2009 Prosp. at 25.

- "The [Fund] seeks to provide total returns that inversely correlate to the price movements of a benchmark. . . . The Fund's current benchmark is the inverse of the *daily price movement* of the Long Treasury Bond." 2007 Prosp. at 16 (emphasis added); *accord* 2008 Prosp. at 28; 2009 Prosp. at 25.

- "If the Fund meets its objective, the value of the Fund's shares will increase on a *daily basis* when the price of the Long Treasury Bond decreases." 2007 Prosp. at 16 (emphasis added); 2008 Prosp. at 28 (same); 2009 Prosp. at 25 (same).

- "When the price of the Long Treasury Bond increases, however, the value of the Fund's shares should decrease on a *daily basis* by an inversely proportionate amount[.]" 2007 Prosp. at 16 (emphasis added); 2008 Prosp. at 28 (same); 2009 Prosp. at 25 (same).

- "[I]f the price of the Long Treasury Bond increases by 2%, the value of the Fund's shares should go down by 2% *on that day*." 2007 Prosp. at 16 (emphasis added); 2008 Prosp. at 28 (same); 2009 Prosp. at 25 (same).

- The Fund faces "Tracking Error Risk," which means that, because the Fund "is tracking the performance of its benchmark on a *daily basis*, mathematical compounding may prevent a Fund from correlating with the monthly, quarterly, annual or other period performance of its benchmark." 2007 Prosp. at 37 (emphasis added); 2008 Prosp. at 50 (same); 2009 Prosp. at 41 (same).

- "It is important to understand the effects of compounding when investing *in any mutual fund*[.]" 2007 Prosp. at 67 (emphasis added); 2008 Prosp. at 80 (same); 2009 Prosp. at 80 (same).

- "[I]t is *essential* to understand the effect of mathematical compounding on [the Fund's] returns." 2007 AR at 3 (emphasis added); 2008 AR at 3 (same); 2009 AR at 4 (same); 2007 SAR at 3 (same); 2008 SAR at 3 (same); 2009 SAR at 4 (same).

- "[P]eriods of high volatility in an underlying index will also cause the effects of compounding to be more pronounced[.]" 2007 AR at 3; 2008 AR at 3; 2009 AR at 4; 2007 SAR at 3; 2008 SAR at 3; 2009 SAR at 4.

- "*[O]ver time*, the cumulative percentage increase or decrease in the net asset value of a fund *may diverge significantly* from the cumulative percentage increase or decrease in the multiple of the return of the index underlying a fund's benchmark *due to the compounding effect* of losses and gains on the returns of the fund." 2007 Prosp. at 67

(emphasis added); 2008 Prosp. at 80 (same); 2009 Prosp. at 80 (same).[1] Moreover, the Fund also disclosed its historical returns in easy to understand charts, which demonstrate that the Fund's cumulative returns over time did in fact "diverge significantly" from the inverse of the cumulative price movement of the Long Bond. *See* 2007 AR at 33; 2008 AR at 33; 2009 AR at 33; *see also* Rydex MTD at 7-8. These disclosures alone are dispositive of the very foundation of this lawsuit, and nowhere in their opposition do Plaintiffs even try to explain to the Court how their case can be reconciled with this "total mix" of investor information. *See, e.g., In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1408 (9th Cir. 1996).

Instead, Plaintiffs take misguided rifle shots at individual pieces of the disclosures; as explained below, none of these efforts is factually or legally well grounded and each can be readily dismissed:

*First*, Plaintiffs contend that the prospectuses' repeated references to the "daily" nature of the Fund are irrelevant because investors would not understand that there is a distinction between "daily" funds and funds that seek to correlate with a benchmark over time. *See* Opp. at 20-21. But the prospectuses make this distinction crystal clear to investors by explaining that the Rydex benchmark funds, including the Fund, "seek to provide investment results that ***either*** match the performance of a specific benchmark on a daily basis ***or*** correlate to the performance of a specific benchmark over time." 2007 Prosp. at 65 (emphasis added); 2008 Prosp. at 79 (same); 2009 Prosp. at 79 (same). Any reasonable investor would understand that the Fund has a daily goal and therefore does *not* "seek to provide investment results that . . . correlate to the performance of a specific benchmark over time". *Id.*

*Second*, Plaintiffs contend that the "tracking error" risk disclosure--which tells investors directly that, because the Fund "is tracking the performance of its benchmark on a ***daily basis***,

---

[1] The Rydex Defendants apologize for the inadvertent omission of an ellipsis from this quote on page 21 of the Rydex MTD. Although Plaintiffs attempt to use this error to deflect attention from the deficiencies of their Complaint (*see* Opp. at 22-23), they fail to acknowledge that (i) the Rydex Defendants provided the relevant portions of each of the Fund's prospectuses to the Court, (ii) on page 7 of the Rydex MTD, this entire disclosure is fully quoted, and (iii) on page 17 of the Rydex MTD, this disclosure is properly quoted with an ellipsis. In any event, as re-confirmed herein, this disclosure is undoubtedly one that the "sophisticated" Plaintiffs and the Fund's other "reasonable investors" (*see* FAC ¶¶37-38) should have understood to pertain to this Fund.

mathematical compounding may prevent a Fund from correlating with the monthly, quarterly, annual or other period performance of its benchmark" (2007 Prosp. at 37 (emphasis added); 2008 Prosp. at 50 (same); 2009 Prosp. at 41(same))--is inadequate because it states that compounding "may" prevent the Fund from correlating with its benchmark over time, rather than "shall" or "will" prevent correlation over time. *See* Opp. at 21. Plaintiffs' argument ignores the fact that both the FINRA Broker Notice and SEC Investor Notice use the very same conditional language. *See* Rydex MTD at 20; *see generally* Regulatory Notice 09-31, *Non-Traditional ETFs: FINRA Reminds Firms of Sales Practice Obligations Relating to Leveraged and Inverse Exchange-Traded Funds* (June 2009), Rydex MTD, Korol Decl., Ex. K; U.S. Securities and Exchange Commission, *Leveraged and Inverse ETFs: Specialized Products with Extra Risks for Buy-and-Hold Investors* (Aug. 18, 2009), Rydex MTD, Korol Decl., Ex. L. Plaintiffs do not and cannot explain how the prospectuses could have been misleading when they use precisely the same language that FINRA and the SEC used.[2] Moreover, courts routinely reject this type of semantic quibbling. Rydex MTD at 19-20 (citing cases); *see also Benzon v. Morgan Stanley Distrib., Inc.*, 420 F.3d 598, 606, 608 (6th Cir. 2005).[3]

*Third*, Plaintiffs contend that the prospectus disclosure labeled "Understanding Compounding & The Effect Of Leverage" is inadequate because this disclosure purportedly "dealt solely with leverage." Opp. at 22.[4] But the very first line of the disclosure explains to

---

[2] By the same token, although Plaintiffs criticize the Fund's "Tracking Error" disclosure for failing to explain how large an effect compounding may have on a fund's performance over time (Opp. at 22), Plaintiffs fail to mention that neither the SEC Investor Notice nor the FINRA Broker Notice contains such an explanation.

[3] Plaintiffs do not even mention, much less attempt to distinguish, most of these cases, other than observing that a few of them involved Exchange Act claims. *See* Opp. at 21 n.7. This is a distinction without a difference, however, because it is well settled that the "threshold requirement [of a material misrepresentation or omission] is identical" for Exchange Act and Securities Act cases. *E.g.*, *In re Lyondell Petrochemical Co. Sec. Litig.*, 984 F.2d 1050, 1052 (9th Cir. 1993). Furthermore, neither of the cases that Plaintiffs cite in support of their argument on this point--*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) and *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991)--even addresses the question of whether a disclosure is misleading because it uses the word "may" rather than the word "shall". Moreover, both decisions hold that the statements at issue were *not* materially misleading. *See In re Convergent*, 948 F.2d at 517; *Rombach*, 355 F.3d at 175, 178.

[4] Plaintiffs also imply that this disclosure is somehow entitled to less consideration because it is contained in an omnibus prospectus and is "40 pages removed" from the discussion of the Fund's risks. Opp. at 5, 6 n.4. Plaintiffs' suggestion is a legal non-starter; as explained in the Rydex

1 investors that "[i]t is important to understand the effects of compounding when investing *in any mutual fund*[.]" 2007 Prosp. at 67 (emphasis added); 2008 Prosp. at 80 (same); 2009 Prosp. at 80 (same). And the first example in this disclosure demonstrates how compounding affects a non-leveraged fund. 2007 Prosp. at 67; 2008 Prosp. at 80; 2009 Prosp. at 80. The truth is that compounding has some effect on the performance of all funds--leveraged or non-leveraged, inverse or non-inverse. For that very reason, and because Rydex offers and describes both its leveraged and non-leveraged inverse and non-inverse funds in combined prospectuses, those prospectuses warn that the "examples" used--including the example of a non-leveraged fund-- "demonstrate that *over time*, the cumulative percentage increase or decrease in the net asset value of a Fund *may diverge significantly* from the cumulative percentage increase or decrease in the multiple of the return of the index underlying a fund's benchmark *due to the compounding effect* of losses and gains on the returns of the fund." 2007 Prosp. at 67 (emphasis added); 2008 Prosp. at 80 (same); 2009 Prosp. at 80 (same).[5] Notably, the SEC Investor Notice undeniably applies to both leveraged and unleveraged inverse ETFs--Plaintiffs nowhere argue otherwise--yet it uses only an example of a leveraged ETF to illustrate the effects of compounding. Rydex MTD, Korol Decl., Ex. L at 2.

*Fourth*, while not disputing that the Fund's historical return information demonstrates to investors that the Fund's cumulative returns deviated from the Long Bond's cumulative price movement over time, Plaintiffs ask the Court to ignore this information because it is contained in shareholder reports as opposed to the prospectus. *See* Opp. at 24. Yet Plaintiffs do not and cannot dispute that these reports were (i) incorporated by reference in the registration statements, (ii) sent to the Fund's investors, and (iii) available on the SEC website. *See* Rydex MTD at 6, 21; Opp. at 24. Legally, there is *no* support for the proposition that these annual and semi-annual reports to shareholders are not part of the "total mix" of Fund information that courts must

---

MTD (and again ignored by Plaintiffs), Plaintiffs cannot ignore relevant parts of a prospectus because they allege that the prospectus is "long and tedious" or because they disagree with its "textual organization". *See* Rydex MTD at 14 (citing cases).

[5] Plaintiffs' Opposition also ignores the fact that a substantively similar disclosure, under the heading "A Brief Note On Compounding Of Returns," was included on pages 3 or 4 of reports sent to shareholders six times during the putative class period. *See* Rydex MTD at 6, 21.

consider in assessing the sufficiency of a Section 11/12(a)(2) claim. *In re Stac Elecs. Sec. Litig.*, 89 F.3d at 1408 (affirming the dismissal of Securities Act claims); *see also In re Alliance N. Am. Gov't Income Trust, Inc. Sec. Litig.*, 1996 WL 551732, at *5 (S.D.N.Y. Sept. 27, 1996) (relying on shareholder reports in addition to disclosures within prospectuses to dismiss Securities Act claims).[6] Moreover, Plaintiffs own brief elsewhere relies on a disclosure (regarding the Fund's intended performance in a rising interest rate environment) set forth in these same shareholder reports. *See* Opp. at 2, 16.[7]

### B. Section 11 Does Not Require The Fund To Have Stated That "The Fund Was Suitable Only For Short-Term Investors Who Actively Manage Their Portfolios On A Daily Basis"

Unable to proceed on their theory that the Fund was a "simple directional investment" that promised to correlate its returns with the inverse of the returns on the Long Treasury Bond over time, Plaintiffs' Opposition retreats to what is essentially a suitability theory. Plaintiffs now premise their lawsuit on the assertion that the Funds' prospectuses were misleading because they did not state expressly that "the Fund was suitable only for short-term investors who actively manage their portfolios on a daily basis". Opp. at 17. This claim fails for several independently dispositive reasons.

#### 1. Alleged Omissions About The Suitability Of The Fund Are Not Actionable Under Section 11.

Although Plaintiffs' Opposition is based on the notion that the Rydex Defendants were obligated to opine on the types of investors for whom the Fund is suitable, Plaintiffs completely

---

[6] Neither of the cases that Plaintiffs cite even remotely undermines the importance of an expressly-incorporated and shareholder-received annual report. *In re Apple Computer Sec. Litig.*, 886 F.2d 1109 (9th Cir. 1989) concerned whether press statements could correct a corporate officer's allegedly misleading statement, and *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 887 (9th Cir. 2008) addressed whether shareholders were required to "seek out prior versions . . . or otherwise familiarize themselves with the 'drafting history' of a prospectus."

[7] Plaintiffs also contend that it is "virtually a mathematical certainty" that the Fund "will lose money over the long term". Opp. at 4. This is both untrue and irrelevant. First, as demonstrated in the Rydex MTD, compounding can either benefit or harm Fund performance over time, depending on the path and volatility of the daily price changes in the Long Treasury Bond. Second, the key point is that the Fund appropriately informed investors of the potential impact of compounding so that the investors could devise trading strategies that are appropriate for their own circumstances, as the Notices observed. Rydex MTD, Korol Decl., Ex. K at 4; *id.*, Ex. L at 3.

ignore all of the authority set forth in the Rydex MTD (*see* pp. 23-24) explaining why there is no such legal duty. This unanimous authority, and Plaintiffs' silence in response, confirms that Plaintiffs cannot base their case on a purported duty to opine on the suitability of the Fund for investors.

### 2. Plaintiffs' Proposed Additional Disclosure Is Not Needed To Clarify The Fund's Daily Goal Or The Impact Of Compounding.

Recognizing that the law does not impose a duty on the Defendants to opine about suitability, Plaintiffs try to argue that the Fund created such a duty itself. But Plaintiffs' argument ignores the legal standard defining when existing disclosures can give rise to Section 11 liability for an alleged omission. Any such alleged omission, including the Rydex Defendants' decision not to opine about suitability in the manner suggested by Plaintiffs, is actionable *only* if the disclosures that are made "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *see* Rydex MTD at 23. "Consequently, it is not enough to allege that the statement is incomplete; rather, the plaintiff must state facts showing that, due to its incompleteness, the statement *affirmatively led the plaintiff in a wrong direction* (rather than merely omitted to discuss certain matters)". *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 419-420 (D.N.J. 2010) (emphasis in original); *see also Kairalla v. Advanced Med. Optics, Inc.*, No. 07-05569, 2008 WL 2879087, at *4 (C.D. Cal. June 6, 2008) (holding that the failure to disclose an association between a contact lens solution and a type of eye infection was not actionable because the allegedly misleading statements "create no affirmative impression, either way, regarding the association").

In short, to state a Section 11 claim based on this alleged omission, Plaintiffs must show that the Fund's disclosures "affirmatively created" the impression that the Fund *was* appropriate for long-term investors who do not actively manage their portfolios. Plaintiffs neither address nor meet this standard.

### a. The Prospectuses Never Describe The Fund As "Appropriate" For "Long-Term Investors"

Plaintiffs repeatedly assert that Defendants "describe[d]" the Fund as "a long-term investment vehicle" or as an investment that was "appropriate" for "long-term investors." Opp. at 1, 15; *see generally id.* at 16-18. These repeated assertions are false; no disclosure actually describes the Fund this way. So instead, Plaintiffs rely heavily on the "investor profile" disclosure, which states that the Fund may be appropriate for "[i]nvestors who expect the value of the Long Treasury Bond to go down and want investment gains when it does so." 2007 Prosp. at 16; 2008 Prosp. at 28; 2009 Prosp. at 25. Specifically, Plaintiffs assert that this one sentence renders the entire prospectus materially misleading because it does not include the phrases "on that day" or "daily basis." *See* Opp. at 16.

Plaintiffs' argument fails as a matter of law. As even Plaintiffs acknowledge (Opp. at 8), a prospectus must be read "as a whole" to determine whether it affirmatively creates a misleading impression. *E.g., In re Infonet Servs. Corp. Secs. Litig.,* 310 F. Supp. 2d 1080, 1092 (C.D. Cal. 2003) (*citing In re Stac Elecs.*, 89 F.3d at 1408). Here, the prospectus "as a whole" does not come close to affirmatively suggesting to investors that the Fund is generally suitable as a "long-term investment vehicle".

To begin with, the "investor profile" itself says *nothing at all* about the long- or short-term nature of the Fund. It certainly does not "affirmatively create" the impression that the Fund *is* appropriate for "long-term investors" or that it *is* a "long-term investment vehicle." *See, e.g., Kairalla*, 2008 WL 2879087, at *3.[8]

Moreover, the investor profile cannot be wrenched from its context. That context includes the lengthy surrounding disclosures (*see supra* pp. 3-4) describing (i) the fund's daily investment objective and contrasting it to longer term objectives; (ii) the effects of compounding that might

---

[8] Plaintiffs also extract the following sentence from the Fund's Annual Report: "[A]n investor benefits from the Rydex Inverse Government Long Bond Fund in a rising interest rate environment." Opp. at 16. Much like the "investor profile" disclosure, this statement simply does not "describe" the Fund as "appropriate" for a "long-term investor," and certainly does not come close to affirmatively creating that impression when read in context.

1 cause the Fund to deviate from the benchmark over time; (iii) the importance to all fund investors
2 of understanding compounding; and (iv) the Fund's historical deviation from the benchmark over
3 time. Significantly, these are all of the disclosures that actually address the time horizon of the
4 Fund, and none of them supports Plaintiffs' assertions.

In addition, the very same page that contains the investor profile warns investors that the Fund is subject to "Active Trading Risk," which includes the potential consequences of having a "significant portion" of the Fund's investors engaging in "frequent trading of Fund shares." 2007 Prosp. at 16; 2008 Prosp. at 28-29; 2009 Prosp. at 25. Indeed, the prospectuses go even further and explain that the Fund is "designed and operated to accommodate frequent trading[.]" 2007 Prosp. at 90, Kotler Decl., Ex. A; 2008 Prosp. at 107, Kotler Decl., Ex. B; 2009 Prosp. at 95, Kotler Decl., Ex. C.

Thus, once the prospectuses are properly read as a whole, it is clear that that all Plaintiffs have done is pull one sentence from the prospectuses out of context, mischaracterize it, and then assert that additional disclosures are necessary to correct their own mischaracterization. This is precisely the type of untenable allegation that this Court and the Ninth Circuit routinely reject as failing to state a viable Section 11 claim. *See* Rydex MTD at 18-19 (collecting cases).

    **b. As The Fund's Disclosures Explain, The Fund And Its Fee Structure Were Designed To Accommodate, Not Punish, Short-Term Trading**

Plaintiffs fare no better by arguing that the Fund's fee structure somehow affirmatively created the impression that the Fund was intended to be a "long-term investment vehicle." Opp. at 1. First, this theory was never pleaded in the Complaint. *See Watts v. Enhanced Recovery Corp.*, No. 10-02606, 2010 WL 4117452, at *3 (N.D. Cal. Oct. 19, 2010) (holding that a motion to dismiss opposition may not rely on facts not pleaded in the complaint). Instead, the Complaint alleges that the prospectuses' inclusion of hypothetical examples regarding the fees that an investor would pay over 1-year, 3-year, 5-year, and 10-year periods misleadingly "impl[ied] that the Fund was an appropriate vehicle for long-term investing." FAC ¶41. But as the Rydex MTD explained, the Fund was required by law to make these disclosures, so as a matter of law they

cannot be deemed to be misleading. *See* Rydex MTD at 18.[9]

Unable to dispute this legal defense, Plaintiffs' Opposition claims instead that the amount of the fees themselves--rather than the Fund's discussion of them--somehow violates the securities laws. *See, e.g.,* Opp. at 18. Even if it had been pleaded, this new allegation would fail to state a claim because Plaintiffs provide the Court with only a partial--and grossly misleading-- description of the Fund's fees.[10] When the Fund's entire fee structure is considered, it is crystal clear that the Fund was deliberately structured to facilitate, rather than discourage, short-term trading.

As the prospectuses explain, "[u]nlike most mutual funds," once investors purchase shares in one Rydex fund and pay the associated fees,[11] they are entitled to transfer their investment into other Rydex funds--including the Fund--an unlimited number of times *at no cost*:

> Unlike most mutual funds, the Funds offer ***unlimited exchange privileges with no minimum holding periods or transaction fees***. An exchange is when you sell shares of one Rydex Fund and use the proceeds from that sale to purchase shares of another Rydex Fund.

2007 Prospectus at 86 (emphasis added); 2008 Prosp. at 102 (same); 2009 Prosp. at 92 (same). Because these exchange privileges require "no minimum holding periods," a Rydex investor could, for example, trade in and out of the Fund on a daily basis at no cost by buying Fund shares one day, transferring his investment into certain other Rydex funds (including a money market fund) the following day, and then repeating this process on an unlimited number of days. Thus, Rydex's fee structure--unlike that of most other mutual funds--was designed to accommodate precisely the type of short-term trading that Plaintiffs wrongly claim is "entirely uneconomical"

---

[9] The Fund also was obligated to include the historical return information that Plaintiffs recite in their Complaint. *See* Rydex MTD at 18. That may be why Plaintiffs essentially have abandoned any claim based on the Fund's disclosure of its historical returns.

[10] The Securities Act regulates the Fund's disclosures; it is not a vehicle for complaining that the Fund's fully-disclosed fees allegedly were too high. *See Benzon*, 420 F.3d at 609 (rejecting an attempt to "shoehorn" a claim based on the purported illegality of selling a class of mutual fund shares into "a disclosure violations argument").

[11] The Fund is part of the Rydex family of funds. Consistent with industry practice, to compensate brokers for introducing investors to the Rydex family of funds, investors are charged a fee on their initial purchase of shares in one of the Rydex funds.

with respect to the Fund. Opp. at 16.[12]

Indeed, the prospectuses explain that frequent, short-term trading in and out of the Fund could adversely impact the Fund's investors. Specifically, under the heading, "FREQUENT PURCHASES AND REDEMPTIONS OF FUND SHARES," the prospectuses state:

> ***Because the Funds are designed and operated to accommodate frequent trading by shareholders and, unlike most mutual funds, offer unlimited exchange privileges with no minimum holding periods or transaction fees, the Funds' Board of Trustees has not adopted policies and procedures designed to prevent market timing or to monitor for frequent purchases and redemptions of Fund shares.*** A significant portion of the assets of the Funds come from investors who take part in certain strategic and tactical asset allocation programs. ***The Funds anticipate that investors who take part in these programs may frequently redeem or exchange shares of the Funds***, which may cause the Funds to experience high portfolio turnover. Higher portfolio turnover may result in the Funds paying higher levels of transaction costs and generating greater tax liabilities for shareholders. In addition, large movements of assets into and out of the Funds may negatively impact a Fund's ability to achieve its investment objective.

2007 Prospectus at 90-91 (emphasis added); 2008 Prosp. at 107 (same); 2009 Prosp. at 95 (same). Plaintiffs nowhere acknowledge the existence of these disclosures.

The Fund's fee and frequent-trading disclosures plainly do not come close to "affirmatively creating the impression" that the Fund is appropriate only for long-term investors who do not actively manage their portfolios. Instead, they "affirmatively create" precisely the opposite impression, just like the prospectuses' clear and repeated disclosures about the "daily" nature of the Fund and the effects of compounding. Accordingly, Plaintiffs' attempt to impose a duty on the Rydex Defendants to opine about suitability or to state expressly that "the Fund was suitable only for short-term investors who actively manage their portfolios on a daily basis" fails as a matter of law.

---

[12] Plaintiffs also contend that the 1% contingent deferred sales charge that applies to certain sales of A-Class and C-Class shares "tell[s] investors in the strongest possible terms that they should expect to hold their shares" for at least a year. Opp. at 4; *see also id.* at 16-17. But Plaintiffs fail to tell the Court that these charges do not apply to *exchanges*. Thus, the right of Fund investors to "unlimited exchange privileges with no . . . transaction fees" (2007 Prosp. at 86; 2008 Prosp. at 102; 2009 Prosp. at 92) also fatally undermines any argument that the Fund's contingent deferred sales charges somehow affirmatively create the impression that the Fund is appropriate as a long-term investment vehicle.

1  **II.  PLAINTIFFS CANNOT BOOTSTRAP A CLAIM THAT THE 2007 AND 2008 PROSPECTUSES WERE MISLEADING BY RELYING ON ADDITIONAL DISCLOSURES MADE IN 2009**

Having failed to demonstrate that the 2007 and 2008 disclosures were materially misleading as written, Plaintiffs argue that those disclosures must have been misleading because the Fund made additional disclosures in 2009. *E.g.*, Opp. at 1. This argument also fails.

First, Plaintiffs mischaracterize the 2009 Supplement by claiming "Defendants acknowledged in a Prospectus supplement that the Fund was *only* appropriate as a short-term trading vehicle." Opp. at 1 (emphasis added); *accord id.* at 11, 16-18. Not so. The Supplement actually states that "[t]he Funds are *generally* intended to be used as short-term trading vehicles." Rydex MTD, Korol Decl., Ex. J at 1 (emphasis added). Likewise, the SEC's Investor Notice expressly states that "there may be trading and hedging strategies that justify holding these investments longer than a day[.]" *Id.*, Ex. L at 3. That is why the SEC recommended that "buy-and-hold investors" *themselves*--presumably in consultation with their brokers--"carefully consider whether these ETFs are appropriate for their portfolio." *Id.*

Second, Plaintiffs are wrong as a matter of law when they assert that the existence of the additional 2009 disclosures "is the strongest possible evidence" that earlier Prospectuses were materially misleading. Opp. at 19. To the contrary, subsequent disclosures cannot even be considered. Plaintiffs do not cite *any* pertinent authority supporting their hindsight argument, and there is none.[13] Rather, "[t]he question is whether the prospectus, as written" was materially misleading. *Greenapple v. Detroit Edison Co.*, 618 F.2d 198, 211 (2d Cir. 1980). As the *Greenapple* court further recognized, "[t]o be sure, the quality of the disclosure could have been improved. But the advisability of revision does not render what was done deceptive or misleading." *Id.*; *see also* Rydex MTD at 14.

It is for this reason that, consistent with Federal Rule of Evidence 407, courts do not even consider later disclosures when examining whether earlier disclosures were materially

---

[13] Plaintiffs cite *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 618 F. Supp. 2d 311, 322 (S.D.N.Y. 2009), but that case does not even address subsequent disclosures, much less say that they are the "strongest possible evidence" of a prior misleading statement.

1  misleading.  *See, e.g., Malone v. Microdyne Corp.*, 26 F.3d 471, 480 (4th Cir. 1994); *Krouner v. Am. Heritage Fund, Inc.*, 899 F. Supp. 142, 147 (S.D.N.Y. 1995) (dismissing Sections 11 and 12(a)(2) claims).  Plaintiffs attempt to distinguish these cases by misquoting Rule 407. According to Plaintiffs, Rule 407 applies only when the subsequent remedial measures are offered to prove "negligence or culpable conduct."  Opp. at 19 n.6.  But what the Rule actually says is that subsequent remedial measures are inadmissible "to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, *or a need for a warning or instruction*."  Fed. R. Evid. 407 (emphasis added).  Plaintiffs' attempt to leverage the 2009 disclosures to show that "the prior disclosures were inadequate" (Opp. at 19 n.6) is legally prohibited by Rule 407 and therefore fails as a matter of law.[14]

## CONCLUSION

At all relevant times, the Fund has been remarkably successful in acheiving its objective of matching the Fund's benchmark, *i.e.*, the inverse of the daily price movement of the Long Bond, on a daily basis.  Plaintiffs' effort to build a lawsuit on the assertion that Defendants misleadingly portrayed the Fund as a "simple directional investment" that would match the inverse of the Long Bond's price movement not on a daily basis, but rather over "long periods of time" was doomed from the start and now has largely been abandoned because it is flatly contradicted by the actual Fund disclosures.

That retreat has left Plaintiffs in the position of searching for new theories.  But no matter what positions they advance, in each instance they ignore enormous portions of the Fund disclosures entirely and selectively quote and mischaracterize others out of context.  Equally troubling, Plaintiffs simply ignore important and dispositive legal arguments and entire bodies of law cited in the Rydex Defendants' motion.  And when they do address the caselaw, their descriptions of the cases rarely withstand scrutiny.

All of this reflects the fact that Plaintiffs' case is fatally flawed.  The Fund affirmatively disclosed its daily goal, the risks of deviating from the Fund benchmark over time due to the

---

[14] Plaintiffs do not contest that their Section 11 claim against Defendant Goldman fails.  *See* Rydex MTD at 22 n.24.  Accordingly, this claim must be dismissed.

1  inherent effects of compounding, and the Fund's actual historical deviation from that benchmark.
2  The Fund also disclosed that it is structured and operated--including its fee structure--to faciliate,
3  not inhibit, frequent short-term trading. Nothing Plaintiffs can plead will change these facts or
4  transform them into a viable claim under Sections 11 or 12(a)(2) of the Securities Act.
5      For the foregoing reasons, as well as those set forth in the opening briefs on this motion
6  and the Independent Trustees' reply brief, and because amendment would be futile, Plaintiffs'
7  First Amended Class Action Complaint should be dismissed with prejudice.

Dated: November 30, 2010           DECHERT LLP
                                   MATTHEW L. LARRABEE
                                   DAVID A. KOTLER
                                   MURIEL M. KOROL

                                   By:            /S/
                                       MATTHEW L. LARRABEE
                                       One Maritime Plaza, Suite 2300
                                       San Francisco, California 94111-3513
                                       Telephone: 415.262.4500
                                       Facsimile: 415.262.4555
                                       matthew.larrabee@dechert.com

                                       Counsel for Defendants
                                       RYDEX SERIES FUNDS; PADCO
                                       ADVISORS INC. d/b/a RYDEX
                                       INVESTMENTS, INC.; RYDEX
                                       DISTRIBUTORS, INC.; NICK BONOS;
                                       MICHAEL P. BYRUM; RICHARD M.
                                       GOLDMAN; and CARL G.
                                       VERBONCOEUR