1 Michael K. Wolensky (*pro hac vice*)
mwolensky@schiffhardin.com
2 Craig Bridwell (Bar No. 246124)
cbridwell@schiffhardin.com
3 SCHIFF HARDIN LLP
One Market, Spear Street Tower
4 Thirty-Second Floor
San Francisco, CA 94105
5 Telephone: (415) 901-8700
Facsimile: (415) 901-8701
6
7 Counsel for Defendants
COREY A. COLEHOUR; J. KENNETH DALTON;
8 JOHN O. DEMARET; WERNER E. KELLER;
THOMAS F. LYDON; PATRICK T.
9 MCCARVILLE; and ROGER SOMERS

10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                   SAN JOSE DIVISION

14

15 JAMES RAFTON, TRUSTEE OF THE       Case No. 10cv1171 LHK
   JAMES AND CYNTHIA RAFTON
16 TRUST,                            **INDEPENDENT TRUSTEES' REPLY
                                     MEMORANDUM OF POINTS AND
17              Plaintiff,           AUTHORITIES IN SUPPORT OF
                                     MOTION TO DISMISS PLAINTIFFS'
18       v.                         FIRST AMENDED CLASS ACTION
                                     COMPLAINT**
19 RYDEX SERIES FUNDS; PADCO
   ADVISORS INC. d/b/a RYDEX
20 INVESTMENTS, INC.; RYDEX         Date:  December 16, 2010
   DISTRIBUTORS, INC.; RICHARD M.   Time:  1:30 p.m.
21 GOLDMAN; CARL G.                  Dept.: Courtroom 4, 5th Floor
   VERBONCOEUR; JOHN O. DEMARET;    Judge: The Hon. Lucy H. Koh
22 NICK BONOS; MICHAEL P. BYRUM;
   COREY A. COLEHOUR; J. KENNETH
23 DALTON; WERNER E. KELLER;
   THOMAS F. LYDON; PATRICK T.
24 MCCARVILLE; ROGER SOMERS; and
   DOES 1 through 25, inclusive,
25
                Defendants.
26

27

28

# TABLE OF CONTENTS

**Page(s)**

STATEMENT OF FACTS AND ISSUES (Local Rule 7-4(a)) ...................................................... 1

ARGUMENT AND CITATION OF AUTHORITY ..................................................................... 1

I.     PRELIMINARY STATEMENT............................................................................................ 1

II.    PLAINTIFFS' CLAIMS ARE TIME-BARRED,  BECAUSE THEY HAD
NOTICE OF THE FACTS UNDERLYING THEIR CLAIMS.......................................... 2

      A.    Plaintiffs continue to misstate and misapprehend the Fund's objective ................ 4

      B.    Despite Plaintiffs' strained arguments to the contrary, the compounding
effect was more than adequately disclosed ........................................................... 4

      C.    The Fund and its fee structure were designed to accommodate short-term
trading ................................................................................................................... 4

      D.    Information disclosed in Annual Reports put Plaintiffs on actual notice of
the exact effect they claim was hidden from them................................................. 5

      E.    Information in the public domain put Plaintiffs on notice of the facts
underlying their claims, because the information was well-publicized and
widely-available to a reasonably diligent investor................................................. 6

III.   PLAINTIFFS DO NOT EVEN ATTEMPT TO EXPLAIN HOW THEY COULD
HAVE SUFFERED  ANY COMPENSABLE DAMAGES UNDER SECTIONS
11 AND 12 ....................................................................................................................... 8

      A.    Plaintiffs' alleged losses cannot satisfy the statutory loss causation standard
governing claims under Sections 11 and 12(a)(2)................................................. 9

      B.    Even if the Court applies the erroneous "materialization of the risk"
causation standard, Plaintiffs' claims still fail .................................................... 11

IV.   PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR CONTROL
PERSON LIABILITY AGAINST THE INDEPENDENT TRUSTEES......................... 12

V.    PLAINTIFFS CANNOT ALLEGE THE REQUISITE PERSONAL INJURY TO
ESTABLISH STANDING TO BRING ALL CLAIMS. .................................................. 14

VI.   CONCLUSION ................................................................................................................ 15

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Akerman v. Oryx Commc'ns, Inc.,*
609 F. Supp. 363 (S.D.N.Y. 1984) ................................................................................... 10

*al-Kidd v. Ashcroft,*
580 F.3d 949 (9th Cir. 2009) ......................................................................................... 12

*Betz v. Trainer Wortham & Co.,*
519 F.3d 863 (9th Cir. 2008) ........................................................................................... 2

*Betz v. Trainer Wortham & Co.,*
610 F.3d 1169 (2010) ....................................................................................................... 3

*Castillo v. Dean Witter Discover & Co.,*
1998 WL 342050 (S.D.N.Y. June 25, 1998) ................................................................. 10

*Cohea v. Cal. Dep't of Corr. & Rehab.,*
2009 WL 3246850 (E.D. Cal. Oct. 7, 2009) .................................................................. 13

*Freidus v. ING Groep N.V.,*
2010 WL 3554097 (S.D.N.Y. Sept. 14, 2010) ................................................................ 3

*Hanley v. First Investors Corp.,*
793 F. Supp. 719 (E.D. Tex. 1992) ............................................................................... 10

*Hicks v. Morgan Stanley & Co.,*
2003 WL 21672085 (S.D.N.Y. July 16, 2003). ............................................................ 14

*In re Alstom SA Sec. Litig.,*
406 F. Supp. 2d 433 (S.D.N.Y. 2005) ........................................................................... 12

*In re Charles Schwab Corp. Sec. Litig.,*
257 F.R.D. 534 (N.D. Cal. 2009) ..................................................................................... 9

*In re Enron Corp. Sec., Deriv. & "ERISA" Litig.,*
258 F. Supp. 2d 576 (S.D. Tex. 2003) ........................................................................... 12

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.,*
705 F. Supp. 2d 86 (D. Mass. 2010) ............................................................................. 10

*In re Juniper Networks, Inc. Sec. Litig.,*
264 F.R.D. 584 (N.D. Cal. 2009) ................................................................................... 15

*In re Livent, Inc. Noteholders Sec. Litig.,*
151 F. Supp. 2d 371 (S.D.N.Y. 2001) ........................................................................... 12

*In re Mut. Funds Inv. Litig.,*
590 F. Supp. 2d 741 (D. Md. 2008) ............................................................................... 10

*In re Oracle Corp. Sec. Litig.,*
2010 WL 4608794 (9th Cir. Nov. 16, 2010) ................................................................. 11

*In re Salomon Smith Barney Mut. Fund Fees Litig.,*
441 F. Supp. 2d 579 (S.D.N.Y. 2006) ........................................................................... 15

*In re Stac Elec. Sec. Litig.,*
89 F.3d 1399 (9th Cir. 1996) ........................................................................................... 3

-i-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
  259 F.R.D. 490 (W.D. Wash. 2009)................................................................ 15

*In re Wells Fargo Mortgage-Backed Sec. Certificates Litig.*,
  712 F. Supp. 2d 958 (N.D. Cal. 2010) .......................................................... 15

*Jones v. Bock*,
  549 U.S. 199 (2007).......................................................................................... 9

*LaDuke v. Nelson*,
  762 F. 2d 1318 (9th Cir. 1985)...................................................................... 15

*Lewis v. Casey*,
  518 U.S. 343 (1996)........................................................................................ 15

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
  __ F. Supp. 2d __, 2010 WL 4452571 (C.D. Cal. Nov. 4, 2010) .......................... 14

*Meadows v. Pacif. Inland Sec. Corp.*,
  36 F. Supp. 2d 1240 (S.D. Cal. 1999)..................................................... 3, 7, 8

*Merck v. Reynolds*,
  130 S. Ct. 1784 (2010) ..................................................................................... 3

*N.J. v. Sprint Corp.*,
  314 F. Supp. 2d 1119 (D. Kan. 2004) ........................................................... 12

*Ong IRA v. Sears, Roebuck & Co.*,
  388 F. Supp. 2d 871 (N.D. Ill. 2004)............................................................. 15

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
  658 F. Supp. 2d 299 (D. Mass. 2009) ............................................................ 15

*Reese v. Malone*,
  2009 WL 506820 (W.D. Wash. Feb. 27, 2009) ............................................. 13

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Grp.*,
  690 F. Supp. 2d 959 (D. Ariz. 2010)............................................................. 12

*Tello v. Dean Witter Reynolds, Inc.*,
  494 F.3d 956 (11th Cir. 2007)......................................................................... 7

*Trainer Wortham & Co. v. Betz*,
  130 S. Ct. 2400 (2010) ..................................................................................... 3

*Warth v. Seldin*,
  422 U.S. 490 (1975) ....................................................................................... 14

*Watts v. Enhanced Recovery Corp.*,
  2010 WL 4117452 (N.D. Cal. Oct. 19, 2010)............................................... 13

*Whirlpool Fin. Corp. v. GN Holdings, Inc.*,
  67 F.3d 605 (7th Cir. 1995).............................................................................. 7

**STATE CASES**

*Kimberlin v. DeLong*,
  637 N.E.2d 121 (Ind. 1994) .......................................................................... 10

*Kowal v. Hofher*,
  436 A.2d 1 (Conn. 1980)................................................................................ 10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**STATUTES**

15 U.S.C. § 77 ................................................................................................ 3

15 U.S.C. § 77f(a) ......................................................................................... 14

15 U.S.C. § 77k(e) ..................................................................................... 9, 10

15 U.S.C. § 78u-4(b)(4) ............................................................................... 10

28 U.S.C. § 1658(b) ....................................................................................... 3

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 435B ......................................................... 10

1   **STATEMENT OF FACTS AND ISSUES (Local Rule 7-4(a))**

2          The Independent Trustees incorporate by reference the statements of facts, statements of

3   the issues, and arguments set forth in the Independent Trustees' opening brief ("Independent

4   Trustees' MTD") and in the Rydex Defendants' opening and reply briefs as if fully set forth in

5   this Memorandum.

6   **ARGUMENT AND CITATION OF AUTHORITY**

7   **I.     PRELIMINARY STATEMENT**

8          As set forth more fully in the Rydex Defendants' reply brief, which the Independent

9   Trustees incorporate to avoid duplication, Plaintiffs' First Amended Class Action Complaint

10  ("Complaint") should be dismissed on the merits because the Fund's public disclosures on their

11  face make clear that the Fund's objective was to match the inverse of the price movement of the

12  Long Treasury Bond on a daily basis, not over time.  Plaintiffs apparently believe that the

13  disclosures were incomplete or misleading because they did not also warn investors that the

14  Fund's returns would not necessarily correlate with the inverse of the cumulative price

15  movements of the Long Treasury Bond over time.  Of course, as the Rydex Defendants' Reply

16  points out, the disclosures actually did contain such statements, both in words and in pictures.

17  But even if they had not, it simply does not make sense to assert that a fund violates the Securities

18  Act of 1933 ("Securities Act") unless it discloses what its investment objective is not.  Plaintiffs

19  would have the Court hold that when a prospectus says "it is day," it is misleading unless it also

20  says "it is not night."  They have not cited a single case for that illogical proposition.

21          Merits aside, Plaintiffs cannot reasonably dispute that they were on notice of their claims

22  more than a year before they filed suit, which means their claims are barred.  The Registration

23  Statements and Prospectuses thoroughly disclosed the compounding effect and the Fund's

24  objective of correlating with the price of the Long Treasury Bond on a daily basis.  Moreover,

25  charts in Annual Reports showed that a buy-and-hold strategy for the Fund's shares had not been,

26  and likely would not be, consistent with the Fund's objective to daily match the inverse of the

27  price movement of the Long Treasury Bond.  Plaintiffs say the charts did not constitute legal

28  notice because they were just too complicated.  But some of the charts were color pictures, the

import of which was unmistakable and would have been obvious to a reasonable investor: over a sustained period, the price of the Fund's shares and the price of the Long Treasury Bond had moved in the same way and not inverse to each other. That graphic depiction, along with several widely available articles containing similar information, would have put any reasonable investor on notice that "daily" means "daily" and if you want to buy and hold, you should do so with care.

Plaintiffs' arguments to remedy the absence of loss causation are also without merit. First, they rely on a recent case that improperly applied the broader concept of loss causation under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") to Sections 11 and 12 of the Securities Act. The plain language of the Securities Act, which controls here, is inconsistent with that approach. Second, Plaintiffs try to twist an allegation of transaction causation into one of loss causation, asserting that investors may have been confused by certain disclosure language. Even as alleged, this would be garden-variety transaction causation but certainly would not establish loss causation.

Next, the Plaintiffs' control-person argument against the Independent Trustees is not drawn from the concededly meager allegations in the Complaint, but from information found elsewhere regarding the Trustees' activities as a group. While the Complaint's failure properly to allege control is basis enough for dismissal, even the other "facts" Plaintiffs identify outside the Complaint do not come close to meeting the essential elements of control-person liability.

Finally, Plaintiffs stretch too far in asserting standing to represent purchasers of Fund shares issued pursuant to a 2009 Prospectus they never could have purchased under and in share classes they never bought. Standing is a jurisdictional prerequisite the Court may not treat as dismissively as Plaintiffs urge.

## II.   PLAINTIFFS' CLAIMS ARE TIME-BARRED, BECAUSE THEY HAD NOTICE OF THE FACTS UNDERLYING THEIR CLAIMS.

Plaintiffs ask the Court to decide whether the notice they had was sufficient to commence the running of the statute of limitations based upon *Betz v. Trainer Wortham & Co.*, 519 F.3d 863 (9th Cir. 2008), asserting that *Betz* is "settled Ninth Circuit law." Opp. at 3. *Betz* was decided

1  under the Exchange Act, not the Securities Act, and, in any event, has been vacated by the

2  Supreme Court and remanded for further consideration in light of *Merck v. Reynolds*, 130 S. Ct.

3  1784 (2010).[1]

4        Claims brought under Sections 11 and 12(a)(2) of the Securities Act must be brought

5  "within one year after the discovery of the untrue statement or omission, or after such discovery

6  should have been made by the exercise of reasonable diligence . . . ." 15 U.S.C. § 77.  This means

7  Plaintiffs must file their claims "within one year of actual notice or inquiry notice" of an allegedly

8  untrue or misleading statement. *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1411 (9th Cir. 1996).

9  And, "where the underlying facts are undisputed, factually-based issues such as inquiry notice

10  may be decided as a matter of law." *Meadows v. Pacif. Inland Sec. Corp.*, 36 F. Supp. 2d 1240,

11  1245 (S.D. Cal. 1999).

12        The Fund's stated investment objective, disclosure of the compounding effect, and

13  historical return information contained in Annual Reports incorporated in the Prospectuses and

14  Registration Statements served as actual notice to Plaintiffs that, in fact, the Fund's share price

15  and the price of the Long Treasury Bond can move in the same, rather than the opposite,

16  direction.  To the extent that Plaintiffs argue this was not actual notice to them, several widely

17  available articles in the public domain should have led any reasonable investor to inquire and

18  "exercise due diligence in investigating . . . ." *Meadows,* 36 F. Supp. 2d at 1246.  Yet, despite this

19  abundance of information, Plaintiffs make no allegations that they made any inquiry at all or even

20  recognized the need to do so.  Appropriately, under the Securities Act, since they "[made] no

21  inquiry, the court imputes knowledge *as of the date the duty to inquire arose." Freidus v. ING*

22  *Groep N.V.*, No. 09 Civ. 1049, 2010 WL 3554097, at *6 (S.D.N.Y. Sept. 14, 2010) (emphasis

23  added).  That is, the statute of limitations commenced no later than August 2008—19 months

24  before they filed suit.[2]

25

26  [1] *Trainer Wortham & Co. v. Betz*, 130 S. Ct. 2400 (2010).  The Court of Appeals has since
    remanded the case back to the District Court. *Betz v. Trainer Wortham & Co.*, 610 F.3d 1169 (9th

27  Cir.2010).  Even if *Betz* had life, reliance on the case is, at best, misplaced, since *Betz* interpreted
    the Exchange Act statute of limitations provisions for securities fraud and dealt with notice issues

28  particular to that statute, 28 U.S.C. § 1658(b).
    [2] *See infra* note 5.

### A.  Plaintiffs continue to misstate and misapprehend the Fund's objective.

As explained in the Rydex Defendants' reply brief, the Registration Statements and Prospectuses unambiguously state that "the Fund's objective is to perform, *on a daily basis*, exactly opposite its benchmark, the Long Treasury Bond."[3]  What is more, of the thirteen sentences comprising the page of the Prospectus that sets forth the investment objective, seven emphasize the "daily" nature of the Fund's objective.  These oft-repeated statements would lead a reasonable investor to understand the "daily" nature of his or her investment, and, if that conflicted with his or her investment goals, to inquire about the Fund's performance if held for longer periods of time.  Inexplicably, the self-proclaimed sophisticated Plaintiffs failed to make any such inquiry.

### B.  Despite Plaintiffs' strained arguments to the contrary, the compounding effect was more than adequately disclosed.

As explained in the Rydex Defendants' Reply Memorandum, the Registration Statements and Prospectuses were replete with language disclosing the compounding effect.  Both the disclosure of the risk of "tracking error" on the page of the Prospectus setting forth the Fund's investment objective and the section entitled "Understanding Compounding & the Effects of Leverage" more than adequately disclosed that "because each Fund [except for certain Funds not including the Fund at issue here] is tracking the performance of its benchmark on a daily basis, mathematical compounding may prevent a Fund from correlating with the monthly, quarterly, annual or other period performance of its benchmark."[4]

### C.  The Fund and its fee structure were designed to accommodate short-term trading.

As more fully explained in the Rydex Defendants' Reply Memorandum, Plaintiffs' argument that the Fund's fee structure suggested that the Fund was intended to be a "long-term investment vehicle" is simply wrong.  The Fund was structured to encourage, not discourage, short-term trading; after investors purchase shares in one Rydex fund and pay the required fees,

---

[3] 2007 Prospectus at 16 (Dkt. # 37-1, p. 19).
[4] 2007 Prospectus at 37 (Dkt. # 37-1, p. 40).

1  they are allowed to exchange their investment with other Rydex funds as frequently as they wish

2  at no cost.  The Fund's unique fee structure, therefore, actually facilitated the short-term trading

3  opportunities that would flow from daily monitoring of the Fund's performance, consistent with

4  the Fund's investment objective.

5          **D.**    **Information disclosed in Annual Reports put Plaintiffs on actual notice of the**

6                **exact effect they claim was hidden from them.**

7  The crux of Plaintiffs' argument that their claims are not time-barred is that the

8  disclosures made to them concealed that the price movement of the Fund might not correlate with

9  the inverse of the price movement of the Long Treasury Bond over time.  Opp. at 6-8.  Yet, charts

10  contained in Annual Reports incorporated into the 2007 and 2008 Registration Statements and

11  Prospectuses unquestionably demonstrate that, over a period of time, the Fund's share price

12  moved in the same direction as, and not inversely to, the price of the Long Treasury Bond.[5]  Thus,

13  Plaintiffs' argument that charts contained in the Annual Reports did not put them on inquiry

14  notice of the facts underlying their claims is misdirected, since the charts put Plaintiffs on actual

15  notice of the precise effect they now claim was unlawfully concealed.

16  Plaintiffs ask the Court to ignore the obvious simply because the charts, themselves, did

17  not discuss the *causes* of the result shown.  Certainly, no "technical analysis [of the charts]

18  beyond the reach of a reasonable investor" was necessary to see the effect of which Plaintiffs now

19  complain.  Opp. at 9.  A reasonable investor could readily compare the percentage return for the

20  Fund to the percentage return for the Long Treasury Bond:  -1.44% (Fund) and -3.30% (Bond)

21  average annual returns since inception, as stated in the 2007 Annual Report, and -3.72% (Fund)

22  and -1.77% (Bond) as stated in the 2008 Annual Report.  There is no need "to decipher complex

23  raw data to understand" (Opp. at 9) that, when both numbers demonstrate a gain or, in this

24  instance, a loss over time, the Fund and the price of the Bond did not move in the opposite

25

26  [5] 2007 Annual Report at 33 (Dkt. # 37-4, p. 36); 2008 Annual Report at 33 (Dkt. # 37-5, p. 7).
The 2007 and 2008 Registration Statements and Prospectuses that incorporated the Annual

27  reports (*see* Independent Trustees' MTD at 3 n.5) were filed and available to investors on August
1, 2007 and August 1, 2008, respectively.  Thus, Plaintiffs were on notice of the facts underlying

28  their claims at least 19 months before they filed suit.

1  direction.[6]  If something more than numbers was needed, the Annual Reports also contained

2  color graphs showing that, over time, the Fund had moved in the same direction as the Long

3  Treasury Bond.  For example, the 2008 Report contained the following color graph:



**Cumulative Fund Performance**

12  2008 Annual Report at 33 (Dkt. # 37-5, p. 7).[7]  This occurred while the Fund was extremely

13  successful in meeting its stated investment objective of tracking the inverse of the price changes

14  of the Long Treasury Bond on a daily basis.

15        **E.**    **Information in the public domain put Plaintiffs on notice of the facts**

16               **underlying their claims, because the information was well-publicized and widely-available to a reasonably diligent investor.**

17        Plaintiffs argue that information widely-available on the Internet is insufficient to place

18  them on inquiry notice of the facts underlying their claims.  Yet, at the same time, Plaintiffs point

19  to the "red flags" raised by FINRA "and others" to support their proposition that the Registration

20  Statements and Prospectuses contained untrue statements or omissions.  Opp. at 6-7.

21        Plaintiffs do not contend that they became aware of the FINRA alerts by actually having

22  hard copies delivered to them, yet they appear to argue that only information presented in that

23  fashion is sufficient to place investors on inquiry notice of the facts underlying their claims.  To

24

25    [6]  The Defendants do not contend, as Plaintiffs state, that the charts "put shareholders on notice that the Fund could not meet its investment objective if held for long periods of time." Opp. at 8.

26  The Fund's investment objective had nothing to do with "long periods of time."  The Fund's stated investment objective was to perform on a daily basis and that is what it did.

27  [7]  For the convenience of the Court, attached as Exhibit A are excerpts of previously filed documents: "Performance Reports and Fund Profile" from the 2007 Annual Report at 32-33 (Dkt.

28  # 37-4, pp. 35-36) and 2008 Annual Report at 32-33 (Dkt. # 37-5, pp. 6-7).

the contrary, "[a] reasonable investor is deemed to have knowledge of well publicized and widely

available information *in the public domain*." *Meadows*, 36 F. Supp. 2d at 1246 (emphasis added).

For that reason, courts have long held that an investor is put on notice by print articles circulated

in regional and national newspapers or magazines, whether or not the investor actually subscribes

to the publications. *See Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 971 n.13 (11th Cir.

2007) (knowledge of articles from publications such as *The Washington Post*, *USA Today*,

*Fortune*, and the *Atlanta Journal Constitution* is imputed to investors).  The same logic applies to

articles that immediately pop up after typing a few basic terms into a search engine.  As the

Seventh Circuit put it some 15 years ago, long before "Googling" had become commonplace:

> In today's society, with the advent of the "information
> superhighway," federal and state legislation and regulations, as well
> as [other information], are easily accessed. A reasonable investor is
> presumed to have information available in the public domain, and
> therefore [Plaintiffs are] imputed with constructive knowledge of
> this information.

*Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 610 (7th Cir. 1995); *see also Tello*, 494

F.3d at 971 (investors are imputed with knowledge of information that is "available with a simple

internet search").

When Googled today, at least three of the articles quoted in the Independent Trustees'

Motion to Dismiss still appear on the first page of search results, despite the age of the articles

and using such basic terms as "inverse funds" and "rydex inverse fund."[8] And, despite Plaintiffs'

protestations to the contrary, these articles were published on well-respected and heavily-

trafficked websites.[9] Accordingly, Plaintiffs cannot credibly contend that the information

---

[8]   Many of the articles also appear on the first page of search results when Googling terms such
as "inverse funds tracking error," "inverse etfs," "inverse funds hold," or "inverse fund
performance." All of the Google searches referenced in this Memorandum were performed on
November 17, 2010.
[9]   For instance, MarketWatch, published by Dow Jones & Co., is part of The Wall Street Digital
Network, which includes the publisher of The Wall Street Journal. It has 16 million visitors per
month—more than three times the 5 million per month Washington Post circulation that Plaintiffs
concede is widespread enough to trigger inquiry notice. Opp. at 10. *See*
http://www.marketwatch.com/companyinfo (last visited Nov. 23, 2010). And, although Plaintiffs
point out that there are 70,000 average monthly *unique* visits to Morningstar.com, Opp. at 10,
they neglect also to point out that Morningstar.com has 6.1 million registered members. *See*
http://www.morningstar.com/aboutus/mediakit2010/audience_regmembers.html (last visited Nov.

1   contained in the articles was not "widely available information in the public domain." *Meadows*,

2   36 F. Supp. 2d at 1246.

3       Further, although Plaintiffs apparently concede that the 2003 article was widely

4   available,[10] they argue that it was insufficient to place them on inquiry notice, because it "was a

5   background piece on ETF and mutual fund products that track indices and the companies that

6   offer them." Opp. at 11. Plaintiffs are incorrect. The article is about inverse index funds and

7   discusses Rydex inverse index funds. In addition to warning that the Rydex inverse index funds

8   are "like surgical tools that are very, very sharp and need to be handled in a very precise fashion,

9   or you can nick yourself until you bleed to death," the article paraphrases a Rydex portfolio

10  director as stating that "inverse funds are managed to maintain a certain relationship to the

11  benchmark every day. The cumulative impact of daily rebalancing usually causes a divergence

12  from the benchmark over a longer period of time."[11] The 2003 article—which in plain English

13  explains that Rydex inverse funds, specifically, seek to perform on a daily basis and that the

14  compounding effect can cause the Fund to move in the same direction as its benchmark when

15  held for a period of time—places a reasonably diligent investor on notice of the facts underlying

16  Plaintiffs' claims.

17      Because the articles were widely-available in the public domain before March 19, 2009,

18  Plaintiffs are deemed to have knowledge of the information contained in the articles, *Meadows*,

19  36 F. Supp. 2d at 1246, and their claims should be dismissed on limitations grounds.

20  **III.  PLAINTIFFS DO NOT EVEN ATTEMPT TO EXPLAIN HOW THEY COULD
21       HAVE SUFFERED ANY COMPENSABLE DAMAGES UNDER SECTIONS 11
         AND 12.**

22      The Independent Trustees' MTD explained that Plaintiffs' claims should also be

23  dismissed for the independent reason that Plaintiffs did not and could not have suffered any

24  compensable damages under the plain language of Sections 11(e) and 12(b).[12] Inexplicably,

25  _____

26  23, 2010).
    [10] Plaintiffs also incorrectly assume that the 2003 article is not available online. *See*
    http://www.highbeam.com/doc/1G1-100957327.html (last visited Nov. 22, 2010).
27  [11] Dkt. # 38-1, p. 4
    [12] Plaintiffs' contention that this argument is premature (*see* Opp. at 13) simply ignores well-
28  settled law holding that affirmative defenses should be decided at the Rule 12(b)(6) stage when

1  however, Plaintiffs' Opposition does not even mention the statutory language or its legislative

2  history. *See generally* Opp. at 12-15.  Plaintiffs' failure to explain how they suffered

3  compensable losses alone warrants dismissal.  Moreover, Plaintiffs' attempt now to rely on a

4  "materialization of the risk" theory also fails because they cannot explain how their losses could

5  have resulted from the materialization of a concealed risk.

6         A.    **Plaintiffs' alleged losses cannot satisfy the statutory loss causation standard
               governing claims under Sections 11 and 12(a)(2).**

7

8         As noted in the Independent Trustees' opening brief, Sections 11(e) and 12(b) define

9  compensable damages as the "depreciation in value" of a plaintiff's securities "resulting from"

10  the alleged misrepresentation or omission. *See* 15 U.S.C. § 77k(e); Independent Trustees' MTD at

11  6.  Plaintiffs nowhere dispute that the shares of open-end mutual funds, including the Fund, are

12  priced according to a formula that turns on the value of the fund's net assets. *See* Independent

13  Trustees' MTD at 7.  Nor do they argue that any "depreciation in value" of their Fund shares

14  "resulted from" the alleged misrepresentations or omissions about the risks of the Fund.[13]  Nor is

15  there any way in which any decline in the value of Plaintiffs' Fund shares actually *could* have

16  been caused by the Fund's alleged misrepresentations or omissions about the mathematical

17  effects of compounding or the suitability of the Fund.  In short, Plaintiffs offer literally no

18  explanation as to how their damages claims are consistent with the statute.

19         Rather than attempting to address the statutory language, Plaintiffs rely instead on *In re

20  Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534 (N.D. Cal. 2009), which contains precisely the

21  same fundamental flaw as Plaintiffs' opposition:  it fails to mention, much less analyze, the plain

22  language of the statute or its legislative history.  Instead, *Schwab* relies exclusively on case law

23  interpreting the distinct and broader concept of "loss causation" under Section 10(b) of the

24

25  they are clear from the allegations pleaded in the complaint and judicially noticeable facts. *See,
   e.g., Jones v. Bock*, 549 U.S. 199, 215 (2007); Independent Trustees' MTD at 12 n.6.  That is
26  precisely the case here, and Plaintiffs' claims are, therefore, ripe for dismissal.
   [13] Plaintiffs do not even dispute that their alleged losses "resulted from" the Fund's indisputably
27  *successful* pursuit of its *disclosed* strategy of attempting to match the inverse of the daily price
   movement of the Long Bond. *See* Compl. ¶31 (alleging that compounding is inherent in daily
28  inverse funds); Opp. to Rydex MTD at 12.

1    Exchange Act.[14] However, Section 10(b) precedents are not persuasive authority on this point for

2    at least three reasons:

3        *First*, Sections 11 and 12(a) of the Securities Act and Section 10(b) of the Exchange Act

4    have radically different language, which gives rise to equally different meanings. *Compare* 15

5    U.S.C. § 77k(e) *with* 15 U.S.C. § 78u-4(b)(4). Plaintiffs' argument ignores this critical fact and

6    wrongly assumes, without any reasoning or explanation, that the two different statutes have the

7    same meaning. While the *Schwab* court made the same mistake, the law is to the contrary, and

8    this Court should not perpetuate the error. *See, e.g., Akerman v. Oryx Commc'ns, Inc.*, 609 F.

9    Supp. 363, 369-70 (S.D.N.Y. 1984) *aff'd*, 810 F.2d 336 (2d Cir. 1987) (explaining that loss

10   causation under Section 11(e) is narrower than loss causation under the Exchange Act). *Second*,

11   the Exchange Act covers only *fraudulent* conduct, while the Securities Act is essentially a *strict*

12   *liability* statute. Therefore, it is completely appropriate that the Securities Act provides for a

13   narrower concept of causation than the Exchange Act. *See, e.g.,* Restatement (Second) of Torts §

14   435B, cmt. a; *Kimberlin v. DeLong*, 637 N.E.2d 121, 126 (Ind. 1994); *Kowal v. Hofher*, 436 A.2d

15   1, 3 (Conn. 1980). *Third*, the legislative history of the Securities Act makes clear that Congress

16   passed Sections 11 and 12 (and chose not to include a reliance element in either claim) on the

17   assumption that misrepresentations in a registration statement or prospectus *would* affect the price

18   of the security through secondary market trading. *See* Independent Trustees' MTD at 9-10. This

19   rationale is not applicable in the mutual fund context, because, as even Plaintiffs do not dispute,

20   any misrepresentations or omissions about the risks of the Fund could not have affected the price

21   of the Fund's shares.

22       Simply put, there is no reason to distort the plain language of Section 11(e) of the

23

24   _____

[14] *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 705 F. Supp. 2d 86 (D. Mass.

25   2010) makes the same error, following *Schwab* in equating these different causation provisions
     without ever reconciling the court's ruling with the language of the governing statute. *See id.* at

26   94-95. Plaintiffs also cite *In re Mut. Funds Inv. Litig.*, 590 F. Supp. 2d 741 (D. Md. 2008), but
     that case is not on point because it addresses the broader loss causation provision of the Exchange

27   Act. The Exchange Act's broader loss causation standard also renders hollow Plaintiffs' claimed
     fears of mutual-fund immunity for misrepresentations or omissions. *See, e.g., Castillo v. Dean*

28   *Witter Discover & Co.*, No. 97 Civ. 1272, 1998 WL 342050, at *6 (S.D.N.Y. June 25, 1998);
     *Hanley v. First Investors Corp.*, 793 F. Supp. 719, 720 (E.D. Tex. 1992).

Securities Act to create a claim for damages for investors who may not have read, let alone relied

upon, a prospectus that had literally no impact on the value of their investment.  Certainly,

Congress has never expressed any intent to create such a novel claim.

**B.    Even if the Court applies the erroneous "materialization of the risk" causation standard, Plaintiffs' claims still fail.**

Even if the *Schwab* court's reasoning were applied here, Plaintiffs cannot identify a

concealed risk that materialized and caused their losses.  The Prospectuses explained the

implications of the Fund's investment objective this way:

> If the Fund meets its objective, the value of the Fund's shares will increase on a daily basis when the price of the Long Treasury Bond decreases.  When the price of the Long Treasury Bond increases, however, the value of the Fund's shares should decrease on a daily basis by an inversely proportionate amount (*e.g.*, if the price of the Long Treasury Bond increases by 2%, the value of the Fund's shares should go down by 2% on that day).

2007 Prosp. at 16 (Dkt. # 37-1, p. 19).  Plaintiffs do not dispute that this is *exactly what*

*happened.*  Therefore, Plaintiffs cannot claim that there were any concealed risks that

materialized and caused the Fund to produce returns that differed from those that the Fund told

investors it was seeking to achieve.

This failing explains why Plaintiffs have now altered their theories to focus almost

exclusively on a vague "suitability" claim, arguing that the prospectuses were misleading because

they failed to state expressly that "the Fund was suitable only for short-term investors who

actively manage their portfolios on a daily basis[.]"  Opp. to Rydex MTD at 17.

This omission theory cannot give rise to compensable damages under the statute either.

First, Plaintiffs make no attempt to explain how a suitability omission can amount to anything

more than transaction causation.  *See* Independent Trustees' MTD at 9; *see also In re Oracle*

*Corp. Sec. Litig.*, __ F.3d __, No. 09-16502, 2010 WL 4608794, at *10-11 (9th Cir. Nov. 16,

2010) (holding that, even under the Exchange Act, loss causation requires a showing that "the

market" reacted to the revelation of the misleading statement and bid the price of the security up

or down).  Second, suitability, by definition, focuses on the characteristics of potential investors;

1   it has no impact on the fund's operation or performance and certainly no impact on the value of

2   the fund's shares.  Thus, even under *Schwab*'s erroneous reasoning, Plaintiffs' claims fail.

3   Whether Plaintiffs can use the "materialization of an undisclosed risk" theory to

4   circumvent the plain language of Sections 11 and 12 and, if so, whether Plaintiffs' allegations

5   could satisfy that theory, are pure questions of law.  The answer to both questions does not turn

6   on whose burden it is to prove or disprove loss causation; to the contrary, the conclusion is

7   apparent from the face of the Complaint and the plain text of Sections 11 and 12.  Plaintiffs have

8   alleged claims for which the requisite causation will never be established.  Accordingly, the

9   Independent Trustees submit that the Court should dismiss Plaintiffs' claims now.

10   **IV.  PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR CONTROL-
      PERSON LIABILITY AGAINST THE INDEPENDENT TRUSTEES.**

11

12   Plaintiffs try to confuse the issue by suggesting that the Independent Trustees have argued

13   for "heightened pleading" and "pleading with particularity" when pointing out the post-*Twombly*

14   and *Iqbal* requirement that Plaintiffs must state facts demonstrating a plausible claim for relief.

15   Opp. at 16.  Plaintiffs cannot seriously dispute that, post-*Twombly* and *Iqbal*, "plaintiffs face a

16   higher burden of pleading facts" than they did before. *al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th

17   Cir. 2009).  For this reason, alone, the pre-*Twombly* and *Iqbal* cases on which Plaintiffs rely to

18   urge the adequacy of their allegations of control person liability do not have the same persuasive

19   authority or warrant the same level of attention as those decided after.[15]

20   As noted in the Independent Trustees' Motion to Dismiss, and a point Plaintiffs do not

21   dispute, only one case within this Circuit has provided a meaningful discussion applying

22   *Twombly* and *Iqbal* to control-person liability claims:  *Teamsters Local 617 Pension and Welfare*

23   *Funds v. Apollo Grp.*, 690 F. Supp. 2d 959 (D. Ariz. 2010) ("*Apollo*").  According to the Court in

24   *Apollo*, post-*Twombly* and *Iqbal*, Plaintiffs must include "allegations of the [alleged control

25   persons'] participation in the day-to-day affairs of the corporation and [their] power to control

---

26   [15] *See* Opp. at 18 (citing *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005), *N.J. v. Sprint Corp.*, 314 F. Supp. 2d 1119 (D. Kan. 2004), *In re Enron Corp. Sec., Deriv. & "ERISA"*

27   *Litig.*, 258 F. Supp. 2d 576 (S.D. Tex. 2003), and *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) for the now outdated proposition that courts presume control

28   where an outside director is alleged only to have signed the filing).

- 12 -

INDEPENDENT TRUSTEES' REPLY MEMO. ISO MOTION TO DISMISS FAC

1    corporate actions." *Id.* at 971 (citation omitted). The complaint at issue in *Apollo* contained

2    detailed allegations regarding directors' service on committees and the duties and responsibilities

3    of those committees. *Id.* at 978-79. But, the Court still dismissed the claim, because the

4    Complaint failed to allege each director's responsibilities as an individual outside director. *Id.* at

5    978; *see also Reese v. Malone*, No. C-08-1008, 2009 WL 506820, at *8 (W.D. Wash. Feb. 27,

6    2009) (similarly holding that allegations regarding a director's position and committee

7    membership and the general duties of the committee are insufficient to state a claim for control

8    person liability).

9         Thus, even if allegations made for the first time in a brief opposing a motion to dismiss

10   could cure the deficiencies of a complaint, the newly-added allegations here still would not save

11   Plaintiffs' claim.[16] As *Apollo* and *Reese* establish, allegations amounting to no more than an

12   outside director's committee membership and the general duties and responsibilities of the

13   committee, itself, do not state a claim for control person liability. Here, the complaint must

14   include allegations regarding each Independent Trustee's responsibilities as an Independent

15   Trustee. Significantly, while the Board as a whole has the authority to oversee the management

16   of the Trust, no single Independent Trustee has the power to direct the management and policies

17   of the Trust. Plaintiffs' conclusory suggestion otherwise is akin to suggesting that since

18   stockholders as a whole have the power to elect the Board and, thus, influence management, each

19   individual stockholder, alone, has that same power. Since there is no allegation, nor could there

20   be, that any one of the Independent Trustees, individually, has the power to control the Trust,

21   there are no facts to find. Whether Plaintiffs have failed to state a claim for control person

22   liability is, therefore, a question of law. For these reasons, Plaintiffs have failed to state a claim

23   for control by the Independent Trustees, and their Section 15 claim should be dismissed.[17]

24   ─────────────────────

25   [16] "Taking judicial notice of [information outside the complaint] cannot be used to cure
     deficiencies in the Complaint . . . ." *Cohea v. Cal. Dep't of Corr. & Rehab.*, No. CV 1-07-00469-
     SRB, 2009 WL 3246850, at *2 n.3 (E.D. Cal. Oct. 7, 2009) (judicial notice of earlier-filed case,

26   and plaintiff's post-hoc allegation based on notice of the case did not cure plaintiff's failure to

27   include that allegation in the actual complaint); *see also Watts v. Enhanced Recovery Corp.*, No.
     10-02606-LHK, 2010 WL 4117452, at *3 (N.D. Cal. Oct. 19, 2010) (motion to dismiss

28   opposition may not rely on facts not pleaded in the complaint).
     [17] Plaintiffs appear to concede that the Complaint contains insufficient allegations by ending their

1  **V.  PLAINTIFFS CANNOT ALLEGE THE REQUISITE PERSONAL INJURY TO ESTABLISH STANDING TO BRING ALL CLAIMS.**

2

3      "In a class action, the lead plaintiffs must show that they personally have been injured,

4  'not that injury has been suffered by other, unidentified members of the class to which they

5  belong and which they purport to represent.'" *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, __ F.

6  Supp. 2d __, 2010 WL 4452571 at *3 (C.D. Cal. Nov. 4, 2010) (citing *Warth v. Seldin*, 422 U.S.

7  490, 502, 95 S. Ct. 2197 (1975)).

8      There is no dispute that Plaintiffs purchased only the Fund's A class shares and only

9  pursuant to the 2007 and 2008 Registration Statements and Prospectuses. Given Plaintiffs' lack

10  of personal injury from other share classes or pursuant to the 2009 Registration Statement and

11  Prospectus, they cannot demonstrate standing to sue for injuries they allege other, unidentified

12  members of the class have suffered.

13      Plaintiffs contend that they have standing to represent unidentified members of the class

14  because "their injuries are traceable to the actions of Defendants who made those

15  misrepresentations and omissions." Opp. at 19. But all of Plaintiffs' purchases predate the 2009

16  documents. Common sense dictates that Plaintiffs' personal injuries cannot be traceable to

17  alleged misrepresentations or omissions that supposedly occurred after those injuries were

18  suffered. By that logic, Plaintiffs could trace current personal injuries to statements that

19  Defendants have yet to make. Further, by law, "[a] registration statement shall be deemed

20  effective only as to securities specified therein as proposed to be offered." 15 U.S.C. § 77f(a).

21  Plaintiffs' injuries, as alleged, are limited to the 2007 and 2008 documents and are not traceable

22  to future events.[18]

23      Nor do the cases Plaintiffs cite support their position. *Hicks v. Morgan Stanley & Co.*

24  expressly examined the typicality and adequacy-of-representation of the named plaintiffs during a

25  argument with the following statement: " . . . *even if Plaintiffs have inadequately alleged that the Trustee Defendants were 'control persons'* Plaintiffs' Section 15 claim should not be dismissed,

26  because such a determination is premature." Opp. at 18 (emphasis added). In fact, that is

27  precisely the purpose of a 12(b)(6) motion to dismiss—to dispose of claims, like Plaintiffs', that are not adequately pled in the complaint.

28  [18] Similarly, the other, unidentified members of the class who purchased securities pursuant only to the 2009 documents cannot trace injuries to the 2007 or 2008 documents.

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 14 -

1 Rule 23 class-certification motion. No. 01 Civ. 10071(HB), 2003 WL 21672085, at *2-4

2 (S.D.N.Y. July 16, 2003). However, class-representation elements are irrelevant to the issue of

3 standing. *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds

4 nothing to the question of standing, for even named plaintiffs who represent a class must allege

5 that they personally have been injured, not that injury has been suffered by other, unidentified

6 members of the class . . . ."); *see also LaDuke v. Nelson*, 762 F. 2d 1318, 1325 (9th Cir. 1985)

7 (standing "is a jurisdictional element that must be satisfied prior to class certification").[19]

8     At the Rule 12(b) stage, "courts considering class action complaints under Section 11

9 have overwhelmingly held that the lead plaintiffs named in the complaint lack standing to

10 challenge any offering through which no lead plaintiff actually purchased a security." *In re Wells*

11 *Fargo Mortgage-Backed Sec. Certificates Litig.*, 712 F. Supp. 2d 958, 964 (N.D. Cal. 2010).[20]

12 That is the appropriate result here, as well, where Plaintiffs have not suffered personal injuries

13 traceable to the 2009 documents or traceable to the 2007 or 2008 documents for the Advisor,

14 Investor, or C class shares; Plaintiffs, therefore, lack standing to bring these claims.

15 **VI.    CONCLUSION**

16     For the foregoing reasons, the Independent Trustees respectfully request that the Court

17 dismiss Plaintiffs' Complaint.

18 Dated: November 30, 2010                   SCHIFF HARDIN LLP

19

20                             By:         /S/
                                  Michael K. Wolensky

21                                   Craig Bridwell
                                  *Attorneys for Corey A. Colehour, J. Kenneth*

22                                   *Dalton, John O. Demaret, Werner E. Keller,*
                                    *Thomas F. Lydon, and Roger Somers*

23

24

25 [19] Plaintiffs also cite *In re Juniper Networks, Inc. Sec. Litig.*, which suffers the same short-coming; it pertains to a Rule 23 class-certification motion, not the standing issues posed by a motion to dismiss. 264 F.R.D. 584 (N.D. Cal. 2009)

26 [20] The Court in *Wells Fargo* cites to the following cases for this proposition: *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 303 (D. Mass. 2009); *In*

27 *re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 259 F.R.D. 490 (W.D. Wash. 2009); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006); *On ex rel. Ong IRA v.*

28 *Sears, Roebuck & Co.*, 388 F. Supp. 2d 871, 890-891 (N.D. Ill. 2004).