1   ALAN W. SPARER (No. 104921)
    MARC HABER (No. 192981)
2   KEVIN H. LEWIS (No. 197421)
    JAMES S. NABWANGU (No. 236601)
3   SPARER LAW GROUP
    100 Pine Street, 33rd Floor
4   San Francisco, California  94111-5128
    Telephone:     415/217-7300
5   Facsimile:      415/217-7307
    asparer@sparerlaw.com
6   mhaber@sparerlaw.com
    klewis@sparerlaw.com
7   jnabwangu@sparerlaw.com

8   Attorneys for LEAD PLAINTIFFS

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                        SAN JOSE DIVISION
12

13
    JAMES RAFTON, TRUSTEE OF THE           No. CV 10-01171 LHK
14  JAMES AND CYNTHIA RAFTON TRUST,
    et al.,                                Action Filed:  March 19, 2010
15
                         Plaintiffs,       NOTICE OF MOTION AND UNOPPOSED
16                                         MOTION FOR PRELIMINARY
            v.                             APPROVAL OF PROPOSED CLASS
17                                         SETTLEMENT AND NOTICE PLAN;
    RYDEX SERIES FUNDS, et al.,            MEMORANDUM OF POINTS AND
18                                         AUTHORITIES IN SUPPORT THEREOF
                         Defendants.
19
                                           CLASS ACTION
20
                                           Date:        September 8, 2011
21                                         Time:        1:30 p.m.
                                           Dept:        Courtroom 4, 5th Floor
22                                         Judge:       Hon. Lucy H. Koh

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

**Page**

3

NOTICE OF MOTION AND MOTION .......................................................... vi

4

STATEMENT OF THE ISSUES TO BE DECIDED ................................... vii

5

INTRODUCTION ............................................................................................ 1

6

I.   STATEMENT OF RELEVANT FACTS. ............................................ 1

7

    A.   Overview Of Plaintiffs' Claims. ................................................ 1

8

    B.   Overview Of Defenses Offered. ................................................ 3

9

II.   PROCEDURAL HISTORY AND DISCOVERY. ............................... 4

10

    A.   Pleadings And Motion Practice. ............................................... 4

11

    B.   Discovery. ................................................................................... 5

12

III.   SETTLEMENT. ...................................................................................... 6

13

IV.   ARGUMENT. .......................................................................................... 7

14

    A.   Standard For Approval Of Tentative Settlement And Grant Of
         Preliminary Approval. ............................................................... 7

15

16

    B.   The Settlement Easily Falls Within The Range of Possible
         Approval. ..................................................................................... 8

17

18

         1.   The Settlement Is The Result Of Non-Collusive,
                Informed Negotiations. ................................................... 8

19

         2.   The Settlement Amount Is Fair And Reasonable. ......... 10

20

         3.   The Settlement Provides Reasonable Compensation For
                Class Members' Damages In Light Of The Risks Of
                Proceeding Through Class Certification, Summary
                Judgment, Trial And Appeal. ........................................ 11

21

22

23

         4.   The Value Of An Immediate Recovery Greatly
                Outweighs The Possibility Of Future Relief After
                Protracted And Expensive Litigation. .......................... 11

24

25

         5.   The Scope Of The Settlement Release Of Claim Is
                Reasonable And Bounded By The Claims Asserted In
                This Litigation. ............................................................... 12

26

27

28

6.     The Experienced View Of Counsel Is That The Proposed Settlement Is Fair And Reasonable. ... 13

V.     CERTIFICATION OF THE CLASS IS PROPER AND NECESSARY. ... 14

A.     The Class Meets The Requirements Of Rule 23(a). ... 14

1.     The Class Is So Numerous That Joinder Is Impracticable. ... 14

2.     The Action Involves Common Questions Of Law And Fact. ... 15

3.     Lead Plaintiffs' Claims Are Typical Of The Claims Of All Class Members. ... 16

4.     Lead Plaintiffs Will Adequately Protect The Interests Of All Class Members. ... 17

B.     Certification Of The Class Is Proper Pursuant To Rule 23(b). ... 18

1.     Common Questions Of Law And Fact Predominate. ... 18

2.     A Class Action Is The Superior Method To Achieve Judicial Efficiency. ... 19

VI.     THE COURT SHOULD APPROVE THE FORM OF THE NOTICE AND PLAN FOR NOTIFYING THE CLASS. ... 21

A.     The Proposed Class Notice Satisfies the Requirements Of Rule 23. ... 21

B.     The Notice Plan And Claims Process Are Simplified And Appropriate. ... 22

VII.     PROPOSED SCHEDULE OF EVENTS. ... 23

CONCLUSION. ... 25

-ii-

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

### CASES

| | Page |
|---|---|
| *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) | 18, 20 |
| *Armstrong v. Bd. of School Dirs.*, 616 F.2d 305 (7th Cir. 1980) *overruled on other ground, Felzer v. Andreas*, 134 F.3d 873 (7th Cir. 1998) | 8 |
| *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) | 18, 19 |
| *Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) | 7 |
| *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) | 7 |
| *Crossen v. CV Therapeutics*, 2005 U.S. Dist. LEXIS 41396 (N.D. Cal. Aug. 9, 2005) | 16, 17 |
| *Epstein v. MCA, Inc.*, 50 F.3d 644 (9th Cir. 1995), *rev'd on other ground*, 516 U.S. 367 (1996) | 20 |
| *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 49477 (N.D. Cal. Apr. 22, 2010) | 8, 12 |
| *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) | 7, 15, 16, 18 |
| *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) | 16, 17 |
| *In re Bank One Sec. Litig./First Chicago. S'holder Claims*, 2002 U.S. Dist. LEXIS 8709 (N.D. Ill. May 9, 2002) | 19 |
| *In re Charles Schwab Corp. Sec. Litig.*, 2009 U.S. Dist. LEXIS 127093, (N.D. Cal. Aug. 21, 2009) | 19 |
| *In re Genentech, Inc. Sec. Litig.*, 1990 U.S. Dist. LEXIS 11389 (N.D. Cal. June 8, 1990) | 17 |
| *In re Heritage Bond Litig.*, 546 F.3d 667 (9th Cir. 2008) | 8 |
| *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186 (S.D.N.Y. 2005) | 7 |
| *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584 (N.D. Cal. 2009) | 16 |
| *In re Portal Software Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June 30, 2007) | 10 |
| *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133 (D. Colo. 2009) | 23 |
| *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008) | 10 |
| *In re THQ, Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002) | 15, 21 |

| **CASES** | **Page** |
|---|---|
| *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 1989 U.S. Dist. LEXIS 19146 (C.D. Cal. Mar. 9, 1989) | 14 |
| *In re Veeco Invs. Sec. Litig.*, 2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7, 2007) | 10 |
| *In re VeriSign, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005) | 15, 16 |
| *In re Zoran Corp. Deriv. Litig.*, 2008 U.S. Dist. LEXIS 48246 (N.D. Cal. Apr. 7, 2008) | 13 |
| *Kakani v. Oracle Corp.*, 2007 U.S. Dist. LEXIS 47515 (N.D. Cal. June 19, 2007) | 8, 14 |
| *Linney v. Cellular Alaska P'ship*, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) | 8 |
| *McPhail v. First Command Fin'l Planning, Inc.*, 247 F.R.D. 598 (S.D. Cal. 2007) | 21 |
| *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D. Cal. 2004) | 14 |
| *Rannis v. Fair Credit Lawyers, Inc.*, 2007 U.S. Dist. LEXIS 17856 (C.D. Cal. Mar. 12, 2007) | 20 |
| *Sandoval v. Tharaldson Employee Mgmt., Inc.*, 2010 U.S. Dist. LEXIS 69799 (C.D. Cal. June 15, 2010) | 13 |
| *Wal-Mart Stores, Inc. v. Dukes*, 180 L. Ed. 2d 374 (2011) | 15, 16 |
| *Young v. Polo Retail, LLC*, 2006 U.S. Dist. LEXIS 81077 (N.D. Cal. Oct. 25, 2006) | 8 |

**STATUTES & RULES**

| | |
|---|---|
| 15 U.S.C. | |
| §77k | 1, 4 |
| §77l | 1, 4 |
| §77o | 1, 4 |
| 28 U.S.C. §1404(a) | 4 |
| Securities Act of 1933 | |
| §11 | 6, 10, 19 |
| §12(a) | 6 |
| §12(a)(2) | 10, 19 |
| §§11, 12(a)(2), 15 | 1, 4 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STATUTES & RULES**                                                    **Page**

Fed. R. Civ. P.

| | |
|---|---|
| 23a | 14, 16 |
| 23(a)(1) | 14 |
| 23(a)(2) | 15 |
| 23(a)(3) | 16 |
| 23(a)(4) | 17 |
| 23(b) | 14, 18 |
| 23(b)(3) | 18, 19, 20 |
| 23(c)(2)(B) | 21, 22 |
| 23(c)(2)(B)(v) | 20 |
| 23(c)(3) | 21 |
| 23(e) | 7 |
| 26(a) | 5 |

**OTHER AUTHORITIES**

*Manual for Complex Litigation (Fourth)* §21.632                        7, 8
(Stanley Morens, J., et al., eds. 2004)

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002)

| | |
|---|---|
| §3:6 | 14, 15 |
| §4:24 | 18 |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on September 8, 2011, at 1:30 p.m., or as soon thereafter as may be heard before the Honorable Lucy H. Koh of the United States District Court for the Northern District of California, San Jose, California, Lead Plaintiffs James Rafton and James Darst, Jr. ("Lead Plaintiffs") will and hereby do move the Court for an order, pursuant to Federal Rule of Civil Procedure 23(e), preliminarily approving the Settlement in the above-captioned action, preliminarily certifying the action as a class action for settlement purposes, approving the manner and form of notice to be sent to Class Members, and scheduling a hearing for consideration of final approval of the Settlement.

This Motion is based on this Notice of Motion and Unopposed Motion, the Memorandum of Points and Authorities in Support Thereof, the Stipulation and Settlement Agreement, all pleadings and papers filed herein, the arguments of counsel, and any other matters properly before the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should preliminary approve the Settlement of the above-referenced action.

2.      Whether the Court should certify the Class for settlement purposes.

3.      Whether the Court should approve the manner and form of the notice to be sent to Class Members.

4.      Whether the Court should schedule a Final Approval hearing at which the Court will consider the request for final approval of: (a) the settlement contemplated by the Stipulation and Settlement Agreement; (b) the plan for distributing proceeds of the settlement ("Plan of Allocation"); (c) Lead Plaintiffs' application for reimbursement of time and expenses; and (d) Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses.

**INTRODUCTION**

This is an unopposed motion by Lead Plaintiffs, James Rafton and James Darst, Jr., for preliminary approval of the settlement of the above-captioned putative class action against all Defendants on the terms and conditions set forth in the Stipulation and Settlement Agreement dated July 28, 2011 ("Stipulation" or "Stip.") filed herewith.[1]

The Settlement provides for a resolution of the claims of the proposed Settlement Class against all Defendants in exchange for an all-cash payment of $5.5 million. Lead Plaintiffs and Lead Counsel believe the settlement is an excellent result for the Class. Not only is the total monetary relief substantial, but based on the analysis of Lead Plaintiffs' damages expert, the settlement amount provides a recovery of approximately 40% of the losses to the Class attributable to the effects of mathematical compounding, which were the focus of the litigation.

The Settlement satisfies all of the criteria for preliminary approval under federal law, and accordingly, Lead Plaintiffs respectfully request that the Court issue an Order that: (1) grants preliminarily approval of the terms of the proposed $5.5 million settlement; (2) certifies the Class for settlement purposes; (3) approves the form and method for providing notice to the Class; and (4) schedules a fairness hearing at which the Court will consider the request for final approval of: (a) the settlement contemplated by the Stipulation ("Settlement"); (b) the plan for distributing proceeds of the Settlement ("Distribution Plan"); (c) Lead Plaintiffs' application for reimbursement of time and expenses; and (d) Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses.

**I.**

**STATEMENT OF RELEVANT FACTS.**

**A.    Overview Of Plaintiffs' Claims.**

Lead Plaintiffs' First Amended Complaint ("FAC") asserts claims under Sections 11, 12(a)(2), and 15 of the 1933 Act (15 U.S.C. §§77k, 77l, and 77o) on behalf of a putative class of all persons and entities who bought shares of the Rydex Inverse Government Long Bond Strategy

---

[1]Unless otherwise stated, capitalized terms in the Motion have the meanings provided in the Stipulation.

Fund (the "Fund") during the Class Period and were damaged thereby against Defendants Rydex Series Funds, PADCO Advisors Inc. d/b/a Rydex Investments, Inc., Rydex Distributors, Inc. ("Rydex Defendants"), and individual Defendants Richard M. Goldman, Carl G. Verboncoeur, John O. Demaret, Nick Bonos, Michael P. Byrum, Corey A. Colehour, J. Kenneth Dalton, Werner E. Keller, Thomas F. Lydon, Patrick T. McCarville, and Roger Somers (the "Individual Defendants") (collectively, "Defendants").

The Fund was represented as correlating with its benchmark, the inverse of the daily price movements of the 30-Year U.S. Treasury Bond (the "Long Treasury Bond"). As alleged in the FAC, the core of this case is that the Fund was sold to investors through registration statements and prospectuses ("Registration Statements") that (1) misrepresented the type of person or entity who was an appropriate investor in the Fund, and (2) failed to adequately disclose a mathematical compounding effect which over time virtually assured that the Fund would deviate from its benchmark. FAC ¶¶38-41.

According to the FAC, the Registration Statements falsely stated that the Fund was appropriate for investors who anticipated that the price of the Long Treasury Bond would decline. *Id.* ¶¶39-40. However, as the FAC further explains, the Registration Statements "do not disclose that the [Fund] is altogether inappropriate as a directional investment for periods longer than a single day." *Id.* ¶47. In other words, the FAC alleges that the Registration Statements failed to disclose that the Fund was not appropriate for investors who intended to hold the investment in anticipation of rising interest rates over the longer term, or even for a period longer than a single day.

The FAC further alleges that because of the inadequately disclosed tracking error due to mathematical compounding, the Fund would only in rare situations accurately track the inverse price movements of its benchmark for periods longer than a single day. *Id.* For example, "between March 20, 2008 and February 22, 2010, the price of the U.S Treasury Long Bond fell by 4.91%." *Id.* ¶38. The FAC further alleges that while a reasonable investor would expect "the share price of the Fund to increase by the same amount over the same period," due in large part to mathematical compounding, the price of the Fund fell by 11.29% over the same period. *Id.*

1   In support of their claims Lead Plaintiffs also noted that: (1) the Registration Statements

2   and related material stated that the Fund was appropriate for investors who sought investment

3   benefits in a "rising interest rate environment" (FAC ¶¶39-40; 2007 Annual Report at 32); (2)

4   that the fee structure for certain classes of Fund shares imposed burdens and or penalties which if

5   applied would serve as a disincentive for investors to sell their shares in less than a year (2007

6   Prospectus at 54; 2008 Prospectus at 75); and (3) that in summer 2009, the Securities Exchange

7   Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA") issued notices

8   to investors and brokers specifically identifying the risks of holding inverse funds like the Rydex

9   Fund for periods longer than a single day, and reminding brokers of their disclosure obligations.

10  The FAC notes that shortly thereafter Defendants amended their Registration Statement to

11  provide additional discussion of compounding as it affected the Fund.  FAC ¶¶60-66.

12          **B.      Overview Of Defenses Offered.**

13          Defendants denied having any liability to Lead Plaintiffs or Class Members and asserted a

14  number of defenses, including the following:  (1) the Registration Statements and Prospectuses

15  were clear, accurate, and contained no material misrepresentation or omissions; (2) the

16  Registration Statements and Prospectuses adequately explained to Class Members the facts and

17  risks regarding compounding; (3) the Fund was an appropriate investment for periods longer than

18  one day; (4) the compounding effect, which is inherent in all inverse funds that track the daily

19  price movement of a benchmark, was widely known and widely discussed in publicly available

20  articles and research reports; (5) the Fund had no obligation to and did not opine about the types

21  of investors for whom the Fund is suitable; (6) the alleged misstatements in the Registration

22  Statements could not have caused any decline in the Fund's net asset value ("NAV"); and (7) the

23  SEC and FINRA warnings in summer 2009 should be a cutoff date for all or some Class

24  Members, reducing their potential recovery by over 80%.  Defendants also disputed the amount

25  of potentially recoverable damages and argued that much of the decline in the Fund's NAV was

26  not related to the misrepresentations alleged in the case.

27          Lead Plaintiffs and Lead Counsel carefully considered each of these defenses, and others,

28  before deciding that the Settlement was in the best interests of the Class.

## II.

## PROCEDURAL HISTORY AND DISCOVERY.

### A.    Pleadings And Motion Practice.

Plaintiff James Rafton filed the initial complaint against Defendants on March 19, 2010, alleging violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 arising out of misstatements in the Fund's 2007, 2008 and 2009 Registration Statements and Prospectuses.

On May 21, 2010, Defendants filed a motion to transfer venue to the District of Maryland pursuant to 28 U.S.C. §1404(a).  The motion was fully briefed by the parties, and on June 29, 2010, after argument before U.S. District Court Judge Charles R. Breyer, the motion to transfer was denied.

After the time prescribed by the Private Securities Litigation Reform Act, James Rafton and James Darst, Jr. moved for appointment as Lead Plaintiffs.  On June 29, 2010, Judge Breyer issued an order finding that Messrs. Rafton and Darst had the largest financial interest of any applicant and that they "otherwise satisfie[d] the requirements of Fed. R. Civ. Pro. 23."  Messrs. Rafton and Darst were appointed as Lead Plaintiffs in the Action and their selection of Sparer Law Group as Lead Counsel was approved.

On August 2, 2010, this action was transferred from the Honorable Charles R. Breyer to the Honorable Lucy H. Koh.

On August 13, 2010, Lead Plaintiffs filed their FAC asserting claims under Sections 11, 12(a)(2) and 15 of the 1933 Act (15 U.S.C. §§77k, 77l and 77o) on behalf of a putative class of all persons and entities who bought shares of the Fund during the period from March 19, 2007 through March 19, 2010.

On October 8, 2010, the Rydex Defendants and the Individual Defendants filed separate motions to dismiss the FAC.  On November 8, 2010, Lead Plaintiffs filed separate oppositions to each of the motions, and on November 30, 2010, Defendants filed their replies in further support of their motions.

On January 5, 2011, the Court issued an order denying the Rydex Defendants' motion to dismiss in its entirety, and denying in part and granting in part the Individual Defendants' motion

1    to dismiss.  While Plaintiffs' claims were allowed to proceed, this Court held that Plaintiffs

2    lacked standing to bring claims under the Fund's 2009 Prospectus.

3          On April 22, 2011, Defendants moved for leave to file a motion for reconsideration of the

4    Court's denial of Defendants' motion to dismiss on the issue of loss causation and in the

5    alternative moved that the Court certify the denial of the motion to dismiss for interlocutory

6    appeal.  On May 2, 2011, the Court denied both motions.

7          **B.      Discovery.**

8          The Parties have undertaken and completed extensive discovery.  Beginning in March

9    2011, the Parties exchanged initial Rule 26(a) disclosures, and propounded and responded to

10   extensive requests for production.  Soon thereafter, Defendants produced thousands of pages of

11   documents, as well as all of the trading data for putative Class Members during the Class Period.

12   The additional documents analyzed by Lead Counsel's review team included: all Prospectuses

13   and related Statements of Additional Information; the Fund's online and print marketing

14   materials; internal documents created by Defendants' Fund managers to promote the Fund; news

15   articles in the public domain regarding the effects of compounding; and, internal e-mail

16   discussions among Defendants' employees regarding the management of the Fund, the Fund's

17   tracking error, the effects of compounding on the Fund's returns, investor inquiries, and the

18   Fund's fee structure.

19         On May 13, 2011, Defendants served their initial expert report on class certification

20   issues.

21         On May 19, 2011 and May 23, 2011, after obtaining third party discovery of Plaintiffs'

22   individual financial advisor, Defendants took the depositions of Lead Plaintiffs.

23         In all the parties exchanged and reviewed over 30,000 pages of subpoenaed or produced

24   documents.  This does not include the Parties' informal exchange of information for purposes of

25   conducting settlement discussions.

26

27

28

**III.**

**SETTLEMENT.**

The Settlement results in the creation of a common fund in the amount of $5.5 million for the Class, and represents an estimated recovery of approximately 40% of the losses attributable to the tracking error produced by compounding. This is not a claims-made settlement. If the settlement is approved, and after all its principal conditions are satisfied, none of the settlement funds will be returned to Defendants. Stip. ¶16.

As more fully set forth in the proposed Notice Of Pendency And Proposed Settlement Of Class Action For Identified Purchasers With Identified Transactions (Stip. Ex. A-1 at 6-8), each Class Member will receive from the Net Settlement Fund his or her pro-rata share of the sum of: (1) 100% of the Class Member's loss attributable to the compounding tracking error, not to exceed the larger of the Class Member's losses under Section 11 or Section 12(a) ("net out of pocket loss"), *and* (2) 5% of the Class Member's net out of pocket loss.[2]

This allocation reflects the fact that the misrepresentations alleged in the First Amended Complaint center on the failure to disclose the tracking error produced by compounding, while recognizing that there is a lesser argument that net out of pocket losses are the correct measure of damages where the appropriateness of the product for its target investor is at issue.[3] This allocation also accommodates the fact that individual Class Members will have different, and perhaps unique, ratios of loss attributable to compounding tracking error and net out of pocket loss, due to each Class Member's unique patterns of purchases and sales during the class period.

---

[2]For Class Members with multiple purchases and/or sales during the Class Period, the choice between LIFO and FIFO as the method for matching purchases and sales in computing damages is arbitrary. It does not affect the total class settlement and it does not affect the number of shares eligible for a recovery. Accordingly, the Plan of Allocation uses for each Class Member's account whichever method results in the largest damage claim for that Class Member. *See* Stip. Ex. A-1 at 7.

[3]Because the Fund was an inverse benchmark mutual fund, the value of the Fund's shares was intended to fall when the benchmark rose, which could create a statutory "net out of pocket loss."

**IV.**

**ARGUMENT.**

**A.    Standard For Approval Of Tentative Settlement And Grant Of Preliminary Approval.**

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims.  Approval of a tentative class-action settlement requires three steps: (i) the court must preliminarily approve the tentative settlement; (ii) members of the class must receive notice of the tentative settlement; and (iii) a final hearing must be held, after which the Court must decide whether the tentative settlement is fair, reasonable and adequate.  *See Manual for Complex Litigation (Fourth)* §21.632, at 320-21 (Stanley Morens, J., et al., eds. 2004) ("MCL (Fourth)").  At the preliminary approval stage, "the court reviews the proposed terms of settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms" before issuing notice to the proposed class.  *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005).

Approval of a proposed class-action settlement is left to the discretion of the court.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  In exercising that discretion however, courts in this District have recognized that settlements of disputed claims are encouraged and that in assessing whether a settlement is fair and reasonable, a court "is not to make a final determination of liability or damages, or to hold a trial or rehearsal of the trial." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979).  Nor is it the court's responsibility to determine whether a better settlement might have been negotiated.  *Id*.  Rather, the court's review is limited "'to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation omitted).

In determining whether a settlement is fair and reasonable, courts consider: (1) whether the settlement is the product of good faith negotiations conducted at arm's length; (2) the amount offered in settlement; (3) the risks, complexity and likely duration of further litigation; (4) the

1   risk of maintaining class action status throughout trial; and (5) the experience and views of

2   counsel.  *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 49477, at *23 (N.D.

3   Cal. Apr. 22, 2010); *In re Heritage Bond Litig.*, 546 F.3d 667, 674 (9th Cir. 2008) (listing same,

4   among other factors).  In short, if the settlement was achieved through experienced counsels'

5   arm's-length negotiations, in the absence of fraud or collusion, the court should be hesitant to

6   substitute its own judgment for that of counsel.  *Linney v. Cellular Alaska P'ship*, 1997 U.S. Dist.

7   LEXIS 24300, at *15-*18 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998).

8          To grant preliminary approval of this class action settlement, the court need only find that

9   it falls within "'the range of reasonableness.'"  *Young v. Polo Retail, LLC*, 2006 U.S. Dist.

10  LEXIS 81077, at *13 (N.D. Cal. Oct. 25, 2006) (citation omitted).  The settlement must only be

11  "'within the range of possible approval.'"  *MCL (Fourth)* §21.632, at 321 n.976.  The *MCL*

12  *(Fourth)* characterizes the preliminary approval stage as an "initial evaluation" of the fairness of

13  the proposed settlement on the basis of written submissions and informal presentation from the

14  settling parties. *Id*. at 321.  The purpose of the preliminary approval process is for the Court to

15  ascertain whether reason exists to proceed by notifying the class members of the settlement and

16  to hold a fairness hearing.  *Armstrong v. Bd. of School Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980),

17  *overruled on other ground, Felzer v. Andreas*, 134 F.3d 873 (7th Cir. 1998).  Courts therefore

18  employ a "threshold of plausibility" standard intended to identify conspicuous defects.  *Kakani v.*

19  *Oracle Corp.*, 2007 U.S. Dist. LEXIS 47515, at *16 (N.D. Cal. June 19, 2007).

20          **B.      The Settlement Easily Falls Within The Range Of Possible Approval.**

21                  **1.      The Settlement Is The Result Of Non-Collusive, Informed**
22                          **Negotiations.**

23          The settlement proposed for this matter is the product of intensive, arms-length

24  negotiations between the parties.

25          At the time of the Initial Case Management Conference, the parties designated W.

26  Randall Wulff as a mediator, recognizing that his schedule and that of counsel would not allow a

27  mediation until early August, 2011, after the class certification briefing was complete.

28  Declaration of Alan W. Sparer ("Sparer Decl.") ¶3.  During the course of discovery, the Plaintiffs

1    and Defendants counsel concluded that an earlier settlement effort would be more efficient for

2    both sides.  To that end, Plaintiffs and Defendants scheduled a confidential settlement meeting

3    for May 26, 2011.  *Id*.

4            Substantial preparations were made in advance of the meeting.  As noted above,

5    Defendants' expert designation and expert report on class certification issues was served on May

6    13, 2011 pursuant to the pre-existing trial schedule.  Defendants also provided extensive trading

7    data for all putative Class Members for the Class Period, and the parties agreed that the meeting

8    would include experts and an exchange of damage figures.  *Id*. ¶4.  Lead Counsel retained the

9    services of Dr. Craig McCann, Securities Litigation and Consulting Group ("SLCG"), a former

10   SEC economist, to perform the damage calculations and to provide quantitative analysis of issues

11   relating to class certification.  *Id*.  Prior to the May 26, 2011 settlement conference, Dr.

12   McCann's team conducted a thorough analysis of the Fund's trading data and prepared a detailed

13   damage analysis.  Lead Counsel also engaged a second rebuttal expert, a former finance

14   professor and Wall Street derivatives specialist, to address substantive issues, including the

15   adequacy of the disclosures in the Registration Statements relating to the effects of compounding,

16   and the appropriateness of the Fund as a vehicle for tracking the inverse of the Treasury Long

17   Bond.  Both Plaintiffs' experts were well advanced in the preparation of their rebuttal analysis

18   when the May 26 settlement meeting occurred.  *Id*. ¶5.

19           The meeting lasted the better part of the day on May 26, and was followed in the

20   succeeding weeks by telephonic conference calls between Plaintiffs' and Defendants' experts and

21   by negotiations between counsel on almost a daily basis.  Lead Plaintiffs were consulted

22   regularly in person or by telephone.  *Id*. ¶6.  On June 7, 2011 the Parties agreed in principal to a

23   proposed settlement and executed a Memorandum Of Understanding of the same date.  The

24   Parties advised the Court of their tentative settlement at the June 8, 2011 Case Management

25   Conference, and July 25, 2011 was set as the deadline for filing this Motion for Preliminary

26   Approval, which was subsequently extended until July 28, 2011.  *Id*.

27

28

## 2.     The Settlement Amount Is Fair And Reasonable.

The proposed Settlement of $5.5 million represents a meaningful recovery of the damages suffered by the Class as a result of the compounding effect, and is well within the range of what is considered fair, reasonable and adequate.

Based on the analysis performed by their experts, Lead Counsel estimate that the settlement amount represents approximately 40% of the losses to the Class resulting from a tracking error due to compounding.  This settlement amount is well within the "'range of reasonableness.'"  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) ($5 million settlement representing 25% of recoverable damages is "well within the range of reasonableness") (citation omitted); *In re Veeco Invs. Sec. Litig.*, 2007 U.S. Dist. LEXIS 85629, at *34 (S.D.N.Y. Nov. 7, 2007) ($5.5 million settlement representing 23.2% of possible recovery is "'squarely within the range of reasonableness'") (citation omitted); *In re Portal Software Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794, at *15-*16 (N.D. Cal. June 30, 2007) ($3.25 million proposed settlement amounting to 25% of provable damages is "'within the range of possible approval'") (citation omitted).

In addition, the proposed Settlement in nominal terms exceeds the median settlement for class actions asserting claims under Sections 11 or 12.  During the fifteen-year period after the passage of the Private Securities Litigation Reform Act of 1995, the median settlement for Sections 11 or 12(a)(2) cases is $3.6 million.[4]  Sparer Decl. ¶12 & Ex. B at 9 (Ellen M. Ryan & Laura E. Simmons, Cornerstone Research, *Securities Class Action Settlements: 2010 Review and Analysis*, 2010, media.complianceweek.com/documents/22/cornerstone2010analysis_5378.pdf ("Securities Settlements 2010")).  In view of the risks of proving liability and of recovering damages, discussed below, the Settlement provides a substantial recovery.

---

[4]Although Cornerstone Research data is often referenced as a benchmark for the fairness of class action settlements, we note that the research sample involving only Section 11 and/or 12(a)(2) claims in Cornerstone's data is very small, amounting to only 55 cases.  In addition, there is no available data for cases where, as here, the damages resulting from the Section 11 and 12 violations (non-disclosure of compounding effects) are likely to be less than the full amount of net out-of-pocket losses during the Class Period.

1

2

**3.       The Settlement Provides Reasonable Compensation For Class
Members' Damages In Light Of The Risks Of Proceeding Through
Class Certification, Summary Judgment, Trial And Appeal.**

3        This fairness factor—the risks, complexity and likely duration of further litigation—also

4    weighs in favor of approval.  As strongly as Lead Plaintiffs and Lead Counsel believed in their

5    case, there were significant risks of pursuing it to trial.  Defendants denied having any liability to

6    Lead Plaintiffs or to the members of the Class and argued that language in the Registration

7    Statements and Prospectuses contained no material misrepresentation or omissions.  Although

8    Lead Plaintiffs maintain that the Registration Statements and Prospectuses were misleading

9    because the compounding discussions were not referenced to those sections relating to the Fund

10   and focused on leveraged as opposed to inverse funds, a jury could conclude that a reasonable

11   investor would not have been misled by the Registration Statements.

12        Defendants also argued that the mathematical compounding effect was widely known and

13   widely discussed in publicly available newspaper and magazine articles.  Again, while Lead

14   Plaintiffs strongly disagree with this argument, a jury could find that investors knew about or

15   were on notice of the effects of compounding.  Defendants maintained that claims by investors

16   who knew about the effects compounding at the time of investment or before March 20, 2009 are

17   barred.

18        Similarly, Defendants argued that any damages from compounding should be cut off in

19   summer 2009, when the SEC and FINRA issued notices to investors and brokers specifically

20   identifying the risks of holding inverse funds like the Rydex Fund for periods longer than a single

21   day.  If compounding damages were cut off as that point, the compounding losses for the class

22   would be reduced by over 80%.

23

24

**4.       The Value Of An Immediate Recovery Greatly Outweighs
The Possibility Of Future Relief After Protracted And
Expensive Litigation.**

25        As the Court is aware, litigating a complex securities class action through appeals can

26   take years, and the outcome is uncertain.  By contrast, the proposed $5.5 million cash Settlement

27   provides the Class with an immediate and guaranteed substantial result.  In considering whether

28   to enter into the Settlement, Lead Plaintiffs weighed the value of an immediate settlement against

the prospect that significant proceedings remained ahead, including additional discovery, class certification briefing, summary judgment briefing, Daubert motions, trial preparation, a trial and potential appeals.

There is no doubt that the time and expense of continuing the litigation would be substantial, and that such transactional costs would significantly reduce whatever judgment Class Members recovered through litigation.  Approval under this factor is favored where, as here, significant procedural hurdles remain, including class certification briefing, an anticipated summary judgment motion and appeals.  *Garner*, 2010 U.S. Dist. LEXIS 49477, at *28 ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all Parties and the Court").

Considering all of these factors, the value of an immediate recovery outweighs the uncertainty and delay of trial and the subsequent lengthy appeals.[5]

**5.      The Scope Of The Settlement Release Of Claim Is Reasonable And Bounded By The Claims Asserted In This Litigation.**

The release provisions contained in the Stipulation are the product of extensive negotiations and provide Defendants with closure without relinquishing or compromising unrelated claims on behalf of or against non-parties.  The Released Defendant Parties, as defined in the Stipulation, include only the named Defendants, and the usual cast of related entities such as current or former attorneys, auditors, officers, directors, employees, partners, subsidiaries, affiliates, parents, insurers, etc.  Stip. ¶1(y).  This is standard release language identifying defendants and affiliated entities who receive the benefits of the release.

The Released Claims include, but are not limited to: claims of any kind, whether known or unknown that Plaintiffs:  "(1) asserted in the Complaint or the Action as against the Released Defendant Parties; (2) have asserted, could have asserted or could assert in the future … against

---

[5]The Ninth Circuit currently ranks the slowest among the 12 circuit courts for median time to resolve an appeal, requiring on average nearly 18 months from filing the notice of appeal to disposition.  Sparer Decl. ¶13 & Ex. C at 2 (Federal Judicial Center, Federal Court Management Statistics, Courts of Appeals, 2009, www.uscourts.gov/cgi-bin/cmsa2009.pl, select Ninth Circuit).

1   the Released Defendant Parties that are based upon, arise out of, or relate to the facts, allegations,

2   claims, losses, damages, disclosures, filings, or statements set forth in the Complaint or at issue

3   in the Action; or (3) … could assert in the future relating to the prosecution, defense, or

4   settlement of the Action as against the Released Defendant Parties." *Id*.  ¶1(x).

5          In short, the release of claims is limited to the parties to the Action and affiliates and facts

6   and transactions in dispute in this Action.[6]  Based on this language, Lead Counsel do not believe

7   that absent Class Members are relinquishing claims that were not litigated or claims against

8   parties who were not defendants.

9          This language is consistent with release language approved in securities class actions by

10  courts in the Ninth Circuit.  *In re Zoran Corp. Deriv. Litig.*, 2008 U.S. Dist. LEXIS 48246, at *31

11  (N.D. Cal. Apr. 7, 2008) ("The released claims should only be those made in the consolidated

12  complaint and those closely related thereto"); *Sandoval v. Tharaldson Employee Mgmt., Inc.*,

13  2010 U.S. Dist. LEXIS 69799, at *28-*29 (C.D. Cal. June 15, 2010) (scope of settlement found

14  fair and reasonable where it did not "prevent Class Members from pursuing claims unrelated to

15  the settlement").

16
17              **6.     The Experienced View Of Counsel Is That The Proposed Settlement Is
                         Fair And Reasonable.**

18         The experience and views of counsel also weigh in favor of approving the Settlement.

19  Lead Counsel, who have significant experience in prosecuting and negotiating securities actions,

20  believe that the settlement is fair and reasonable, and in the best interest of the Class.  *See* Sparer

21  Decl. ¶11 & Ex. A (firm resume).  Lead Counsel is well versed in the facts and legal issues under

22  consideration, and came to the determination that the proposed settlement was fair only after

23  extensive analysis of the strengths and weaknesses of the case.  *See* Sparer Decl. ¶2.  Lead

24  Counsel began their initial investigation of this matter in early January 2010, researched and filed

25  the complaint, successfully opposed motions to change venue and to dismiss, reviewed tens of

26  _____

27         [6]Plaintiffs also relinquish the right to monetary recovery against third parties to the extent
    such recovery gives rise to a right to indemnification from Defendants in connection with the
    Released Claims.  Stip. ¶2(d).  This provision precludes backdoor efforts to obtain a recovery that

28  would require Defendants to pay a second time for the claims released herein.

thousands of pages of documents, and were closely involved, with the assistance of finance

professionals, in the analysis of the trading data for the Fund during the Class Period.

Although a district court should not simply rubber stamp stipulated settlements, numerous

courts have recognized that the opinion of experienced counsel supporting the settlement is

entitled to considerable weight. *Kakani*, 2007 U.S. Dist. LEXIS 47515, at *3-*4; *In re United*

*Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 1989 U.S. Dist. LEXIS 19146, at

*8 (C.D. Cal. Mar. 9, 1989) (Experienced counsel's assessment that the settlement is reasonable

and fair should be given "significant weight").  Here, Lead Counsel with extensive experience in

litigating class and individual securities cases believe and represent that this settlement is fair,

reasonable and in the best interests of the Class.

## V.

## CERTIFICATION OF THE CLASS IS PROPER AND NECESSARY.

Because the Court later will be asked to grant final approval on behalf of a Settlement

Class, the Court must consider at the time of preliminary approval whether certification of the

Class is appropriate pursuant to Federal Rule of Civil Procedure 23(a) and at least one of the

subsections of Rule 23(b).  As discussed below, all the requirements of certification for

settlement purposes are met for the proposed Settlement Class.

### A.      The Class Meets The Requirements Of Rule 23(a).

#### 1.      The Class Is So Numerous That Joinder Is Impracticable.

Rule 23(a) requires that the putative class be "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1).  To satisfy the numerosity requirement Plaintiffs are not

required to state the exact number of potential class members. *Moeller v. Taco Bell Corp.*, 220

F.R.D. 604, 608 (N.D. Cal. 2004).  Rather, a court may make common sense assumptions to

support a finding that the numerosity requirement is satisfied and that joinder would be

impracticable. *Id.* (numerosity requirement satisfied where the exact size of the class is unknown

but "general knowledge and common sense indicate that it is large").  Moreover, commentators

and Courts have found that the fact that a class is geographically dispersed, and that class

members are difficult to identify, supports class certification.  1 Alba Conte & Herbert Newberg,

1   *Newberg on Class Actions* §3:6, at 255 (4th ed. 2002); *In re VeriSign, Inc. Sec. Litig.*, 2005 U.S.

2   Dist. LEXIS 10438, at *30 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited

3   in the context of securities litigation, wherein geographically dispersed shareholders with

4   relatively small holdings would otherwise have difficulty in challenging wealthy corporate

5   defendants").

6          Here, the Fund is owned by thousands of investors spread across the United States.

7   Defs.' Mot. to Transfer at 8 (Dkt. 18).  Based upon the calculations of Lead Plaintiffs' damages

8   experts, the total number of accounts that will be entitled to obtain a settlement payment is in

9   excess of 20,000.  Sparer Decl.  ¶8.  Accordingly, the Class is of sufficient size and geographical

10  diversity that joinder of all claims is impracticable.

11                **2.      The Action Involves Common Questions Of Law And Fact.**

12         Rule 23(a)(2) requires that class certification be predicated on "questions of law or fact

13  common to the class."  Fed. R. Civ. P. 23(a)(2)  "All questions of fact and law need not be

14  common to satisfy the rule….  Shared legal issues with divergent factual predicates is sufficient,

15  as is a common core of salient facts coupled with disparate legal remedies within the class."

16  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *In re THQ, Inc. Sec. Litig.*, 2002

17  U.S. Dist. LEXIS 7753, at *11 (C.D. Cal. Mar. 22, 2002) (noting that courts have found that a

18  single issue common to the proposed class satisfies Rule 23(a)(2)).  However, to satisfy the

19  commonality requirement, the claims of each Class Member must raise a common contention,

20  capable of classwide resolution.  *See Wal-Mart Stores, Inc. v. Dukes*, 180 L. Ed. 2d 374, 389-90

21  (2011) (each class members' claims "must depend upon a common contention" that is "of such a

22  nature that it is capable of classwide resolution").

23         Among the questions of law and fact common to the Settlement Class are:

24     •      whether the 1933 Act was violated by Defendants' acts as alleged;

25     •      whether the statements made to the public in the 2007 and 2008 Registration

26            Statements and Prospectuses misrepresented or omitted material facts regarding

27            the mathematical compounding effect; and

28

-15-

1     • whether Defendants' acts caused the alleged damages and, if so, the proper

2     measure of damages.

3         Underlying these common legal questions is a common set of operative facts, as

4  Defendants made the same alleged misstatements and omissions regarding the effects of

5  compounding in each of the Fund's Prospectuses issued during the Class Period.

6         Such issues have been consistently found to satisfy Rule 23(a)'s commonality

7  requirement in securities actions.  *See In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584,

8  588-89 (N.D. Cal. 2009) (finding commonality requirement satisfied by the presence of common

9  issues, including whether defendants violated the federal securities laws and omitted or

10  misrepresented material facts); *In re Verisign, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 10438, at

11  *17 (commonality "'is easily met in [securities] cases where class members all bought or sold the

12  same stock in reliance on the same disclosures made by the same parties, even when damages

13  vary'") (citation omitted).  Resolution of the common question—whether the Fund's Registration

14  Statements contained untrue statements or omissions about compounding error—will drive the

15  resolution of the litigation.  *Wal-Mart Stores, Inc. v. Dukes*, 180 L. Ed. 2d at 389-90.

16

17          **3.     Lead Plaintiffs' Claims Are Typical Of The Claims Of All Class Members.**

18      Typicality requires a determination as to whether the named plaintiffs' claims are typical

19  of those of the class members they seek to represent.  Fed. R. Civ. P. 23(a)(3).  Like the

20  commonality requirement, the typicality requirement is permissive: "'representative claims are

21  "typical" if they are reasonably co-extensive with those of absent class members; they need not

22  be substantially identical.'"  *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. at 589 (quoting

23  *Hanlon*, 150 F.3d at 1020).  The test is whether "'other members have the same or similar injury,

24  whether the action is based on conduct which is not unique to the named plaintiffs, and whether

25  other class members have been injured by the same course of conduct.'"  *Id.* (quoting *Hanon v.*

26  *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Courts generally find that claims are

27  "typical" if the named plaintiffs' claims arise from the same course of conduct and have the same

28  essential characteristics as those of other class members.  *Crossen v. CV Therapeutics*, 2005 U.S.

Dist. LEXIS 41396, at *13-*14 (N.D. Cal. Aug. 9, 2005).

The facts of this case meet the test articulated by the Ninth Circuit in *Hanon*. The Fund's 2007 and 2008 Registration Statements and Prospectuses materially misled Lead Plaintiffs and members of the proposed Class in the same manner. Likewise, Lead Plaintiffs, who purchased the Fund's shares during the Class Period, suffered the same injury as other members of the Class—losses due to the effects of compounding error on the Fund NAV. Accordingly, Lead Plaintiffs' claims are typical of those of the Class.

### 4. Lead Plaintiffs Will Adequately Protect The Interests Of All Class Members.

Under Federal Rule of Civil Procedure 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The adequacy requirement is satisfied where (1) counsel for the class is qualified and competent, and (2) the named plaintiffs do not have any interests that conflict with, or are antagonistic to, those of the putative class members. *In re Genentech, Inc. Sec. Litig.*, 1990 U.S. Dist. LEXIS 11389, at *13 (N.D. Cal. June 8, 1990). Both requirements are met.

As to the first prong, Lead Plaintiffs retained counsel with significant experience in litigating class and individual securities matters. Lead Counsel are capable of, and committed to, prosecuting this action vigorously on behalf of the Class until the matter is concluded. *See* Sparer Decl. ¶11 & Ex. A (firm resume).

The second requirement is also met. Lead Plaintiffs do not have any interests that conflict with the interests of the Class. They have claims identical to the proposed Class Members, have been harmed by the same wrongful conduct and seek the same remedies under the same legal theories as all of the proposed Class Members. In addition, both Mr. Rafton and Mr. Darst have a significant and compelling interest in the successful conclusion of the action given their substantial financial losses. Lead Plaintiffs also have devoted substantial time and energy to these proceedings. Sparer Decl. ¶7. Lead Plaintiffs monitored the progress of this matter for over fifteen months, reviewing strategy and pleadings and communicating regularly with Lead Counsel regarding the status of the case. Lead Plaintiffs participated in discovery by producing

over eight thousand documents, and were deposed by opposing counsel in connection with their planned application to become class representatives.  *Id*.  Further, Lead Plaintiffs confirmed their commitment to this action by signing certifications affirming their willingness to serve as lead plaintiff and assume the responsibilities of class representatives.  For these reasons, the adequacy requirement is satisfied.  *Id*.

**B.      Certification Of The Class Is Proper Pursuant To Rule 23(b).**

Once a class has satisfied all four of the prerequisites of Rule 23(a), it must satisfy one of the subsections of Rule 23(b).  Lead Plaintiffs seek certification for the settlement Class under 23(b)(3), which provides that a class action may be certified if: "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  As set for more fully below, both criteria are met here.

**Common Questions Of Law And Fact Predominate.**

The predominance inquiry is a test that is "readily met" in securities cases.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  The inquiry focuses on the relationship between the common and individual issues.  When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than individual basis.  *Hanlon*, 150 F.3d at 1022.  Predominance of common issues does not mean that there can be no individual issues or difficulty in proof, or that common questions completely dispose of the litigation.  Rather "Rule 23(b)(3) was designed to permit a class action when judicial economies could be achieved, together with practical advantages that would flow from a unitary adjudication of common issues in contrast to other forms of adjudication ...."  Alba Conte & Herbert Newberg, *Newberg on Class Actions* §4:24, at 155.

The Ninth Circuit has found that common questions predominate where a complaint alleges a "common course of conduct" including misrepresentations, omissions and other wrongdoing that affect all members of the class in the same manner.  *Blackie v. Barrack*, 524

F.2d 891, 902 (9th Cir. 1975) ("Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit").

In addition, courts have found that the predominance requirement is easily satisfied for Sections 11 and 12(a)(2) claims because such claims focus on the contents of offering documents and individual matters of reliance are not considered.  In certifying a class alleging violations of Sections 11 and 12(a)(2), Judge Alsup noted in *In re Charles Schwab Corp. Securities Litigation* that "[a] class limited to investors harmed by false statements in prospectuses does not pose excessive individual issues."  2009 U.S. Dist. LEXIS 127093, at *18 (N.D. Cal. Aug. 21, 2009) (certifying Sections 11 and 12 violations and stating that such types of actions pose far fewer individualized issues); *In re Bank One Sec. Litig./First Chicago. S'holder Claims*, 2002 U.S. Dist. LEXIS 8709, at *12 (N.D. Ill. May 9, 2002) ("Courts have repeatedly held that cases like this one, which proceed primarily under Section 11 of the 1933 Act, are particularly well suited to class treatment").

The common course of omissions and misrepresentations alleged in this action satisfies the predominance requirement.  The focus of this matter is on Defendants' conduct, not the Lead Plaintiffs' or the Class' conduct.  The predominating common issues are whether the 1933 Act was violated by Defendants' acts as alleged; whether the statements made to the public in the Registration Statements and Prospectuses misrepresented or omitted material facts regarding compounding error; whether certain Defendants exercised actual power or control over primary violators; whether Defendants' acts caused the alleged damages and, if so, what is the proper measure of damages.

**A Class Action Is The Superior Method To Achieve Judicial Efficiency.**

Rule 23(b)(3) provides that certification is appropriate if class treatment "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

1    23(b)(3).  In determining superiority, Rule 23(b)(3) identifies four factors for courts to consider:

2    (1) the class members' interests in bringing individual suits; (2) the extent and nature of litigation

3    concerning the controversy already begun by or against class members; (3) the desirability of

4    concentrating the litigation in the particular forum; and (4) the manageability of a class action.

5    Here, each of these factors favors class treatment.

6    First, the Class Members' interests in bringing individual suits are presumably minimal

7    given the size of the average loss in comparison to the expense and complexity of the claims at

8    issue.  Lead Plaintiffs' expert estimates that the average Class Member's loss due to

9    compounding is less than $600.  Sparer Decl. ¶9.  Where individual recovery may be small, class

10   members may have no incentive to individually pursue their claims.  *Rannis v. Fair Credit*

11   *Lawyers, Inc.*, 2007 U.S. Dist. LEXIS 17856, at *17 (C.D. Cal. Mar. 12, 2007) ("'The policy at

12   the very core of the class action mechanism is to overcome the problem that small recoveries do

13   not provide the incentive for any individual to bring a solo action prosecuting his or her rights'")

14   (citation omitted).  Accordingly, because practical alternatives to class action litigation are

15   unavailable, this factor weighs in favor of certification.

16   Second, Lead Plaintiffs are not aware of any other action brought on behalf of potential

17   Class Members, and to date no party has identified any other action.  Sparer Decl. ¶10.  However,

18   if any Class Members do elect to bring an individual action, Rule 23(c)(2)(B)(v) would permit

19   that member to opt out of this action.

20   Third, it is highly desirable to concentrate this matter in a single forum.  As discussed

21   above, there are thousands of individual Class Members located throughout the Untied States.

22   Defs.' Mot. to Transfer at 8 (Dkt. 18).  Where thousands of identical complaints would have to

23   be filed, it is preferred to concentrate claims through a class action in a single forum.  *Epstein v.*

24   *MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995), *rev'd on other ground*, 516 U.S. 367 (1996).[7]  The

25   Ninth Circuit has recognized that federal securities claims are appropriately resolved through

26

27   _____
     [7]The manageability test does not apply, because in deciding whether to certify a
28   settlement class, the court need not inquire whether the case, if tried, would present difficult
     management problems.  *Amchem*, 521 U.S. at 620.

class actions. *McPhail v. First Command Fin'l Planning, Inc.*, 247 F.R.D. 598, 609 (S.D. Cal. 2007) ("'Ninth Circuit decisions favor a liberal use of class actions to enforce federal securities laws'") (citation omitted); *In re THQ, Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 7753, at *8 (C.D. Cal. Mar. 22, 2002) ("[L]ower courts have recognized that 'the law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws'") (citing numerous cases).

**VI.**

**THE COURT SHOULD APPROVE THE FORM OF THE
NOTICE AND PLAN FOR NOTIFYING THE CLASS.**

**A.     The Proposed Class Notice Satisfies The Requirements Of Rule 23.**

Rule 23(c)(2)(B) requires the content of the proposed notice to be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3). *Id.*  As more fully discussed below, this Court should approve the form and content of the proposed Notices and Publication Notice (the "Notices"), attached to the Preliminary Approval Order and Stipulation as Exhibits A-1, A-2 and A-5, because they satisfy all of the aforementioned requirements.

Consistent with Rule 23(c)(2)(B), the notices are written in clear, straightforward language.  The Notices describe the terms of the $5.5 million settlement and the nature of the action, and who may participate in the recovery and who is excluded.  Stip. Exs. A-1, A-2. Furthermore, the mailed Notices explain the basis for the settlement, including specific risks underlying the decision to settle, and how each Class Member can object to the Settlement or request exclusion from the Class.  *Id.*  The Notices also explain the fairness hearing and provide

the date and location for the hearing.  They also inform Class Members that Lead Counsel will be

seeking attorneys' fees up to 25% of the Settlement Fund, in addition to reimbursement of

litigation expenses.  *Id*.  It further explains that Lead Counsel will ask the Court to award an

amount, undetermined at this time, which specifically reimburses Lead Plaintiffs for their time

and expenses in representing the Class.  Accordingly, the detailed information in the proposed

Notice is more than adequate to put Class Members on notice of the proposed settlement and is

well within the requirements of Rule 23(c)(2)(B).

### B.        The Notice Plan And Claims Process Are Simplified And Appropriate.

The availability from Rydex of investor contact information and transaction data will

ensure that a high percentage of absent Class Members receive a payout with a minimum of

inconvenience.  The Claims Administrator[8] will send Notices in the form attached as Exhibits A-

1 and A-2 to the Stipulation by first class mail to all potential Class Members who were direct

investors in the Fund.  Stip. ¶¶19(b)(i), 19(c).  The Notice will include a Record of Fund

Transactions (Stip. Ex. A-4) showing purchases during the Class Period, applicable sales, and the

result of the loss calculation which will be used to make the final pro rata distribution.  Unless

the Class Member chooses to opt out, object to the settlement or challenge his or her Record of

Fund Transactions, no action is required.  A check for the Class Member's pro rata share of the

recovery will be mailed in due course.  Stip. ¶19(b)(ii).

Defendants do not possess name, address and transaction information for Class Members

who purchased their Fund shares through certain brokers or other intermediaries (collectively

"Intermediaries") who were Rydex Fund customers.  For this subset of the Class, Rydex will

provide the claims Administrator with the contact information for the Intermediaries, and the

Claims Administrator will seek from them the names, contact information and transaction data of

the ultimate investors/Class Members.  Stip. ¶12(a).  The proposed Preliminary Approval Order

directs the Claims Administrator to undertake this process, directs Defendants also to notify the

---

[8]The Garden City Group, Inc. ("GCG") has been engaged to serve as Claims
Administrator in connection with the proposed settlement.  GCG has substantial experience in
this field as described in their firm resume.  Sparer Decl. ¶14 & Ex. D.

-22-

1   Intermediaries of their obligations, and directs the Intermediaries to comply.  Once the

2   information is obtained, these Class Members will receive the same type of Notice and Record of

3   Fund Transactions that will be sent to the direct customers of the Fund.[9]

4         For Class Members for whom the Claims Administrator is unable to obtain full

5   transaction data, the Claims Administrator will mail an individual Notice and a Proof of Claim

6   form.  *See* Exs. A-2, A-3.  In addition to the individually mailed notices, the Publication Notice

7   will be published once in Investor's Business Daily and transmitted over PRNewswire.  *See* Stip.

8   Ex. A-5.  Potential Class Members who choose to file a Proof of Claim, a Dispute Form

9   challenging their transaction data, or who choose to exclude themselves from the Class may do

10  so electronically or by mail.

11        The foregoing procedures are designed to maximize the participation of the class in the

12  recovery obtained and compare favorably to notice procedures affirmed by several courts as

13  constituting "best notice practicable under the circumstances."  *E.g., In re Qwest Commc'ns Int'l,*

14  *Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1137 (D. Colo. 2009).

15                          **VII.**

16              **PROPOSED SCHEDULE OF EVENTS.**

17        In connection with preliminary approval of the Settlement, the Court must set a final

18  approval hearing date, dates for mailing the Notices and publication of the Publication Notice,

19  and deadlines for objecting to or seeking exclusion from the Settlement.  Lead Plaintiffs propose

20  the following schedule:

---

26      [9]The *in terrorem* effect of having a court order directed to the Intermediaries proved
     important and effective in obtaining compliance in the *Schwab YieldPlus* litigation.  Similar

27  orders have been issued in connection with preliminary approval of the settlements involving the
     Oppenheimer Core and Champion funds, and the language in the proposed Preliminary Approval

28  Order is drawn from the orders in those cases.  [Prop.] Order ¶10.c.

| Task | Proposed Date | Schedule |
|------|---------------|----------|
| Assumed date of Preliminary Approval[10] | August 15, 2011 | |
| Defendants provide Investor and Broker Dealer/Intermediary contact information and transaction date to Claims Administrator | August 19, 2011 | 4 business days after entry of Preliminary Approval Order |
| Class Administrator requests investor contact information and data from Broker Dealers and Intermediaries | August 25, 2011 | 8 business day after Preliminary Approval Order |
| Broker Dealers and Intermediaries provide investor data to or otherwise respond to Claims Administrator | September 13, 2011 | 12 business days after mailing of request from Claims Administrator |
| Claims Administrator commences mailing Notice to Class Members; Settlement Website Established | September 27, 2011 | 10 business days after response from Broker Dealers and Intermediaries |
| Notice Published in Investor's Business Daily and over PRNewswire | October 11, 2011 | 9 business days after mailing of individual notices |
| Lead Counsel files Motion for Approval of Settlement, Plan of Distribution and Award of Attorneys' Fees and Expenses | October 27, 2011 | 35 calendar days prior to Final Approval Hearing |
| Deadline to file Requests for Exclusion and Objections to Settlement, Plan of Distribution and Award of Attorneys' Fees and Expenses | November 10, 2011 | 21 calendar days prior to Final Approval Hearing; 30 calendar days after Publication Notice (44 calendar days after mailing of individual notices begins) |
| Plaintiffs file Reply papers in support of Approval of Settlement, Plan of Distribution and Award of Attorneys' Fees and Expenses | November 22, 2011 | 7 calendar days prior to Final Approval Hearing |
| Final Approval Hearing | December 8, 2011 | 58 calendar days after publication notice (72 calendar days after mailing of individual notices) |

---

[10]The schedule assumes that the Court will if appropriate grant preliminary approval without the necessity of a hearing, as suggested at the Case Management Conference.  The back-up hearing date is September 8, 2011, originally set aside for the hearing on Class Certification.

1

**CONCLUSION.**

2          For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant this

3    unopposed Motion and: (i) preliminarily approve the Settlement; (ii) certify the Class for

4    purposes of settlement only and appoint Class Counsel and the Class Representatives; (iii)

5    approve the form and method for providing notice to the Class; (iv) schedule a final settlement

6    hearing and other events; and (v) enter the proposed Preliminary Approval Order submitted

7    herewith.

8    DATED: July 28, 2011                                    Respectfully submitted,

9                                                            ALAN W. SPARER (No. 104921)
                                                             MARC HABER (No. 192981)
10                                                           KEVIN H. LEWIS (No. 197421)
                                                             JAMES S. NABWANGU
11                                                           SPARER LAW GROUP

12

13                                                           By:  _____/s/_____
                                                                              ALAN W. SPARER
14

15                                                           Attorneys for LEAD PLAINTIFFS

16

17

18

19

20

21

22

23

24

25

26

27

28